1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Ste. 603
Telephone: (619) 762-1900
Facsimile: (619) 756-6991

*Counsel for Plaintiffs and the Class*

[Additional counsel listed on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MEGAN SCHMITT, individually on behalf of herself and all others similarly situated,

                                        Plaintiff,

v.

YOUNIQUE, LLC, and COTY, INC.,

                                        Defendants.

Case No.: 8:17-1397

**CLASS ACTION COMPLAINT**

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR:**

1. Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code §17200, *et seq.*;
2. Violation of California Consumer Legal Remedies Act ("CLRA"); California Civil Code §1750, *et seq.*;
3. Violation of State Consumer Protection Statutes;
4. Breach of Express Warranty Laws;
5. Violation of the Magnuson-Moss Warranty Act;
6. Breach of Implied Warranty of Merchantability Laws; and
7. Breach of Implied Warranty of Fitness for a Particular Purpose;

**DEMAND FOR JURY TRIAL**

1

Plaintiff Megan Schmitt ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of Younique, LLC, and Coty, Inc. ("Defendants") with respect to the marketing and sales of Younique Moodstruck 3D Fiber Lashes (the "Product") throughout the State of California and the rest of the country.

2.      The Product is a mascara that is designed to enhance the appearance of eyelashes.  The mascara consists of two components, a "Transplanting Gel" and "Natural Fibers."

3.      Until 2015, Defendants manufactured, sold, and distributed the Product using a multilevel marketing campaign centered around claims that appeal to health-conscious consumers, i.e., that the Natural Fibers were "natural" and consisted of "100% Natural Green Tea Fibers."  However, Defendants' advertising and marketing campaign was false, deceptive, and misleading because the Product did not contain any green tea leaves and was composed of ground-up nylon, which is not a "natural" substance.

4.      Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" when purchasing the Product.  Plaintiff and Class Members paid a premium for the Product over and above comparable products that did not purport to be "natural."  Plaintiff and Class Members suffered an injury in the amount of the premium paid.

5.      Defendants' conduct violated the federal Magnuson-Moss Warranty Act, California's Consumer Legal Remedy Act and California's Unfair Competition Law.  In addition, Defendants' conduct violated the consumer protection statutes and warranty

laws of other states.  Accordingly, Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

6.    Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as the Defendants have capitalized on consumers' desires for purportedly "natural" products.  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and the Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

7.    From 2012 to at least 2015, Defendants marketed the Natural Fibers as being "natural" and consisting of "100% Natural Green Tea Fibers."  The Product's labeling is during that time is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Younique Moodstruck 3D Fiber Lashes**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22      8.    Defendants' representations that the Product is "natural" and consisted of

23  "100% Natural Green Tea Fibers" is false, misleading, and deceptive because the Product

24  contains synthetic ingredients which are not green tea fibers.

25      9.    The supposedly natural green tea fibers were just ground-up nylon.

26      10.    Nylon is not "natural." It is a synthetic polymer created through a

27  complicated chemical and manufacturing process.

28

5

11.     Consumers lack the meaningful ability to test or independently ascertain or verify whether the product contains what it says it contains, especially at the point of sale. Consumers could not know the true nature of the ingredients merely by reading the ingredients label or packaging which does not disclose that the Product is mostly nylon.

12.     Discovering that the ingredients are not "natural" nor "100% Natural Green Tea Fibers" requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

**The "Natural Fibers" Misrepresentation**

13.     Whether Defendants' labeling of the Natural Fibers as "Natural" is deceptive is judged by an objective standard as to whether it would deceive or mislead a reasonable person.

14.     A reasonable person would not consider nylon "natural."

15.     To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

16.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).  In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

17.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

18.     Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Product, means that the goods are free of synthetic ingredients.

**The "100% Natural Green Tea Fibers" Misrepresentation**

19.     Whether the Product contains only natural green tea fibers can be determined with objective factual evidence.

20.     Plaintiff has determined that the Product contained ground-up nylon from 2012 to 2015, the time Defendants represented that the ingredients were "natural" and "100% Natural Green Tea Leaves."

21.     The marketing of the Product as "Natural" and that it consisted of "100% Natural Green Tea Fibers" in a prominent place on the label of the Product, throughout the Class Period, evidences Defendants' awareness that these claims are material to consumers.

22.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

23.     Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

24.     In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for a Product labeled "Natural" and which supposedly consisted of "100% Natural Green Tea Fibers" over comparable products not so labeled.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

25.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

      a. Paid a sum of money for a Product that was not what Defendants represented;

      b. Paid a premium price for a Product that was not what Defendants represented;

      c. Were deprived of the benefit of the bargain because the Product they purchased were different from what Defendants warranted; and

      d. Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendants represented.

