**NYE, PEABODY, STIRLING, HALE & MILLER, LLP**
Jonathan D. Miller (CA 220848)
Alison M. Bernal (CA 264629)
Jonathan@nps-law.com
33 West Mission St., Suite 201
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Ste. 603
Telephone: (619) 762-1900
Facsimile: (619) 756-6991

*Attorneys for Plaintiffs and the Class*
*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN SCHMITT, DEANA REILLY, CAROL ORLOWSKY, and STEPHANIE MILLER BRUN, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUNIQUE, LLC,<br><br>Defendant. | Case No. 8:17-cv-01397-JVS-JDE<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br><br>The Hon. James V. Selna<br>Santa Ana, Courtroom 10C<br><br><br>Complaint Filed: 8/17/17<br>Trial Date: None Set |

Plaintiffs Megan Schmitt, Deana Reilly, Carol Orlowsky, and Stephanie Miller Brun ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those

allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1.    This action seeks to remedy the deceptive and misleading business practices of Younique, LLC ("Younique" or "Defendant") with respect to the marketing and sales of Younique Moodstruck 3D Fiber Lashes (the "Product").

2.    Younique represented on its packaging that the Product was natural and contained green tea fibers, when in reality the fibers were just ground-up nylon.

3.    The Product is a mascara that is designed to enhance the appearance of eyelashes. The mascara consists of two components, a "Transplanting Gel" and "Natural Fibers."

4.    Until 2015, Defendant manufactured, sold, and distributed the Product using a multilevel marketing campaign centered around claims that appeal to health-conscious consumers, i.e., that the Natural Fibers were "natural" and consisted of "100% Natural Green Tea Fibers." However, Defendant's advertising and marketing campaign was false, deceptive, and misleading because the so-called "Natural Fibers" did not contain any green tea leaves and were, in fact, composed of ground-up nylon, which is not a "natural" substance.

5.    Plaintiffs and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" when purchasing the Product. Plaintiffs and Class Members paid a premium for the Product over and above comparable products that did not purport to be "natural." Plaintiffs and Class Members sustained monetary damages.

6.    Defendant's conduct violated the federal Magnuson-Moss Warranty Act, state consumer protection laws, and state warranty laws. Accordingly, Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Product during the applicable statute of limitations periods (the "Class

1  Period").

2  **FACTUAL BACKGROUND**

3    7.    Consumers have become increasingly concerned about the effects of

4  synthetic and chemical ingredients in food, cleaning products, bath and beauty

5  products and everyday household products. Companies such as Younique have

6  capitalized on consumers' desires for purportedly "natural" products. Indeed,

7  consumers are willing to pay, and have paid, a premium for products branded

8  "natural" over products that contain synthetic ingredients. In 2015, sales of natural

9  products grew 9.5% to $180 billion.[1] Reasonable consumers, including Plaintiffs

10  and the Class Members, value natural products for important reasons, including the

11  belief that they are safer and healthier than alternative products that are not

12  represented as "natural."

13    8.    From 2012 to at least 2015, Defendant marketed the Natural Fibers

14  component of the Product as being "natural" and consisting of "100% Natural Green

15  Tea Fibers." The Product's labeling during that time is depicted below:

16

17

18

19

20

21

---

22    [1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR,
http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-
23  claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural"
Products*, INVESTOPEDIA (February 22, 2017),
24  http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-
products.asp (Study by Kline Research indicated that in 2016, the personal care market reached
25  9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care
industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for
26  growth? [NEXT Forecast 2017]*, NEW HOPE NETWORK (December 20, 2016),
http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-
27  2017.

28

FIRST AMENDED CLASS ACTION COMPLAINT

## Younique Moodstruck 3D Fiber Lashes



FIRST AMENDED CLASS ACTION COMPLAINT



1.      Defendant's representations that the Natural Fibers part of the Product was "natural" and consisted of "100% Natural Green Tea Fibers" is false, misleading, and deceptive because the Natural Fibers component contains synthetic ingredients which are not green tea fibers.

2.      In fact, the supposedly natural green tea fibers were just ground-up nylon.

3.      Nylon is not "natural." It is a synthetic polymer created through a complicated chemical and manufacturing process.

FIRST AMENDED CLASS ACTION COMPLAINT

4.     Consumers lack the meaningful ability to test or independently ascertain or verify whether the product contains what it says it contains, especially at the point of sale. Consumers could not know the true nature of the ingredients merely by reading the ingredients label or packaging which does not disclose that the Natural Fibers are just ground up nylon.

5.     Discovering that the ingredients are not "natural" nor "100% Natural Green Tea Fibers" requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

**The "Natural Fibers" Misrepresentation**

6.     Whether Defendant's "natural" misrepresentation is deceptive is judged by an objective standard as to whether it would deceive or mislead a reasonable person.