26.     Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Product or would not have purchased it at all.

27.     Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of California, Defendant Younique, LLC is a citizen of the State of Utah, and Defendant Coty Inc. is a citizen of the States of Delaware and New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

29.     This Court has personal jurisdiction over Defendants because Plaintiff is a resident of the State of California, Defendants conduct and transact business in the State of California, contract to supply goods within the State of California, and supply goods within the State of California.

30.     Venue is proper because Plaintiff and many Class Members reside in this District, and throughout the State of California. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

**PARTIES**

**Plaintiff**

31.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of California and resident of the county of Orange.  During the Class Period Plaintiff purchased the Product through Younique's multilevel marketing and distribution network.  The packaging of the Product Plaintiff purchased contained the representation that it contained "Natural Fibers" and consisted of "100% Natural Green Tea Fibers." Plaintiff relied on these representations in making her purchase decision.

32.     Plaintiff believed that the Product did not contain any other ingredients besides natural green tea fibers and that the fibers were, as described, "natural."

33.      Plaintiff believes that products which are labeled "Natural" do not contain synthetic ingredients. Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.  Plaintiff believes nylon is a synthetic ingredient.

34.     Had Defendants not made the false, misleading, and deceptive representation that the Product was "Natural" and consisted of "100% Natural Green Tea Fibers." Plaintiff would not have been willing to pay the same amount for the Product, and, consequently, she would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Plaintiff received was worth less than the Product for which she paid. Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

35. Defendant Younique, LLC ("Younique") is a limited liability company with its principal place of business in Lehi, Utah. At all relevant times Younique was responsible for the manufacture, marketing, advertising and distribution of the Product throughout the United States. Younique created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Product.

36. Defendant Coty Inc. ("Coty") is one of the world's largest beauty companies. Coty is a publicly traded corporation with its principal place of business in New York, New York. Coty is incorporated in the State of Delaware. In 2017, Coty purchased 60% of Younique for $600 million through NewCo, an entity created for purposes of the purchase. Younique currently operates within defendant Coty's "Consumer Beauty" division.

37. Coty's purchase of Younique acted as a merger and consolidation of the two companies.

## CLASS ALLEGATIONS

38. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

39. The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

40. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of California at any time during the Class Period (the "California Subclass").

41. The Class and California Subclass shall be referred to collectively throughout the Complaint as the "Class."

10

42.    This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3).  It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

43.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members who have been damaged by Defendants' deceptive and misleading practices.

44.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.  Whether the Product contains "100% Natural Green Tea Fibers" or not;

    b.  Whether the ingredients in the Product are "natural" as that term is objectively understood by a reasonable consumer;

    c.  Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of their Product;

    d.  Whether Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Product;

    e.  Whether Defendants' false and misleading statements concerning their Product were likely to deceive the public;

    f.  The amount of the price premium paid by Plaintiff and the Class Members;

45.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendants' Product.

46.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong

11

interest in vindicating her rights; and she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

47.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices and their objective impact on a reasonable consumer.

48.   <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.   The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced to purchase the Product by Defendants' uniform false advertising.

49.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## **FIRST CAUSE OF ACTION**

## **VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.**

### **(On behalf of Ms. Schmitt and the California Subclass)**

50.  Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

51.  Ms. Schmitt has standing to pursue this claim under California's Unfair Competition Law ("UCL") because she suffered an injury-in-fact and lost money as a result of Defendant's unfair practices.  Specifically, Ms. Schmitt expended more money in the transaction than she otherwise would have due to Defendant's conduct.

52.  Advertising and labeling the Product as "natural" and containing "100% Natural Green Tea Fibers" when it contain only synthetic ingredients and does not contain green tea fibers constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, et seq.

53.     The conduct of the Defendants harms the interests of consumers and market competition.  There is no valid justification for Defendants' conduct.

54.     Defendants engaged in unlawful business acts and practices by breaching implied and express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.

55.     Defendants engaged in fraudulent business practices by knowingly misrepresenting the Product as "natural" and consisting of "100% Natural Green Tea Fibers."  Such practices are devoid of utility and outweighed by the gravity of harm to Ms. Schmitt and the California Subclass who lost money or property by paying for the Product.