7.     A reasonable person would not consider nylon "natural."

8.     To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

FIRST AMENDED CLASS ACTION COMPLAINT

10.     Further, Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . ." 7 U.S.C. § 6502 (21).

11.     Surveys and other market research, including expert testimony Plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Product, means that the goods are free of synthetic ingredients.

### The "100% Natural Green Tea Fibers" Misrepresentation

12.     Whether the Product contains only natural green tea fibers can be determined with objective factual evidence.

13.     Plaintiffs have determined that the Natural Fibers component of the Product contained ground-up nylon from 2012 to 2015, the time Defendant represented that the Natural Fibers were "natural" and "100% Natural Green Tea Leaves."

14.     The marketing of the Product as "Natural" and as consisting of "100% Natural Green Tea Fibers" in a prominent place on the label of the Product, throughout the Class Period, demonstrates Defendant's awareness that these claims are material to consumers.

15.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

16.     Plaintiffs and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

17.     In making the false, misleading, and deceptive representations and omissions described herein, Younique knew and intended that consumers would pay

a premium for a Product labeled "Natural" and which supposedly consisted of "100% Natural Green Tea Fibers" over comparable products not so labeled.

18. As an immediate, direct, and proximate result of Younique's false, misleading, and deceptive representations and omissions, Younique injured Plaintiffs and the Class members in that Class members:

    a. Paid a sum of money for a Product that was not what Younique represented;

    b. Paid a premium price for a Product that was not what Younique represented;

    c. Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

    d. Were deprived of the benefit of the bargain because the Product they purchased had less value than what Younique represented.

19. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class members would not have been willing to pay the same amount for the Product or would not have purchased it at all.

20. Consequently, Plaintiffs and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of the States of California, Florida, Tennessee and Ohio, and Defendant Younique, LLC, is a citizen of the State of Utah; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

FIRST AMENDED CLASS ACTION COMPLAINT

22.     This Court has personal jurisdiction over Defendant because Plaintiff Megan Schmitt is a resident of the State of California, Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

23.     Venue is proper because Plaintiff Megan Schmitt and many Class Members reside in this District, and throughout the State of California. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiffs**

24.     **Plaintiff Megan Schmitt** is an individual consumer who, at all times material hereto, was a citizen of California. During the Class Period Ms. Schmitt purchased the Product through Younique's multilevel marketing and distribution network while in California. Ms. Schmitt purchased the Product for personal use. Ms. Schmitt paid $29 for the Product. The packaging of the Product Ms. Schmitt purchased contained the representation that the "Natural Fibers" were "natural" consisted of "100% Natural Green Tea Fibers." These representations were important to Ms. Schmitt and she relied on them in making her purchase decision.

25.     Ms. Schmitt believed that the Natural Fibers component of the Product did not contain any other ingredients besides natural green tea fibers and that the fibers were, as described, "natural."

26.     Ms. Schmitt believes that products which are labeled "Natural" do not contain synthetic ingredients. Ms. Schmitt believes nylon is a synthetic ingredient.

27.     Had Defendant not made the false, misleading, and deceptive representation that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" Ms. Schmitt would not have been willing to pay the same amount for the Product, and, consequently, she would not have been willing to

purchase the Product. Ms. Schmitt purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Ms. Schmitt received was worth less than the Product for which she paid. Ms. Schmitt was injured in fact and lost money as a result of Defendant's improper conduct.

28.     **Plaintiff Deana Reilly** is an individual consumer who, at all times material hereto, was a citizen of the State of Florida. In early 2015, Ms. Reilly purchased the Product through Younique's multilevel marketing and distribution network while in Florida. Ms. Reilly paid $29 for the Product. Ms. Reilly purchased the Product for personal use. The packaging of the Product Ms. Reilly purchased contained the representation that the "Natural Fibers" were "natural" consisted of "100% Natural Green Tea Fibers." These representations were important to Ms. Reilly and she relied on them in making her purchase decision.

29.     Ms. Reilly believed that the Natural Fibers component of the Product did not contain any other ingredients besides natural green tea fibers and that the fibers were, as described, "natural."

30.     Ms. Reilly believes that products which are labeled "Natural" do not contain synthetic ingredients. Ms. Reilly believes nylon is a synthetic ingredient.

31.     Had Younique not made the false, misleading, and deceptive representation that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" Ms. Reilly would not have been willing to pay the same amount for the Product, and, consequently, she would not have been willing to purchase the Product. Ms. Reilly purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Ms. Reilly received was worth less than the Product for which she paid. Ms. Reilly was injured in fact and lost money as a result of Younique's improper conduct.