56.     Each of Defendants' unfair, unlawful and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Ms. Schmitt and the Class. Defendant has unjustly benefitted as a result of its wrongful conduct. Ms. Schmitt and California Class members are accordingly entitled to have Defendant disgorge and restore to Ms. Schmitt and California Class members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

## SECOND CAUSE OF ACTION

## VIOLATION OF CAL. CIV. CODE § 1750, ET SEQ.

### (On behalf of Ms. Schmitt and the California Subclass)

57.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.     The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices.  The CLRA applies to Defendants' acts and practices because the Act covers transactions involving the sale of goods to consumers.

59.     Ms. Schmitt and members of the California Subclass members are "consumers" within the meaning of section 1761(d) of the California Civil Code, and

14

they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

60.     The Products are "goods" under Cal. Civ. Code §1761(a).

61.     Defendants' unfair and deceptive business practices were intended to and did result in the sale of the Products.

62.     Defendant violated the CLRA by engaging in the following unfair and deceptive practices:

63.     Representing that Products have characteristics, uses or benefits that they do not have, in violation of section 1770(a)(5);

64.     Representing that Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

65.     Advertising Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

66.     If Ms. Schmitt and the California Class members had known that the Products were not "natural" and that they did not contain "100% Natural Green Tea Fibers" they would not have purchased the Products at all or purchased the Products at the prices they did.

67.     As a direct and proximate result of Defendant's conduct, Ms. Schmitt and the California Class suffered injury and damages in an amount to be determined at trial.

68.     Pursuant to California Civil Code § 1782(a), Ms. Schmitt sent Defendant a CLRA notice letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770.

69.     At this time, Ms. Schmitt seeks injunctive relief but not monetary damages under the CLRA.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

**THIRD CAUSE OF ACTION**

**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**

**(On Behalf of Plaintiff and All Class Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71.     Plaintiff and Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

72.     Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a. **Alaska:** Defendants' practices violated Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b. **Arizona:**  Defendants' practices violated Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c. **Arkansas:**  Defendants' practices violated Arkansas Code Ann. § 4-88-101, *et seq.*

d. **Colorado**:  Defendants' practices violated Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

e. **Connecticut:**  Defendants' practices violated Connecticut's Gen. Stat. § 42-110a, *et seq.*

f. **Delaware:**  Defendants' practices violated Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

g. **District of Columbia:**  Defendants' practices violated the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

h. **Florida:**  Defendants' practices violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

i. **Hawaii:**  Defendants' practices violated the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

j. **Idaho:**  Defendants' practices violated Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

k. **Illinois:**  Defendants' acts and practices violated Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

l. **Indiana:**  Defendants' practices violated Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

m. **Kansas:**  Defendants' practices violated Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

n. **Kentucky:**  Defendants' practices violated Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

o. **Maine:**  Defendants' practices violated the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

p. **Maryland:**  Defendants' practices violated Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

q. **Massachusetts:**  Defendants' practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

r. **Michigan:**  Defendants' practices violated Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

s. **Minnesota:**  Defendants' practices violated Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

t. **Missouri:**  Defendants' practices violated Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

u. **Nebraska:**  Defendants' practices violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

v. **Nevada:**  Defendants' practices violated Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

w. **New Hampshire:**  Defendants' practices violated New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

x. **New Jersey:**  Defendants' practices violated New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

y. **New Mexico:**  Defendants' practices violated New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

z. **New York:** Defendants' practices violated of New York General Business Law §§ 349 and 350;

aa. **North Carolina:**  Defendants' practices violated North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb. **North Dakota:**  Defendants' practices violated North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc. **Ohio:**  Defendants' practices violated Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

18

dd. **Oklahoma:**  Defendants' practices violated Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee. **Oregon:**  Defendants' practices violated Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff. **Pennsylvania:**  Defendants' practices violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

gg. **Rhode Island:**  Defendants' practices violated Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh. **South Dakota:**  Defendants' practices violated South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii. **Texas:**  Defendants' practices violated Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj. **Utah:**  Defendants' practices violated Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk. **Vermont:**  Defendants' practices violated Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll. **Washington:**  Defendants' practices violated Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm. **West Virginia:**  Defendants' practices violated West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

*nn.* **Wisconsin:**  Defendants' practices violated Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:**  Defendants' practices violated Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq.*

19

73.     Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product was "natural" and consisted of "100% Natural Green Tea Fibers."

74.     Contrary to Defendants' representations, the Product is not "natural" and does not contain any green tea fibers.

75.     Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

76.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77.     As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Product.

78.     As a result of Defendants' violations, Defendants have been unjustly enriched.

79.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

<u>**BREACH OF EXPRESS WARRANTY UNDER THE**</u>

<u>**SONG-BEVERLY WARRANTY ACT**</u>

**(On Behalf of Plaintiff and the California Subclass)**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     The Products are "consumer goods" within the meaning of § 1791 of the California Civil Code.