32.     **Plaintiff Stephanie Miller Brun** is an individual consumer who, at all times material hereto, was a citizen of the State of Ohio. In November of 2014, and several other times, Ms. Brun purchased the Product through Younique's multilevel marketing and distribution network while in Ohio. Ms. Brun paid $29 for the Product.  Ms. Brun purchased the Product for personal use. The packaging of the Product Ms. Brun purchased contained the representation that the "Natural Fibers" were "natural" and consisted of "100% Natural Green Tea Fibers." These representations were important to Ms. Brun and she relied on them in making her purchase decision.

33.     Ms. Brun believed that the Natural Fibers component of the Product did not contain any other ingredients besides natural green tea fibers and that the fibers were, as described, "natural."

34.     Ms. Brun believes that products which are labeled "Natural" do not contain synthetic ingredients. Ms. Brun believes nylon is a synthetic ingredient.

35.     Had Younique not made the false, misleading, and deceptive representation that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" Ms. Brun would not have been willing to pay the same amount for the Product, and, consequently, she would not have been willing to purchase the Product. Ms. Brun purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Ms. Brun received was worth less than the Product for which she paid. Ms. Brun was injured in fact and lost money as a result of Younique's improper conduct.

36.     **Plaintiff Carol Orlowsky** is an individual consumer who, at all times material hereto, was a citizen of Tennessee. In late 2014 and early 2015 Ms. Orlowsky purchased the Product through Younique's multilevel marketing and distribution network while in Tennessee. Ms. Orlowsky paid $29 for the Product. Ms. Orlowsky purchased the Product for personal use. The packaging of the Product

Ms. Orlowsky purchased contained the representation that the "Natural Fibers" were "natural" consisted of "100% Natural Green Tea Fibers." These representations were important to Ms. Orlowsky and she relied on them in making her purchase decision.

37.     Ms. Orlowsky believed that the Natural Fibers component of the Product did not contain any other ingredients besides natural green tea fibers and that the fibers were, as described, "natural."

38.     Ms. Orlowsky believes that products which are labeled "Natural" do not contain synthetic ingredients. Ms. Orlowsky believes nylon is a synthetic ingredient.

39.     Had Defendant not made the false, misleading, and deceptive representation that the Natural Fibers were "Natural" and consisted of "100% Natural Green Tea Fibers" Ms. Orlowsky would not have been willing to pay the same amount for the Product, and, consequently, she would not have been willing to purchase the Product. Ms. Orlowsky purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product Ms. Orlowsky received was worth less than the Product for which she paid. Ms. Orlowsky was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

40.     Defendant Younique, LLC ("Younique") is a corporation with its principal place of business in Lehi, Utah. At all relevant times Younique was responsible for the manufacture, marketing, advertising, and distribution of the Product throughout the United States. Younique created and/or authorized the false, misleading, and deceptive advertisements, packaging and labeling for the Product. In 2017, Coty Inc., a publicly-traded multinational corporation purchased 60% of

Younique for $600 million. Younique currently operates within Coty's "Consumer Beauty" division.

## **CLASS ALLEGATIONS**

41.    Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Younique orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this action is suited for classwide resolution.

42.    The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period (the "Class").

43.    Plaintiffs also seek certification, to the extent necessary or appropriate, of subclasses of individuals who purchased the Products in the States of California, Tennessee, Ohio, or Florida, at any time during the Class Period. The Class and Subclasses shall be referred to collectively throughout the Complaint as the "Class" except where indicated.

44.    This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3). It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

45.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members who have been damaged by Defendant's deceptive and misleading practices.

46.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

> a.  Whether the Natural Fibers component of the Product contains "100% Natural Green Tea Fibers" or not;

FIRST AMENDED CLASS ACTION COMPLAINT

    b.  Whether the ingredients in the Natural Fibers component of the Product are "natural" as that term is objectively understood by a reasonable consumer;

    c.  Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;

    d.  Whether Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Product;

    e.  Whether Defendant's false and misleading statements concerning its Product were likely to deceive the public; and

    f.  The amount of the price premium paid by Plaintiffs and the Class Members as a result of the misrepresentations.

47. <u>Typicality</u>: Plaintiffs are members of the national Class. Ms. Schmitt is a member of the California Subclass. Ms. Reilly is a member of the Florida Subclass. Ms. Brun is a member of the Ohio Subclass. Ms. Orlowsky is a member of the Tennessee Subclass. The claims of the Plaintiffs are typical of the claims of each Class Member in that every member of the Class was subjected to the same deceptive, misleading conduct and incurred damages by purchasing the Product.

48. <u>Adequacy</u>: The Plaintiffs are all adequate Class representatives. None of their interests conflict with the interests of the Class Members they seek to represent; their consumer fraud claims are common to all members of the Class and they have a strong interest in vindicating their rights; and they have retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

49. <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any

individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices and their objective impact on a reasonable consumer.

50.  Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.  The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  A class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced to purchase the Product by Defendant's uniform false advertising.