82.    Ms. Schmitt and the members of the California Subclass are "buyers" of consumer goods within the meaning of § 1791 of the California Civil Code.

83.    Ms. Schmitt and the members of the California Subclass purchased the Product primarily for personal, family, or household purposes.

84.    At all relevant times, Defendants were "manufacturers," "distributors," and/or "sellers" within the meaning of § 1791 of the California Civil Code.

85.    At all relevant times, Defendants were "merchants" with respect to the Product.

86.    Defendants expressly warranted that the Product was "natural" and contained "100% Natural Green tea fibers."

87.    Defendants' express warranty extends to the members of the California Class because they are natural persons who could have been expected to use the Products and because it was foreseeable that members of the California Class would purchase the Products through distributors as a result of Defendants' multi-level marketing business.

88.    At all times, Defendants knew that the Products were not "natural" and did not contain "100% Natural Green tea fibers."

89.    Defendants breached their express warranty to the members of the California Subclass.

90.    Plaintiff notified Defendants on behalf of the Class of their breaches within a reasonable time after she discovered it.

91.    Ms. Schmitt, on behalf of the California Subclass, demands judgment against Defendants for damages in an amount to be determined at trial, together with reasonable attorney's fees and costs.

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

## BREACH OF IMPLIED WARRANTY UNDER THE
## SONG-BEVERLY WARRANTY ACT

### (On Behalf of Plaintiff and the California Subclass)

92.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     As merchants of the Products, Defendants impliedly warranted to the members of the California Class that the Products were merchantable, would pass without objection in the trade, and were fit for the ordinary purpose for which they were used.

94.     The ordinary purpose for which the Product would be used is as a natural alternative to traditional mascara that contained chemicals.

95.     Defendants' implied warranty of merchantability extended to the members of the California Subclass it was foreseeable that members of the California Class would purchase the Products through distributors as a result of Defendants' multi-level marketing business.

96.     The Products were not merchantable at the time of their sale because they would not pass without objection in the trade of goods purported to be "natural" and because they contained ingredients other than green tea fibers.

97.     The Products were not merchantable at the time of their sale because they were not fit for the ordinary purpose for which they were to be used, as a natural alternative to mascaras that contained chemicals.

98.     Defendants breached the implied warranty of merchantability.

99.     Plaintiff notified Defendants on behalf of the Class of their breaches within a reasonable time after she discovered it.

100.    Ms. Schmitt, on behalf of the California Subclass, demands judgment against Defendants for damages in an amount to be determined at trial, together with reasonable attorney's fees and costs.

### FOURTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY LAWS OF OTHER STATES

### (On Behalf of Plaintiff and All Class Members)

101.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102.   Defendants provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "Natural" and that it contains 100% Natural Green Tea Fibers."

103.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

104.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

105.   Plaintiff and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Product.

106.   Within a reasonable time after she knew or should have known of Defendants' breach, Plaintiff, on behalf of herself and Class Members, placed Defendants on notice of their breach.

107.   Defendants breached the express warranty because the Product is not "natural" because it contains synthetic ingredients and because it contains ingredients other than "100% Natural Green Tea Fibers."

108.   Defendants thereby breached the following state warranty laws:

      a.      Code of Ala. § 7-2-313;

      b.      Alaska Stat. § 45.02.313;

      c.      A.R.S. § 47-2313;

      d.      A.C.A. § 4-2-313;

      e.      Cal. Comm. Code § 2313;

23

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.    106 Mass. Gen. Laws Ann. § 2-313;

v.    M.C.L.S. § 440.2313;

w.    Minn. Stat. § 336.2-313;

x.    Miss. Code Ann. § 75-2-313;

y.    R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.    Neb. Rev. Stat. § 2-313;