51.    Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *et seq.***

**(On Behalf of All Plaintiffs and the National Class)**

52.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.    Plaintiffs bring this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

54.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

55.    The Product is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

56.    Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

57.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

58.     Defendant represented in writing that the Natural Fibers component of the Product is "natural" and that it contained "100% Natural Green Tea Fibers."

59.     These statements were made in connection with the sale of the Product and relate to the nature of the Product and affirm and promise that the Product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

60.     As alleged herein, Defendant breached the written warranty by selling consumers Product that is not "natural" and does not contain "100% Natural Green Tea Fibers."

61.     The Product does not conform to the Defendant's written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq*.**
**(On behalf of Ms. Schmitt and the California Subclass)**

62.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63.     Ms. Schmitt has standing to pursue this claim under California's Unfair Competition Law ("UCL") because she suffered an injury-in-fact and lost money as a result of Defendant's unfair practices. Specifically, Ms. Schmitt expended more money in the transaction than she otherwise would have due to Defendant's conduct.

64.     Advertising and labeling the Product as "natural" and containing "100% Natural Green Tea Fibers" when it contains only synthetic ingredients and

does not contain green tea fibers constitutes a course of unfair conduct within the meaning of Cal. Civ. Code § 17200, *et seq*.

65.     The conduct of the Defendant harms the interests of consumers and market competition. There is no valid justification for Defendant's conduct.

66.     Defendant engaged in unlawful business acts and practices by breaching implied and express warranties, and violating the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

67.     Defendant engaged in fraudulent business practices by knowingly misrepresenting the Product as "natural" and consisting of "100% Natural Green Tea Fibers." Such practices are devoid of utility and outweighed by the gravity of harm to Ms. Schmitt and the California Subclass who lost money or property by paying for the Product.

68.     Each of Defendant's unfair, unlawful, and fraudulent practices enumerated above was the direct and proximate cause of financial injury to Ms. Schmitt and the Class. Defendant has unjustly benefitted as a result of its wrongful conduct. Ms. Schmitt and California Class members are accordingly entitled to have Defendant disgorge and restore to Ms. Schmitt and California Class members all monies wrongfully obtained by Defendant as a result of the conduct as alleged herein.

### THIRD CAUSE OF ACTION
### VIOLATION OF CAL. CIV. CODE § 1750, *et seq*.
**(On behalf of Ms. Schmitt and the California Subclass)**

69.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because the Act covers transactions involving the sale of goods to consumers.

18

71.    Ms. Schmitt and members of the California Subclass members are "consumers" within the meaning of section 1761(d) of the California Civil Code, and they engaged in "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code, including the purchases of the Products.

72.    Defendant is a "person" under Cal. Civ. Code § 1761(c).

73.    The Products are "goods" under Cal. Civ. Code §1761(a).

74.    Defendant's unfair and deceptive business practices were intended to and did result in the sale of the Products.

75.    Defendant violated the CLRA by engaging in the following unfair and deceptive practices:

76.    Representing that Products have characteristics, uses, or benefits that they do not have, in violation of section 1770(a)(5);

77.    Representing that Products are of a particular standard, quality, or grade when they are not, in violation of section 1770(a)(7); and

78.    Advertising Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

79.    If Ms. Schmitt and the California Class members had known that the Products were not "natural" and that they did not contain "100% Natural Green Tea Fibers" they would not have purchased the Products at all or purchased the Products at the prices they did.

80.    As a direct and proximate result of Defendant's conduct, Ms. Schmitt and the California Class suffered injury and damages in an amount to be determined at trial.

81.    Pursuant to California Civil Code § 1782(a), On August 23, 2017, Ms. Schmitt sent Defendant a notice letter via certified mail, return receipt requested, advising Defendant that it had violated the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.

82.    More than thirty days have passed since Ms. Schmitt sent the letter and Defendant has not taken remedial action.

83.    Ms. Schmitt seeks monetary relief under the CLRA.

84.    Ms. Schmitt also seeks punitive damages because Younique's conduct was reprehensible and conducted with conscious disregard of the rights of others. Many consumers try to use natural products for health reasons. Younique preyed upon this desire and sold consumers a product that was labeled as natural but was actually synthetic. In addition, many class members suffered eye irritation because they used the Product believing it was natural when it was composed of ground-up nylon.

85.    Ms. Schmitt also seeks restitution, costs, attorneys' fees, and any other relief available under the CLRA.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW, CAL. COM. CODE §§ 2313 and 10210
## (On behalf of Ms. Schmitt and the California Subclass)

86.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.    Younique was at all relevant times a "merchant" and a "seller" within the meaning of Cal. Com. Code §§ 2104(1), 10103(c) and § 2103 (1)(d).

88.    The Products, at all relevant times, were "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

89.    On the Product's packaging, Younique expressly warranted to all purchasers that the Natural Fibers component of the Product was "natural" and composed of green tea fibers.

90.    Younique knowingly breached its warranty because the Natural Fibers component of the Product was not "natural" and did not consist of green tea leaves.