bb.    Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

24

| | | |
|---|---|---|
| 1 | gg. | N.C. Gen. Stat. § 25-2-313; |
| 2 | hh. | N.D. Cent. Code § 41-02-30; |
| 3 | ii. | II. O.R.C. Ann. § 1302.26; |
| 4 | jj. | 12A Okl. St. § 2-313; |
| 5 | kk. | Or. Rev. Stat. § 72-3130; |
| 6 | ll. | 13 Pa. Rev. Stat. § 72-3130; |
| 7 | mm. | R.I. Gen. Laws § 6A-2-313; |
| 8 | nn. | S.C. Code Ann. § 36-2-313; |
| 9 | oo. | S.D. Codified Laws, § 57A-2-313; |
| 10 | pp. | Tenn. Code Ann. § 47-2-313; |
| 11 | qq. | Tex. Bus. & Com. Code § 2.313; |
| 12 | rr. | Utah Code Ann. § 70A-2-313; |
| 13 | ss. | 9A V.S.A. § 2-313; |
| 14 | tt. | Va. Code Ann. § 59.1-504.2; |
| 15 | uu. | Wash. Rev. Code Ann. § 6A.2-313; |
| 16 | vv. | W. Va. Code § 46-2-313; |
| 17 | ww. | Wis. Stat. § 402.313; |
| 18 | xx. | Wyo. Stat. § 34.1-2-313. |

109. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members were damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE MAGNUSON-MOSS

## WARRANTY ACT, 15 U.S.C. § 2301 *et seq.*

### (On Behalf of Plaintiff and All Class Members)

110. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

25

111.   Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

112.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

113.   The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

114.   Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

115.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

116.   Defendants represented in writing that the Product is "Natural" and that it contained "100% Natural Green Tea Fibers."

117.   These statements were made in connection with the sale of the Product and relate to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

118.   As alleged herein, Defendants breached the written warranty by selling consumers Product that is not "Natural" and does not contain "100% Natural Green Tea Fibers."

119.   The Product does not conform to the Defendants' written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

1

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY LAWS OF OTHER STATES
### (On Behalf of Plaintiff and All Class Members)

120.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

121.   Defendants are in the business of manufacturing, distributing, marketing and advertising eyelash mascara.

122.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendants warranted to Plaintiff and Class Members that the Product is "Natural" and that it contained "100% Natural Green Tea Fibers."

123.   Defendants breached the implied warranty of merchantability in that Defendants' Product's ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendants' Product if they knew that they actually contained synthetic ingredients, that are not "Natural" and that it contains ingredients other than green tea fibers.

124.   Within a reasonable amount of time after the Plaintiff discovered that the Product contain synthetic ingredients, Plaintiff notified the Defendants of such breach.

125.   The inability of the Defendants' Product to meet the label description was wholly due to the Defendants' fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendants' manufacture and distribution of the Product to the public.

126.   As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendants' Product, together with interest thereon from the date of purchase.

27

## SEVENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE LAWS OF OTHER STATES

### (On Behalf of Plaintiff and All Class Members)

127.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

128.   Defendants knew or had reason to know that the Plaintiff and other Class Members were buying their Product with the specific purpose of buying products that contained exclusively natural ingredients and/or contained only green tea fibers.

129.   Plaintiff and the other Class Members, intending to use wholly natural products and/or those that contain only green tea fibers, relied on the Defendants in selecting their Product to fit their specific intended use.

130.   Defendants held themselves out as having particular knowledge of the Defendants' Product's ingredients.

131.   Plaintiff's and Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular purpose was reasonable given Defendants' claims and representations in their advertising, packaging and labeling concerning the Product's ingredients.

132.    Plaintiff and the other Class Members' reliance on Defendants in selecting Defendants' Product to fit their particular use was reasonable given Defendants' particular knowledge of the Product it manufactures and distributes.

133.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendants' Product, together with interest thereon from the date of purchase.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

28

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the nationwide Class and California Subclass under Rule 23 of the FRCP;

(b) Awarding monetary damages, including treble damages;

(c) Awarding punitive damages;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

Granting such other and further relief as the Court may deem just and proper

Dated: August 14, 2017

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA#234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, CA 92101
Phone: (619) 762-1900
Fax: (619) 756-6991

Edwin J. Kilpela (to be admitted *pro hac vice*)
ekilpela@carlsonlynch.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246

29

PLAINTIFF'S CLASS ACTION COMPLAINT

Case No. 8:17-1397

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq. (to be admitted *pro hac vice*)
Joseph Lipari, Esq. (to be admitted *pro hac vice*)
Adam Gonnelli, Esq. (to be admitted *pro hac vice*)
Jeremy Francis, Esq. (to be admitted *pro hac vice*)
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460
Facsimile: (888) 749-7747
Sultzerj@thesultzerlawgroup.com

**WALSH PLLC**
Bonner C. Walsh (to be admitted *pro hac vice)*
*bonner@walshpllc.com*
21810 Pine Crest Dr.
Bly, OR 97622
Telephone:  (541) 359-2827
Facsimile:  (866) 503-8206
Email:  bonner@walshpllc.com

*Counsel for Plaintiffs and the Class*

30