91.     As a result, Ms. Schmitt and the members of the California Subclass are entitled to damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, FLA. STAT. § 501.201, *et seq*.
## (on behalf of Ms. Reilly and the Florida Subclass)

92.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

93.     Ms. Reilly is a consumer under Fla. Stat. § 501.203(7).

94.     Younique was engaged in commerce under Fla. Stat. § 501.203(8).

95.     The Florida Unfair and Deceptive Trade Practices Act at Fla. Stat. § 501.204(1) prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce."

96.     Younique engaged in misleading, false, unfair, and/or deceptive acts and practices by misrepresenting to consumers that the Natural Fibers component of the Product was "natural" and contained only green tea leaves. In fact, the Natural Fibers component consisted of ground-up nylon.

97.     Ms. Reilly and the Florida Subclass members were deceived by this conduct and suffered ascertainable loss and actual damages as a direct and proximate result of these misrepresentations. Had Ms. Reilly or members of the Florida Subclass known the truth about the Product, they would not have purchased it or would not have paid as much as they did for it.

98.     Ms. Reilly and the Florida Subclass seek damages, attorneys' fees and all other appropriate relief under the Florida Deceptive Trade Practices Act.

///

///

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY UNDER FLORIDA LAW,**
**F.S.A. §§ 672.313 and 680.21**
**(On behalf of Ms. Reilly and the Florida Subclass)**

99.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.    Younique, at all relevant times, was a "merchant" and a "seller."

101.    The Products, at all relevant times, were "goods."

102.    On the Product's packaging, Younique warranted to all purchasers that the Natural Fibers component of the Product was "natural" and composed of green tea fibers.

103.    Younique knowingly breached its warranty because the Natural Fibers component of the Product was not "natural" and did not consist of green tea leaves.

104.    As a result, Ms. Reilly and the members of the Florida Subclass are entitled to their damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER**
**FLORIDA LAW**
**(On Behalf of Ms. Reilly and the Florida Subclass)**

105.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    Younique, at all relevant times, was a "merchant" and a "seller."

107.    The Products, at all relevant times, were "goods."

108.    The ordinary purpose for which a natural product is used, as opposed to a non-natural product, is to allow the consumer to avoid being exposed to synthetic ingredients.

109.    When sold, the Natural Fibers component of the Product consisted of

22

ground-up nylon and was therefore not fit for their ordinary purpose as a natural product.

110.   Younique was provided notice of this breach by the CLRA letter sent by Ms. Schmitt on August 23, 2017.

111.   Ms. Reilly and the Florida Subclass have damaged by Younique's breach in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### (On behalf of Ms. Brun and the Ohio Subclass)

112.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

113.   Ohio's Consumer Sales Practices Act prohibits unfair or deceptive acts or practices in connections with consumer transactions.

114.   Ms. Brun and the members of the Ohio Subclass are "persons" and "consumers" within the meaning of Ohio Rev. Code § 1345.01 and Younique is a "supplier" within the meaning of Ohio Rev. Code § 1345.01 (C).

115.   The purchase of the Products is a "consumer transaction" within the meaning of Ohio Rev. Code § 1345.01 (A).

116.   Younique's conduct was willful.

117.   Younique violated the Act by representing that the Natural Fibers component of the Product was "natural" and contained only green tea fibers and by advertising the Products with the intention of not selling them as advertised.

118.   Ms. Brun seeks actual and treble damages, attorneys' fees, costs, and any other just and proper relief under the Consumer Sales Practices Act.

## NINTH CAUSE OF ACTION
## FOR VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT,
## OHIO REV. CODE § 4165.01, *et seq*.
### (On behalf of Ms. Brun and the Ohio Subclass)

119.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

120.   The Ohio Deceptive Trade Practices Act prohibits misrepresentations that goods have "sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" or that goods "are of a particular standard, quality, or grade… if they are of another,"  or if a person "advertises goods or services with intent not to sell them as advertised." §4165.02(A)(7), (9), (11).

121.   Younique, Ms. Brun, and the members of the Ohio Subclass are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

122.   Younique committed the wrongful acts alleged herein in the course of its business within the meaning of Ohio Rev. Code § 4165.02(A).

123.   Younique has violated the Ohio Deceptive Trade Practices Act by representing that the Natural Fibers component of the Products was "natural" and contained only green tea fibers and by advertising the Products with the intention of not selling them as advertised.

124.   Ms. Brun and the Ohio Subclass seek actual and punitive damages, attorneys' fees, costs, and any other just and proper relief under the Deceptive Trade Practices Act.

## TENTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY UNDER OHIO LAW
### (On behalf of Ms. Brun and the Ohio Subclass)

125.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

126.   Younique was a "seller" and "merchant" under Ohio Rev. Code § 1302.01(4)-(5).

127.   The Products were "goods" under Ohio Rev. Code § 1302.01(8).

128.   On the Product's packaging, Younique warranted to all purchasers that the Natural Fibers component of the Product was "natural" and composed of green tea fibers.

129.   Younique knowingly breached its warranty because the Natural Fibers

1   component of the Product was not "natural" and did not consist of green tea leaves.

2   130.   Notice to Younique would have been futile, since Ms. Brun and other

3   consumers had no way of knowing that the Natural Fibers component of the Product

4   was not natural and composed of ground-up nylon.

5   131.   In any case, Younique was provided notice of this breach by the CLRA

6   letter sent by Ms. Schmitt on August 23, 2017.

7   132.   As a result, Ms. Brun and the members of the Ohio Subclass are

8   entitled to their damages in an amount to be determined at trial.

9                    **ELEVENTH CAUSE OF ACTION**
     **BREACH OF IMPLIED WARRANTY UNDER OHIO LAW**
10            **(On behalf of Ms. Brun and the Ohio Subclass)**

11   133.   Plaintiffs repeat and reallege each and every allegation contained in the

12   foregoing paragraphs as if fully set forth herein.

13   134.   Younique was a "seller" and "merchant" under Ohio Rev. Code §

14   1302.01(4)-(5).

15   135.   The Products were "goods" under Ohio Rev. Code § 1302.01(8).

16   136.   An implied warranty that the Products were merchantable and fit for

17   the ordinary purpose for which natural cosmetics are used arises under Ohio Rev.

18   Code §§ 1302.27 and 1310.19.

19   137.   The ordinary purpose for which a natural product is used, as opposed to

20   a non-natural product, is to allow the consumer to avoid being exposed to synthetic

21   ingredients.

22   138.   When sold, the Natural Fibers component of the Product consisted of

23   ground-up nylon and was therefore not fit for their ordinary purpose as a natural

24   product.

25   139.   Younique was provided notice of this breach by the CLRA letter sent

26   by Ms. Schmitt on August 23, 2017.

27   140.    As a result, Ms. Brun and the members of the Ohio Subclass are

28
                                    25

entitled to their damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT,
## TENN. CODE ANN. § 47-18-101, et seq.
## (On behalf of Ms. Orlowsky and the Tennessee Subclass)

141.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

142.   Ms. Orlowsky and the members of the Tennessee Subclass are "natural persons" and "consumers" under Tenn. Code § 47-18-103(2).

143.   Younique is a "person" under Tenn. Code § 47-18-103(9).

144.   Younique's sales of the Products constitute "consumer transactions" under Tenn. Code § 47-18-103(9).

145.   The Tennessee Consumer Protection Act prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce."

146.   Younique's conduct in misrepresenting that the Natural Fibers component of the Products was "natural" and contained only green tea fibers constitutes an "unfair or deceptive act or practice affecting the commerce of any trade or commerce."

147.   Younique's conduct was willful and knowing.

148.   Ms. Orlowsky and the Tennessee Subclass seek actual and treble damages, punitive damages, attorneys' fees and costs and any other just and proper relief under the Tennessee Consumer Protection Act, § 47-18-109(a)(3).

## THIRTEENTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY UNDER TENNESSEE LAW
## (On behalf of Ms. Orlowsky and the Tennessee Subclass)

149.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

150.   Younique is a "merchant" and "seller" under Tenn. Code § 47-2A-103.

151.   The Products are "goods" under Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

152.   On the Product's packaging, Younique warranted to all purchasers that the Natural Fibers component of the Product was "natural" and composed of green tea fibers.

153.   Younique knowingly breached its warranty because the Natural Fibers component of the Product was not "natural" and did not consist of green tea leaves.

154.   Notice to Younique would have been futile, since Ms. Orlowsky and other consumers had no way of knowing that the Natural Fibers component of the Product was not natural and composed of ground-up nylon.

155.   In any case, Younique was provided notice of this breach by the CLRA letter sent by Ms. Schmitt on August 23, 2017.

156.   As a result of Younique's breach, Ms. Orlowsky and the members of the Tennessee Subclass have been damaged in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY UNDER TENNESSEE LAW
### (On behalf of Ms. Orlowsky and the Tennessee Subclass)

157.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

158.   Younique is a "merchant" and "seller" under Tenn. Code §§ 47-2-103.

159.   The Products are "goods" under Tenn. Code §§ 47-2-103.

160.   An implied warranty that the Products were merchantable and fit for the ordinary purpose for which natural cosmetics are used arises under Tennessee law.

161.   The ordinary purpose for which a natural product is used, as opposed to a non-natural product, is to allow the consumer to avoid being exposed to synthetic ingredients.

162.   When sold, the Natural Fibers component of the Product consisted of ground-up nylon and was therefore not fit for their ordinary purpose as a natural product.

163.   Younique was provided notice of this breach by the CLRA letter sent by Ms. Schmitt on August 23, 2017.

164.   As a result, Ms. Orlowsky and the members of the Tennessee Subclass are entitled to their damages in an amount to be determined at trial.

**FIFTEENTH CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiffs and All Class Members)**

165.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

166.   Plaintiffs and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiffs and Class Members based on Defendant's fraudulent, deceptive, unfair, and unconscionable acts, practices and conduct.

167.   Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.   **Alaska:** Defendant's practices violated Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.   **Arizona:**  Defendant's practices violated Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.   **Arkansas:**  Defendant's practices violated Arkansas Code Ann. § 4-88-101, *et seq.*

d.   **Colorado**:  Defendant's practices violated Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

e.   **Connecticut:**  Defendant's practices violated Connecticut's Gen. Stat. § 42-110a, *et seq.*

f.   **Delaware:**  Defendant's practices violated Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

g.   **District of Columbia:**  Defendant's practices violated the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

h.   **Hawaii:**  Defendant's practices violated the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

i.   **Idaho:**  Defendant's practices violated Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

j.   **Illinois:**  Defendant's acts and practices violated Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

k.   **Indiana:**  Defendant's practices violated Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

l.   **Kansas:**  Defendant's practices violated Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

m.   **Kentucky:**  Defendant's practices violated Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

n.   **Maine:**  Defendant's practices violated the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

o.   **Maryland:**  Defendant's practices violated Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

p.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

q.   **Michigan:**  Defendant's practices violated Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

r.   **Minnesota:**  Defendant's practices violated Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

s.   **Missouri:**  Defendant's practices violated Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

t.   **Nebraska:**  Defendant's practices violated Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

u.   **Nevada:**  Defendant's practices violated Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

v.   **New Hampshire:**  Defendant's practices violated New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

w.   **New Jersey:**  Defendant's practices violated New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*.

x.   **New Mexico:**  Defendant's practices violated New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

**y.**   **New York:** Defendant's practices violated of New York General Business Law §§ 349 and 350;

z.   **North Carolina:**  Defendant's practices violated North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

aa. **North Dakota:**  Defendant's practices violated North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

bb. **Oklahoma:**  Defendant's practices violated Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

cc. **Oregon:**  Defendant's practices violated Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

dd. **Pennsylvania:**  Defendant's practices violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

ee. **Rhode Island:**  Defendant's practices violated Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ff. **South Dakota:**  Defendant's practices violated South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

gg. **Texas:**  Defendant's practices violated Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

hh. **Utah:**  Defendant's practices violated Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ii. **Vermont:**  Defendant's practices violated Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

jj. **Washington:**  Defendant's practices violated Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

31

mm. **West Virginia:** Defendant's practices violated West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

nn. **Wisconsin:** Defendant's practices violated Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

oo. **Wyoming:** Defendant's practices violated Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq.*

168.   Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Product was "natural" and consisted of "100% Natural Green Tea Fibers."

169.   Contrary to Defendant's representations, the Product is not "natural" and does not contain any green tea fibers.

170.   Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Product.

171.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

172.   As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members paid a premium for the Product.

173.   As a result of Defendant's violations, Defendant has been unjustly enriched.

174.   Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## SIXTEENTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY LAWS OF OTHER STATES
#### (On Behalf of Plaintiffs and All Class Members)

175.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

176.   Defendant provided the Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is "Natural" and that it contains 100% Natural Green Tea Fibers."

177.   The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

178.   These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

179.   Plaintiffs and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

180.   Within a reasonable time after she knew or should have known of Defendant's breach, Plaintiff Megan Schmitt, on behalf of herself and similarly situated Class Members, placed Defendant on notice of its breach.

181.   Defendant breached the express warranty because the Product is not "natural" because it contains synthetic ingredients, and because it contains ingredients other than "100% Natural Green Tea Fibers."

182.   Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.    Cal. Comm. Code § 2313;

f.    Colo. Rev. Stat. § 4-2-313;

g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.    106 Mass. Gen. Laws Ann. § 2-313;

v.    M.C.L.S. § 440.2313;

w.    Minn. Stat. § 336.2-313;

x.    Miss. Code Ann. § 75-2-313;

y.    R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.   Neb. Rev. Stat. § 2-313;

bb.   Nev. Rev. Stat. Ann. § 104.2313;

cc.   R.S.A. 382-A:2-313;

dd.   N.J. Stat. Ann. § 12A:2-313;

ee.   N.M. Stat. Ann. § 55-2-313;

| | | |
|---|---|---|
| ff. | N.Y. U.C.C. Law § 2-313; |
| gg. | N.C. Gen. Stat. § 25-2-313; |
| hh. | N.D. Cent. Code § 41-02-30; |
| ii. | II. O.R.C. Ann. § 1302.26; |
| jj. | 12A Okl. St. § 2-313; |
| kk. | Or. Rev. Stat. § 72-3130; |
| ll. | 13 Pa. Rev. Stat. § 72-3130; |
| mm. | R.I. Gen. Laws § 6A-2-313; |
| nn. | S.C. Code Ann. § 36-2-313; |
| oo. | S.D. Codified Laws, § 57A-2-313; |
| pp. | Tenn. Code Ann. § 47-2-313; |
| qq. | Tex. Bus. & Com. Code § 2.313; |
| rr. | Utah Code Ann. § 70A-2-313; |
| ss. | 9A V.S.A. § 2-313; |
| tt. | Va. Code Ann. § 59.1-504.2; |
| uu. | Wash. Rev. Code Ann. § 6A.2-313; |
| vv. | W. Va. Code § 46-2-313; |
| ww. | Wis. Stat. § 402.313; |
| xx. | Wyo. Stat. § 34.1-2-313. |

183.   As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members were damaged in an amount to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY LAWS OF OTHER STATES
### (On Behalf of Plaintiffs and All Class Members)

184.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

185.   Defendant is in the business of manufacturing, distributing, marketing, and advertising eyelash mascara.

186.   Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiffs and Class Members that the Product is "Natural" and that it contained "100% Natural Green Tea Fibers."

187.   Defendant breached the implied warranty of merchantability in that Defendant's Product's ingredients deviate from the label and product description, and reasonable consumers expecting a product that conforms to its label would not accept the Defendant's Product if they knew that they actually contained synthetic ingredients, that are not "Natural" and that it contains ingredients other than green tea fibers.

188.   Within a reasonable amount of time after she discovered that the Product contain synthetic ingredients, Ms. Schmitt notified the Defendant of such breach.

189.   The inability of the Defendant's Product to meet the label description was wholly due to the Defendant's fault and without Plaintiffs' or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Product to the public.

190.   As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

**EIGHTEENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR**
**PURPOSE LAWS OF OTHER STATES**
**(On Behalf of Plaintiffs and All Class Members)**

191.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

192. Defendant knew or had reason to know that Plaintiffs and other Class Members were buying their Product with the specific purpose of buying products that contained exclusively natural ingredients and/or contained only green tea fibers.

193. Plaintiffs and the other Class Members, intending to use wholly natural products and/or those that contain only green tea fibers, relied on the Defendant in selecting the Product to fit their specific intended use.

194. Defendant held itself out as having particular knowledge of the Defendant's Product's ingredients.

195. The particular purpose for which the Products were used was to allow the consumer to avoid being exposed to synthetic ingredients.

196. Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Product to fit their particular purpose was reasonable given Defendant's claims and representations in the advertising, packaging, and labeling concerning the Product's ingredients.

197. Plaintiffs and the other Class Members' reliance on Defendant in selecting Defendant's Product to fit their particular use was reasonable given Defendant's particular knowledge of the Product it manufactures and distributes.

198. As a result of the foregoing, Plaintiffs and Class Members have been damaged in the amount paid for the Defendant's Product, together with interest thereon from the date of purchase.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the nationwide Class under Rule 23 of the FRCP;

(b) Certifying Plaintiffs as the class representatives of the state Subclasses of the states in which they reside;

(c) Appointing counsel as class counsel for the national class and any state Subclasses;

(d) Awarding monetary damages, including treble damages;

(e) Awarding punitive damages;

(f) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable attorneys' fees, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: October 13, 2017        NYE, PEABODY, STIRLING, HALE & MILLER, LLP

By:   /s/
      Jonathan D. Miller, Esq.
      Alison M. Bernal, Esq.

Dated: October 13, 2017        CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP

By:   /s/
      Todd D. Carpenter, Esq.

Dated: October 13, 2017        THE SULTZER LAW GROUP P.C.

By:   /s/
      Jason P. Sultzer, Esq.
      Joseph Lipari, Esq.
      Adam Gonnelli, Esq.
      Jeremy Francis, Esq.

Dated: October 13, 2017        WALSH, LLC

By:   /s/
      Bonner Walsh, Esq.

*Attorneys for Plaintiffs and the Class*

# **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims so triable in the above referenced-matter.

Dated: October 13, 2017       NYE, PEABODY, STIRLING, HALE & MILLER, LLP

By: _/s/_
     Jonathan D. Miller, Esq.
     Alison M. Bernal, Esq.

Dated: October 13, 2017       CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP

By: _/s/_
     Todd D. Carpenter, Esq.

Dated: October 13, 2017       THE SULTZER LAW GROUP P.C.

By: _/s/_
     Jason P. Sultzer, Esq.
     Joseph Lipari, Esq.
     Adam Gonnelli, Esq.
     Jeremy Francis, Esq.

Dated: October 13, 2017       WALSH, LLC

By: _/s/_
     Bonner Walsh, Esq.

*Attorneys for Plaintiffs and the Class*