1  **NYE, PEABODY, STIRLING, HALE**
2  **& MILLER, LLP**
   Jonathan D. Miller (CA 220848)
   Alison M. Bernal (CA 264629)
3  Jonathan@nps-law.com
4  33 West Mission St., Suite 201
   Telephone: (805) 963-2345
5  Facsimile: (805) 563-5385

6  **CARLSON LYNCH SWEET**
7  **KILPELA & CARPENTER, LLP**
   Todd D. Carpenter (CA 234464)
8  tcarpenter@carlsonlynch.com
9  1350 Columbia Street, Ste. 603
   Telephone: (619) 762-1900
10 Facsimile: (619) 756-6991

11 *Attorneys for Plaintiffs and the Class*
12 *[Additional Counsel Listed on Signature Page]*

13            **UNITED STATES DISTRICT COURT**
14            **CENTRAL DISTRICT OF CALIFORNIA**
15

16 MEGAN SCHMITT, DEANA          Case No. 8:17-cv-01397-JVS-JDE
   REILLY, CAROL ORLOWSKY, and
17 STEPHANIE MILLER BRUN,        **PLAINTIFFS' MEMORANDUM OF**
   individually and on behalf of  **POINTS AND AUTHORITIES IN**
18 themselves and all others similarly **SUPPORT OF MOTION FOR CLASS**
   situated,                      **CERTIFICATION**
19
                Plaintiffs,       *Filed Concurrently with*
20                                *Declaration of Adam Gonnelli,*
             v.                   *Declaration of Bonner Walsh,*
21                                *Declaration of Donald May*
   YOUNIQUE, LLC,                 *and [Proposed] Order*
22
                Defendant.
23
24                               Complaint Filed: 8/17/17
25                               Trial Date: 2/19/19
26
27
28
                                    -1-

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................... 8

II.  FACTS ......................................................................................... 8

III.  THE PROPOSED CLASSES ........................................................ 11

IV.  THE REQUIREMENTS OF RULE 23 ......................................... 11

    A.  The Requirements of Rule 23(a) ......................................... 12

    B.  The Requirements of Rule 23(b) ......................................... 15

        1.  The Predominance of Common Issues of Fact .................... 15

        2.  The Predominance Of Common Questions Of Law And The Elements Of Plaintiffs' Causes Of Action ......................................... 17

            a.  California's Consumers Legal Remedies Act ....................... 17

            b.  California's Unfair Competition Law ..................................... 18

            c.  The Ohio Consumer Sales Practices Act ................................ 20

            d.  Florida's Deceptive and Unfair Trade Practices Act .............. 21

            e.  The California Express Warranty Claim ................................ 21

            f.  The Ohio Express Warranty Claim ...................................... 23

            g.  The Tennessee Express Warranty Claim ............................... 24

            h.  Breach of Implied Warranty of Merchantability Claims ........ 25

            i.  Magnuson-Moss Breach of Implied Warranty ...................... 26

        3.  Common Proof of Damages ................................................ 26

        4.  Superiority ........................................................................ 29

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

C.    Ascertainability .................................................................. 30

V.    THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS
      REPRESENTATIVES OF THEIR HOME STATES AND THEIR COUNSEL AS
      COUNSEL FOR THE FOUR CLASSES ................................................. 31

VI.   CONCLUSION ............................................................................... 32

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001) ................................ 12

*Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) ............................... 23

*Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992)....................... 28

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) ............... 15

*Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003) ................................... 17, 19

*Brown v. Hain Celestial Group, Inc.*, No. 11-03082, 2014 U.S. Dist. LEXIS 162038 *57

(N.D. Cal. Nov. 18, 2014) ................................................................. 27

*Carriuolo v. General Motors Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016) ............ 21

*Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 178-81

(1999)......................................................................................... 19

*Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *15 n.57

(N.D. Ohio Apr. 24, 2017)............................................................... 24

*Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) .......... 27

*Comcast Corp. Behrand*, 569 U.S. 27, 30 (2013) ..................................... 16

*Cortez v. Purolator Air Filtration Products*, 23 Cal. 4th 163, 177 (2000) ................ 28

*Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016)..................... 30

*Dei Rossi vs. Whirlpool*, Case No. 12-cv-00125, 2015 U.S. Dist. LEXIS 55574, *2

n.1(E.D. Cal April 28, 2015) ............................................................ 29

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ......................... 30

*Erica P. John Fund v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ..................... 17

*Falco v. Nissan North America Inc.*, No. CV 13-00686, 2016 U.S. Dist. LEXIS 46115, *21

(C.D. Cal. Apr. 5, 2016) ......................................................... 18, 19, 20

*Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) ................ 21

*Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (2002)................ 19

*General Telephone Co. v. Falcon*, 457 U.S. 147, 156 (1982)............................ 12

*Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 U.S. Dist. LEXIS 131198, at *15-16 (N.D. Ohio Nov. 11, 2011) .................................................................................. 23

*Gregg v. Y.A. Co.*, No. 1:06-cv-203, 2007 U.S. Dist. LEXIS 94861 (Dec. 28, 2007) ........ 25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ........................... 12, 13, 29

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1011 (C.D. Cal. 2015) .......... 20, 21, 22, 29

*In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) .................................... 27

*In re High Tech Employees Antitrust Litig.*, 289 F.R.D. 555, 582-83 (N.D. Cal. 2013) ..... 27

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) .................................... 22

*In re Sony Vaio Computer Notebook Trackpad Litig.*, No. AJB 09-cv-2109, 2013 U.S. Dist. LEXIS 194010, *47 (S.D. Cal. Sept. 25, 2013) ....................................................... 26

*In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) ...................................................... 18, 19

*Jones v. MFW-Wo, Inc.*, 265 F.Supp.3d 775, 781 (M.D. Tenn. 2017) ................................. 25

*Kumar v. Salov North America Corp.*, No.14-CV-2411, 2016 U.S. Dist. LEXIS 92374 *18 (N.D. Cal. July 15, 2016) ................................................................................................. 29

*Laster v. T-Mobile United States, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005) ......... 18

*Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 506-07 (2003) ............................. 19

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ..................... 26, 27, 30

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) ................................. 27, 31

*Local Joint Executive Board or Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ............................................................................. 14

*Lump v. Best Door and Window, Inc.*, 2002 Ohio App. LEXIS 1381 *12 (Ohio. App. 2002) ................................................................................................................................. 20

*Mass. Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002) ............................................................................................................................. 16, 18

*McCrary v. Elations Co., LLC.*, No. 13-00242, 2014 U.S. Dist. LEXIS 8443 (Jan. 13, 2014) ................................................................................................................................ 31

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) ....................... 19

*Meyer v. Portfolio Recovery Associates*, LLC, 707 F.3d 1036, 1041 (9th Cir. 2012) ........ 11

*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980) ................................ 19

*Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010).................. 21

*Norcold, Inc. v. Gateway Supply Co.,* 154 Ohio App. 3d 594, 2003 Ohio 4252, 798 N.E.2d
618, 623-24 (Ohio Ct. App. 2003).................................................................................... 24

*Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D. Cal. 2008)............. 31

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012).................... 31

*Risner v. Regal Marine Indus.*, 8 F. Supp. 3d 959, 991 (S.D. Ohio 2014).......................... 23

*Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1178 (S.D. Cal. 2012) ...................... 22

*See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 1917, 2013 U.S. Dist. LEXIS
137945 *138 (N.D. Cal. June 20, 2013) .......................................................................... 26

*Shumaker v. Hamilton Chevrolet, Inc.*, 920 N.E.2d 1023, 1030-31 (Ohio App. 2009) ...... 20

*Smith v. TimberPro Inc.*, 2017 Tenn. App. LEXIS 163, *12 (Tenn. Ct. App. Mar. 9, 2017)
......................................................................................................................................... 24

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) ................................ 19

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) .............. 18, 26

*Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018) .............. 18

*Tyson Foods Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) ......................................... 17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) ....................... 30

*Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 350 (2011)................................................ 15

*Washington v. Spitzer Mgmt. Inc.*, 2003 Ohio App. LEXIS 1640 (Ohio App. 2003)......... 20

*Weinstat v. Dentsply International, Inc.*, 180 Cal.App.4th 1213, 1227 (Cal. 2010) ........... 22

*Williams v. Gerber Products Co.*, 552 F.3d, 934, 938 (9th Cir. 2008) ............................... 19

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1174-75 (9th Cir. 2010)
................................................................................................................................... 13, 30

*Zakaria v. Gerber Prods. Co.*, No. CV15-00200, 2016 U.S. Dist. LEXIS 184861 *38
(C.D. Cal. March 23, 2016) ............................................................................................ 22

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ...................... 29

**Statutes**

Cal. Civ. Code § 1770(a) ........................................................................ 17

Fed. R. Civ. P. 23(b)(3) .......................................................................... 15

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The issue at the center of this litigation is whether the mascara fibers sold by Younique, were, as promised, "Natural Fibers" and "100% Natural Green Tea fibers," or not. Resolution of this issue will answer most of the questions in this litigation and dispose of most of the elements of Plaintiffs' eleven causes of action under four state laws. Plaintiffs ask the Court to certify four state classes (California, Ohio, Florida and Tennessee) and to appoint them class representatives of their respective home states. Because the claims of the class members can be addressed with common evidence, Plaintiffs' motion should be granted.

### II.     FACTS

Younique promotes itself as a company specializing in natural cosmetics. *See* ██ █ ███████████████████████████████████████████ ██████████████; Ex. 2 (Younique website capture from August 2013 stating "NATURAL BEAUTY Younique Products – specializing in organic, all-natural, mineral-based cosmetics…"); Ex. 3 (Younique website capture from August 2014 touting "NATURAL BEAUTY"). In addition, a document Younique sent to its sales force at some point prior to October 2014, but which Younique failed to produce in discovery despite clear requests to do so, stated:

> **1. NATURALLY-BASED PRODUCTS**
> **Every single one of our products are considered naturally-based and a majority of them are considered all-natural.**
>
> **3d Fiber Lashes __ Transplanting Gel is 87% +/- Natural and the Green Tea Fibers are 100% Natural**

Ex. 4.

Between October of 2012 and July of 2015, Younique marketed and sold the

---

[1] "Ex." refers to exhibits to the Declaration of Adam Gonnelli in Support of Plaintiffs' Motion for Class Certification dated August 1, 2018 (in turn referred to as "Declaration" or "Decl.").

product at issue in this case, the "Moodstruck 3D Fiber Lashes" (the "Fiber Lashes" or the "Product."). The Lashes have two components, an applying gel and the fiber lashes themselves.

███████████████████████████████████████████████████████████

███████████████████. The two labels used between October 2012 and July 2015 prominently featured the representation that the fibers were "Natural" and made from "100% Green Tea Fibers":

**TRANSPLANTING GEL**
**& NATURAL FIBERS**

**NATURAL FIBERS**
**Net Wt. .02 oz/.5g**

**NATURAL FIBERS INGREDIENTS:**
**100% Natural Fibers taken from the**
**Campanulaceae[2] of Green Tea**

Ex. 6, ████████████████; and

**TRANSPLANTING GEL**
**& NATURAL FIBERS**

**NATURAL FIBERS**
**Net Wt. .02 oz/.5g**

**NATURAL FIBERS INGREDIENTS:**
**100% Natural Green Tea Fibers**

Ex. 7, ████████████████.

████████████████████████████████████████████████████████████

---
[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

-9-



21   and does not contain green tea leaves.

22 However, Younique continued to sell the Fiber Lashes through July of 2015 with the

23 label stating that the fibers were "Natural" and "100% Natural Green Tea Fibers."

## III.   THE PROPOSED CLASSES

Plaintiffs seek certification of four state classes, California, Tennessee, Ohio and Florida. Plaintiffs assert eleven causes of action, each of which can be decided using proof that is common to the class. The proposed class definitions are:

California Class: All California consumers who purchased stand-alone Moodstruck 3D Fiber Lashes between October 2012 and July 2015 for personal, family or household use.

Tennessee Class: All Tennessee consumers who purchased stand-alone Moodstruck 3D Fiber Lashes between October 2012 and July 2015 for personal, family or household use.

Ohio Class: All Ohio consumers who purchased stand-alone Moodstruck 3D Fiber Lashes between October 2012 and July 2015 for personal, family or household use.

Florida Class: All Florida consumers who purchased stand-alone Moodstruck 3D Fiber Lashes between October 2012 and July 2015 for personal, family or household use.

There is considerable overlap among the eleven causes of action with respect to the elements that Plaintiffs are required to prove. A determination of the truth or falsity of the central allegation of the case, that in contradiction of Younique's representations, the fibers in the Fiber Lashes were not "Natural" or made of "Green Tea Fibers," is a key element of all causes of action and will largely resolve the claims.

## IV.   THE REQUIREMENTS OF RULE 23

The party seeking class certification must show that each of the four requirements of Rule 23(a) are met and that at least one of the requirements of Rule 23(b) are met. *Meyer v. Portfolio Recovery Associates*, LLC, 707 F.3d 1036, 1041 (9th Cir. 2012). The four requirements of Rule 23 are commonly referred to as

1    numerosity, commonality, typicality, and adequacy. *See General Telephone Co. v.*

2    *Falcon*, 457 U.S. 147, 156 (1982).

3         Rule 23(b) sets forth three types of classes. Here, Plaintiffs will show that

4    Rule 23(b)(3) is met. Rule 23(b)(3) requires that "questions of law or fact common

5    to class members predominate over individual questions …and that a class action is

6    superior to other available methods for fairly and efficiently adjudicating the

7    controversy." Rule 23 confers upon the Court broad discretion to determine whether

8    a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir.

9    2001).

10        **A.    The Requirements of Rule 23(a)**

11        **Numerosity**: Numerosity is satisfied where "joinder of all members is

12   impractical."  Rule 23(a)(1). ████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████ Thus, numerosity is satisfied.

15        **Commonality**: The requirement there are "questions of law or fact common

16   to the class" is satisfied where the case involves a "common core of salient facts."

17   *Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality is satisfied

18   here because class members were subjected to the same labeling that contained the

19   same misrepresentations, that the fibers were "Natural" and made of "100% green

20   tea fibers."

21        The common issues all revolve around defendant's conduct not the individual

22   experience of plaintiffs. Did the label misrepresent the ingredients?  What were the

23   fibers made of? Were the representations on the label material to a reasonable

24   consumer? What is the proper measure of class damages? As discussed infra,

25   Sections IV.B.1 and IV.B.2, such questions predominate over individual questions.

26        **Typicality**: The typicality test under Rule 23(a)(3) is met when the class

27   representative(s) have the same or similar injury and the case is not based on

28
                                    -12-

conduct unique to the plaintiff. *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1174-75 (9th Cir. 2010). Typicality requires only that the claims of the named plaintiffs are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the claims of the class arise from the same misconduct that Plaintiffs seek to remedy – the misrepresentations concerning what the fibers are made of. The same misrepresentations were made on all Products, including those purchased by Plaintiffs during the class period.  *See* ███████████████████████████

Each of the Plaintiffs bought the Fiber Lashes in reliance on the representation that the fibers were "natural." *See* ████████████████████

Accordingly, the claims of the Plaintiffs are typical of those of the class.

1     **Adequacy**: Under Rule 23(a)(4), plaintiffs and their counsel must be adequate

2    to represent the class. Courts look to any conflicts of interest with other class

3    members and whether plaintiffs and their counsel will vigorously prosecute the

4    litigation. *Hanlon*, 150 F.3d at 1020.

5     Plaintiffs are adequate where they understand their duties and are "currently

6    willing and able to perform them. The Rule does not require more." *Local Joint*

7    *Executive Board or Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

8    F.3d 1152, 1162 (9th Cir. 2001).

9     All four Plaintiffs are adequate class representatives. All four share the same

10   claims and interests in obtaining the same relief as other class members. In addition,

11   none have any conflicts with the class. Since the litigation has commenced, all four

12   have been actively involved in the litigation. They have each sat for depositions,

13   responded to discovery demands, reviewed filings. Each understand that their role as

14   class representatives is to serve the best interests of the class as a whole and each

15   have stayed informed regarding the proceedings in the case. *See*



25    In addition, they have retained capable counsel to represent them. Counsel in

26   this case are experienced (*see* firm resumes and declaration attached as Exhibits 14

27   and 15 to the Declaration) and have no conflicts with the class.

28

1     Accordingly, Plaintiffs and their counsel satisfy the adequacy requirement.

2     **B.     The Requirements of Rule 23(b)**

3        Under Rule 23(b)(3) a class may be certified if "questions of law or fact

4    common to class members predominate over any questions affecting only individual

5    members, and that a class action is superior to other available methods for fairly and

6    efficiently adjudicating the controversy." Rule 23(b)(3) also sets forth factors for

7    courts to consider in evaluating predominance and superiority. These factors are: A)

8    the class members' interests in individually controlling the prosecution or defense of

9    separate actions; (B) the extent and nature of any litigation concerning the

10   controversy already begun by or against class members; (C) the desirability or

11   undesirability of concentrating the litigation of the claims in the particular forum;

12   and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

13       To be certified under Rule 23, Plaintiffs' claims must "depend on a common

14   contention" the validity of which is "capable of class-wide resolution – which means

15   that determination of its truth or falsity will resolve an issue that is central to the

16   validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes,*

17   564 U.S. 338, 350 (2011). The Ninth Circuit has stated that predominance exists

18   where common questions present "a significant aspect of the case that can be

19   resolved for all members of the class in a single adjudication." *Berger v. Home*

20   *Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014). Here, common questions of

21   fact and law easily predominate over individual ones.

22       **1.     The Predominance of Common Issues of Fact**

23       Common questions of fact predominate in this case because the claims of

24   Plaintiffs and each class member arise from the same factual misrepresentation:

25   That the fibers were "Natural" and made from "green tea fibers."

26       Accordingly, determining the truth or falsity of the following questions of fact

27   will all but dispose of the litigation. In addition, those determinations can be made

28

1    with evidence that is common to the class.

2        1.    Did Younique represent that the fibers in its Moodstruck 3D Fiber

3    Lashes product were "Natural Fibers" and made from "100% Green Tea Fibers"?

4        This question is common to all consumers who purchased the Fiber Lashes

5    during the class period and can be demonstrated with common evidence, i.e. the

6    labeling of the Products. *See* ███████████████████████████

7    ███████████

8        2.    Were these representations false?

9        This is a binary question which will be decided once with common evidence

10   for the whole class. ████████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████

13       3.    Were the representations material?

14       Materiality is a question of fact and is analyzed from the viewpoint of an

15   objective, reasonable consumer. *Mass. Mutual Life Insurance Co. v. Superior Court*,

16   97 Cal. App. 4th 1282, 1294 (2002) (materiality is a "common question of fact

17   suitable for class treatment."). Thus, the question of whether a reasonable consumer

18   would consider Younique's representations material can be answered once for the

19   whole class. ████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████

25       4.    Did class members suffer damage as a result of these

26   misrepresentations?

27       Under *Comcast Corp. Behrand*, 569 U.S. 27, 30 (2013), Plaintiffs must show

28

-16-

1 │ that "damages are capable of measurement on a class-wide basis."  The evidence

2 │ used to perform this analysis is not individual to class members. *See* Declaration of

3 │ Donald M. May, Ph.D., CPA, dated August 1, 2018, submitted herewith.

4 │      Since the most important issues in the case can be determined on a class-wide

5 │ basis, as the Supreme Court stated in *Tyson Foods Inc. v. Bouaphakeo*, 136 S.Ct.

6 │ 1036, 1045 (2016): "[T]he common, aggregation-enabling, issues in this case are

7 │ more prevalent" than "non-common, aggregation-defeating individual issues.".

8 │      **2.**     **The Predominance Of Common Questions Of Law And The**

9 │      **Elements Of Plaintiffs' Causes Of Action**

10 │      The determination of whether questions of law or fact predominate begins

11 │ "with the elements of the underlying causes of actions." *Erica P. John Fund v.*

12 │ *Halliburton Co.*, 563 U.S. 804, 809 (2011). In this case, there are eleven causes of

13 │ action, but elements of each claim have significant overlap and can be determined

14 │ with common evidence.

15 │      **a.**     <u>**California's Consumers Legal Remedies Act**</u>

16 │      The CLRA makes it unlawful to use "unfair methods of competition and

17 │ unfair deceptive acts and practices" in the sale of goods to a consumer. Cal. Civ.

18 │ Code § 1770(a). Plaintiff Schmitt pleaded in the Second Amended Complaint (SAC)

19 │ that Younique had violated the CLRA by:

20 │           86. Representing that Products have characteristics, uses, or

21 │           benefits that they do not have, in violation of section 1770(a)(5);

22 │           87. Representing that Products are of a particular standard, quality, or grade when they are not, in violation of section

23 │           1770(a)(7); and

24 │           88. Advertising Products with the intent not to sell them as advertised, in violation of section 1770(a)(9).

25 │      To prove a claim under the CLRA, a plaintiff must show that a reasonable

26 │ consumer would likely be deceived. *Brockey v. Moore*, 107 Cal. App. 4th 86, 99

27 │ (2003). This analysis is conducted under an objective standard. *See Townsend v.*

28 │

1   *Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018) (finding that for

2   purposes of class certification the UCL and CLRA are "materially

3   indistinguishable" and both subject to "an objective, classwide inquiry.").

4       Under the CLRA, individual reliance is required by the plaintiff, *Laster v. T-*

5   *Mobile United States, Inc.*, 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005) (only lead

6   plaintiff needs to show reliance, which can be established by showing that the

7   misrepresentation was a substantial factor in the purchasing decision). ▓▓▓▓

8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ▓▓▓

10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ▓▓▓

11      But class-wide reliance can be presumed where the misrepresentation is

12  material. *In re Tobacco II Cases,* 46 Cal. 4th 298, 327 (2009); *Guido*, 284 F.R.D. at

13  482. Further, materiality is a factual inquiry which can be determined with common

14  evidence because the inquiry is conducted using a "reasonable person" standard.

15  *See Falco v. Nissan North America Inc.*, No. CV 13-00686, 2016 U.S. Dist. LEXIS

16  46115, *21 (C.D. Cal. Apr. 5, 2016) (certifying CLRA claim); *Mass. Mutual Life*

17  *Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1294 (2002) (materiality is

18  a "common question of fact suitable for class treatment.").

19      The objective tests for deception and materiality "renders claims under the

20  UCL, FAL and CLRA ideal for class certification because they will not require the

21  court to investigate class members' individual interaction with the product." *Tait v.*

22  *BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quotation

23  omitted). Here, Plaintiffs will be able to use common evidence to demonstrate

24  materiality.

25      Accordingly, the CLRA claim can be certified.

26          **b.**   **California's Unfair Competition Law**

27  Under the "fraudulent" prong of the UCL, the capacity of a misrepresentation

28

-18-

1   to deceive is "judged by the effect it would have on a reasonable consumer." *Lavie*

2   *v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 506-07 (2003).  A product's

3   labeling is misleading if, viewed objectively, it has "a likelihood of confounding an

4   appreciable number of reasonably prudent consumers exercising ordinary care."

5   *Brockey*, 107 Cal. App. 4th at 99. A showing that members of the public are likely

6   to be deceived is an objective test subject to common proof. *See Williams v. Gerber*

7   *Products Co.*, 552 F.3d, 934, 938 (9th Cir. 2008).

8       Once Plaintiffs have satisfied the reasonable consumer test, Defendant's

9   liability is established as to all class members because for class members, relief "is

10  available without individualized proof of deception, reliance and injury." *Stearns v.*

11  *Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Tobacco II*, 46 Cal.

12  4th at 320). "Unlike common law fraud, the focus in the UCL claim is on the

13  defendant's conduct, not the consumer's reaction." *Falco* at *25 (citing *Cel-Tech*

14  *Communications, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 178-81

15  (1999)).

16      A violation of the "unfair" prong of the UCL is shown where there is a

17  violation of "established public policy or if it is immoral, unethical, oppressive, or

18  unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*

19  *v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).   In evaluating a

20  claim under the unfair prong, "[t]he court must weigh the utility of the defendant's

21  conduct against the gravity of the harm to the alleged victim ..." *Motors, Inc. v.*

22  *Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *Gafcon, Inc. v. Ponsor &*

23  *Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (2002) (same).

24      Since the utility of Younique's conduct, of which Plaintiffs believe there is

25  none, can be examined by evaluating Younique, and the gravity of the harm can be

26  measured against the class as a whole, certification under the "unfair" prong of the

27  UCL is appropriate.

28

Under the UCL's "unlawful prong," unlawful business acts include "any practices forbidden by law," which includes Younique's breach of express warranties and violation of the CLRA. The same evidence that can be used to prove or disprove the CLRA and warranty claims can be used to prove a violation of the UCL's "unlawful" prong. *See Falco* at \*27 (certifying "unlawful" prong claim based on common evidence used for CLRA claim).

### c.     The Ohio Consumer Sales Practices Act

Ms. Brun's claims under the Ohio Consumer Sales Practices Act and Ohio Deceptive Trade Practices Act, SAC §§ 118-133, can be certified for class treatment as well.

"A class action for violation of the OCSPA can be maintained to redress a 'deceptive act [that] has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1011 (C.D. Cal. 2015), aff'd in part, 844 F.3d 1121 (9th Cir. 2017). This is exactly the case here.

Under the OCSPA courts apply an objective reasonableness standard to determine if the conduct is deceptive, unconscionable, or unfair. *In re ConAgra Foods*, at 1011, citing *Shumaker v. Hamilton Chevrolet, Inc.*, 920 N.E.2d 1023, 1030-31 (Ohio App. 2009). Further, a class-wide presumption of reliance is permitted where the defendant's conduct was common to all class members. *Id.* citing *Washington v. Spitzer Mgmt. Inc.*, 2003 Ohio App. LEXIS 1640 (Ohio App. 2003). In addition, materiality is viewed through the lens of a reasonable consumer. *Id.* citing *Lump v. Best Door and Window, Inc.*, 2002 Ohio App. LEXIS 1381 \*12 (Ohio. App. 2002). *See also Mann v. Acclaim Fin. Servs.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) (certifying class under OCSPA where the defendant's "general policy is the focus of the litigation.")

Thus, Plaintiffs can use common evidence to satisfy the objective reasonable

1    consumer standard.

2                      **d.**        **Florida's Deceptive and Unfair Trade Practices Act**

3          Similar to a claim under California law, a "claim under [the Florida Deceptive

4    and Unfair Trade Practices Act ] FDUTPA has three elements: (1) a deceptive or

5    unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. General Motors*

6    *Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016). Causation is proven objectively and

7    actual reliance is not required under FDUTPA. "[T]he question is not whether the

8    plaintiff actually relied on the alleged deceptive trade practice, but whether the

9    practice was likely to deceive a consumer acting reasonably in the same

10   circumstance." *Davis*, 776 So. 2d at 974; *see also Fitzpatrick v. General Mills, Inc.*,

11   635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]o satisfy FDUTPA's causation

12   requirement, each plaintiff is required to prove only that the deceptive practice

13   would – in theory – deceive an objective reasonable consumer."); *Nelson v. Mead*

14   *Johnson Nutrition Co.*, 270 F.R.D. 689, 692 (S.D. Fla. 2010) (certifying FDUTPA

15   claims for deceptive advertising of health benefits of baby formula products).

16         If Defendant's "Natural Fibers" and "100% Natural Green Tea Fibers" claim

17   is "likely to deceive" a reasonable consumer, then Defendant is liable under the

18   FDUTPA. And as with Plaintiffs' other causes of action, this determination can be

19   made once and applied to the claims of all the class members. *See In re ConAgra*

20   *Foods, Inc.*, 90 F. Supp. 3d 919, 995 (C.D. Cal. 2015) (finding predominance

21   satisfied and certifying a class under FDUTPA in a case involving deceptive "100%

22   natural" representations); *Fitzpatrick*, 635 F.3d at 1283 (approving conclusion that

23   "FDUTPA claim rises or falls based predominantly on issues for which class[-]wide

24   proof is appropriate" in class action alleging deceptive marketing of the "digestive

25   health benefits" associated with probiotic yogurt).

26                     **e.**        **The California Express Warranty Claim**

27         To prevail on a breach of express warranty claim under California law, a

28   

-21-

plaintiff must prove that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279, 2013 U.S. Dist. LEXIS 125607 *11 (N.D. Cal. Sept. 3, 2013) (citing *Weinstat v. Dentsply International, Inc.*, 180 Cal.App.4th 1213, 1227 (Cal. 2010)). Proof of reliance on specific promises or representations is not required. *Weinstat* at 1227; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) ("Because reliance is not an element of express warranty claims under California law, common questions predominate and class treatment is appropriate."); *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1178 (S.D. Cal. 2012) (actual reliance on advertisements, brochures, or packaging not required).

In addition, it can be assumed, absent affirmative evidence to the contrary, that Younique's representations concerning the fibers are part of the "basis of the bargain." "All statements of the seller become part of the basis of the bargain 'unless good reason is shown to the contrary.'" *Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 574 (quoting Cal. Com. Code § 2313, comment 8); *Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213, 1229 (2010) (affirmation of fact is part of agreement unless "clear affirmative proof" it has been removed.") (quoting Cal. Com. Code § 2313 comment 3).

Finally, the materiality of Younique's representations can be established on a classwide basis under the "reasonable consumer" standard. *In re ConAgra Foods* at 1019 (for class certification, Plaintiffs "need only demonstrate that a reasonable consumer" would find the "100% Natural" representation material.").

Accordingly, courts have found that breach of express warranty claims are appropriate for class treatment in product misrepresentation cases. *See*, e.g., *Zakaria v. Gerber Prods. Co.*, No. CV15-00200, 2016 U.S. Dist. LEXIS 184861 *38 (C.D. Cal. March 23, 2016) ("Determinations of whether Defendant misrepresented its

-22-

1  products and, as a result, whether warranties were breached, are common issues

2  appropriate for class treatment.") (Internal citations omitted); Allen v. Hyland's Inc.,

3  300 F.R.D. 643, 669 (C.D. Cal. 2014) ("Here, each of the elements is subject to

4  common proof. Plaintiffs allege that Defendants represented that the products would

5  be effective at treating various ailments, and such representations on the product

6  packaging formed part of the basis of the bargain."); *Astiana v. Kashi Co.*, 291

7  F.R.D. 493, 505 (S.D. Cal. 2013) (certifying breach of express warranty claim

8  where issue was whether Defendant's products contained artificial ingredients and

9  whether Defendant made material representations to the contrary).

10              **f.      The Ohio Express Warranty Claim**

11        Under Ohio law, an express warranty is created where there is:

12        (1) Any affirmation of fact or promise made by the seller to the buyer which

13  relates to the goods and becomes part of the basis of the bargain creates an express

14  warranty that the goods shall conform to the affirmation or promise.

15        (2) Any description of the goods which is made part of the basis of the

16  bargain creates an express warranty that the goods shall conform to the description.

17        Ohio Rev. Code Ann. § 1302.26(A)

18        To establish a breach of an express warranty under Ohio law based on a

19  misrepresentation like the one at issue here, the plaintiff must prove that the

20  statement is an affirmation of fact or description of goods (and not mere puffery)

21  which is made part of the basis of the bargain. *Risner v. Regal Marine Indus.*, 8 F.

22  Supp. 3d 959, 991 (S.D. Ohio 2014).

23        It would be difficult to argue that the representation that the fibers are

24  "Natural" and "100% Natural Green Tea Leaves" are not "affirmations of fact or

25  descriptions of goods."  In any case, that determination can be made once for the

26  entire class. *See Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 U.S. Dist. LEXIS

27  131198, at *15-16 (N.D. Ohio Nov. 11, 2011) (finding predominance and certifying

28

-23-

Ohio express warranty class in case involving representation on dietary supplement because meaning of descriptions on packaging, whether statement is "part of basis of bargain" and whether contents conformed to label can be determined on class-wide basis); *see also Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *15 n.57 (N.D. Ohio Apr. 24, 2017) (certifying Ohio express warranty class of purchasers of consumer product); c.f. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 551 (6th Cir. 2006) (affirming certification of Ohio express warranty class involving same warranty and same product defect).

With respect to the "basis of the bargain" language, like California law, representations on the product are considered part of the bargain. *See Godec* at *15 (terms on package become "basis of the bargain" by virtue of mere appearance, not reliance) Accordingly, there is no reliance requirement. *See Norcold, Inc. v. Gateway Supply Co.,* 154 Ohio App. 3d 594, 2003 Ohio 4252, 798 N.E.2d 618, 623-24 (Ohio Ct. App. 2003) (interpreting "basis of bargain" language and stating, "A decisive majority of courts that have considered this issue have reached the similar conclusion that reliance is not an element in a claim for breach of an express written warranty.")

Accordingly, the Ohio express warranty claim can be certified.

### g.  The Tennessee Express Warranty Claim

Under Tennessee law, a plaintiff establishes a prima facie claim for breach of express warranty when he or she proves three elements: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by the seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." *Smith v. TimberPro Inc.*, 2017 Tenn. App. LEXIS 163, *12 (Tenn. Ct. App. Mar. 9, 2017) (collecting cases).

Whether Younique's "Natural Fibers" and "100% Green Tea Fibers"

-24-

1   representations were affirmations of fact intending to induce buyers and whether the

2   Product is, in fact, made exclusively of Green Tea fibers are questions which can be

3   answered for all class members through common evidence regarding the

4   representation and the ingredients in the Product.  In addition, the plaintiff must rely

5   on the misrepresentation. *Jones v. MFW-Wo, Inc.*, 265 F.Supp.3d 775, 781 (M.D.

6   Tenn. 2017), which Ms. Brun did.  *See* ████████████████████████

7   ██████████████████████████████████████████████████████████

8   ██████████████████

9        As a result, common questions predominate over individual ones with regard

10   to Plaintiffs' claims under Tennessee express warranty law.

              **h.    Breach of Implied Warranty of Merchantability**

11

12                        **Claims**

13        The California, Ohio, and Tennessee claims for breach of implied warranty of

14   merchantability are based on the fact that the packaging of the Fiber Lashes does not

15   "conform to the promises or affirmations of fact made on the container or label."

16   *See* SAC ¶¶ 102-110; 142-150; 167-75.

17        As such, these claims are substantively identical to the corresponding breach

18   of express warranty claims. *See* December 4, 2018 Order at 3-4, Dkt. 53.

19        The exception is the distinction under Tennessee law between Plaintiff's

20   express and implied warranty claims. Unlike the reliance requirement for express

21   warranties, Tennessee implied warranties have no such obstacle. Although the claim

22   is premised on the same facts, a claim for a breach of implied warranty of

23   merchantability does not have an individual reliance requirement. *See Gregg v. Y.A.*

24   *Co.*, No. 1:06-cv-203, 2007 U.S. Dist. LEXIS 94861 (Dec. 28, 2007) (difference

25   between implied warranties for merchantability and fitness for particular purpose

26   with respect to reliance); *Swift Freedom Aviation, LLC v. R.H. Aero*, No. 1:04-CV-

27   90, 2005 U.S. Dist. LEXIS 37261 (Sept. 13, 2005) (to similar effect).

28

-25-

1       Accordingly, the same classwide evidence used to determine the California,

2    Ohio, and Tennessee breach of express warranty claims can also be used to

3    determine the implied warranty claims.

4              **i.**     **<u>Magnuson-Moss Breach of Implied Warranty</u>**

5       For the reasons the implied warranty claims can be certified, Plaintiffs' claims

6    under the Magnuson-Moss Act, SAC ¶¶ 60-70, can also be certified. *See Tait v.*

7    *BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (certifying

8    New York and California classes alleging implied warranty and Magnuson Moss

9    Warranty claims "[b]ecause an implied warranty claim requires an objective

10   standard and because Plaintiffs' theory here is grounded in a defective design

11   common to all Washers"); *In re Sony Vaio Computer Notebook Trackpad Litig.*, No.

12   AJB 09-cv-2109, 2013 U.S. Dist. LEXIS 194010, *47 (S.D. Cal. Sept. 25, 2013)

13   (certifying California class for claims under implied warranty and the Manguson

14   Moss Warranty Act); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 569 (S.D. Cal.

15   2012) (same).

16           **3.**     **Common Proof of Damages**

17      Under Comcast, plaintiffs do not need to perform a damages calculation at the

18   class certification stage, but must show that "their damages stemmed from the

19   defendant's actions that created the legal liability" and that "damages could feasibly

20   and efficiently be calculated once the common liability questions are adjudicated."

21   *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

22      For this motion, the showing is limited to a suitable methodology to tie the

23   alleged wrongdoing to the damages suffered by the class. *See In re Cathode Ray*

24   *Tube (CRT) Antitrust Litigation*, No. 1917, 2013 U.S. Dist. LEXIS 137945 *138

25   (N.D. Cal. June 20, 2013) ("Comcast did not articulate any requirement that a

26   damage calculation be performed at the class certification stage." (citations

27   omitted)); *Brown v. Hain Celestial Group, Inc.*, No. 11-03082, 2014 U.S. Dist.

28

LEXIS 162038 *57 (N.D. Cal. Nov. 18, 2014) ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide approach, not to actually calculate under that approach before liability is established.").

Proposing such a damages methodology imposes "only a very limited burden." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (citing *Leyva*, 716 F.3d at 514.). Plaintiffs need not even show that the methods will work with certainty. *Chavez v. Blue Sky Natural Beverages Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010); *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) (plaintiff need not prove damages but only show damages are capable of proof on a class-wide basis); *In re High Tech Employees Antitrust Litig.*, 289 F.R.D. 555, 582-83 (N.D. Cal. 2013) (plaintiff met burden by showing "plausible method" of class-wide damage calculation).

The first step in a damages study is the "translation of the legal theory of the harmful event into an analysis of the economic impact of that event." Comcast at 38. Here, the "harmful event" is telling consumers the fibers they put on their eyelashes were "Natural Fibers" and "100% Green Tea Fibers" when they were not.

Plaintiffs have submitted the Declaration of Donald M. May, Ph.D., CPA, dated August 1, 2018 ("May Decl.) to describe the proposed methodologies for calculating damages. There are three damages theories:

<u>Full Refund</u>

If the Plaintiffs are awarded a full refund, the class-wide damage analysis is a simple calculation of total sales in the four states of the stand-alone Fiber Lashes during the class period. May Decl. ¶¶ 13-15. ████████████████████
████████████████████

<u>Disgorgement of Profits</u>

If Plaintiffs are successful, the class might be awarded damages in the amount of a disgorgement of profits. *See, e.g., Cortez v. Purolator Air Filtration Products,*

-27-

23 Cal. 4th 163, 177 (2000) (liability under UCL requires disgorgement of profits); *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992) (same).  If so, the class-wide damage calculation is equal to the units sold in the four states during the class period multiplied by the per-unit profit.  May Decl. ¶¶ 16-19 (wholesale price per unit and cost of goods sold including packaging, materials and transportation costs needed for profit calculation). ██████████████████████████████

██████████ Younique has redacted the data needed to calculate the per-unit profit. ██████████████████████████ Once this material is produced, the actual calculations can be performed.

<u>Price Premium Calculation</u>

████████████████████████████████████████████████

██████████ May Decl. ¶¶ 20-38. ██████████████████

██████████████████████████████████████

██████████ May Decl. ¶ 24. Plaintiffs' damages methodology will determine the magnitude of the premium for a product that included natural fibers rather than synthetic fibers.

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ May Decl. ¶ 20. Once the price premium is determined, it can be multiplied by the number of products sold during the class period in each of the four states to determine class damages.

There are several ways to calculate a price premium, including a conjoint analysis, contingent valuation and hedonic regression. Plaintiffs' expert proposes a hedonic regression methodology using two different data sets.

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

-28-

1 ████████████████████████████████████████████████████████████

2 ███████████████████████████████ May Decl. ¶ 21.

3 ████████████████████████████████████████████ May Decl. ¶¶

4 22.  The sales, attributes, price, and cost of goods of competing mascaras can be

5 analyzed to isolate the value of the "Natural" representations made by Younique.

6         The use of hedonic regression to calculate a price premium is widely accepted

7 by California federal courts. *See Kumar v. Salov North America Corp.*, No.14-CV-

8 2411, 2016 U.S. Dist. LEXIS 92374 *18 (N.D. Cal. July 15, 2016); *In re: ConAgra*

9 *Foods Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. Feb. 23, 2015) aff'd, *Briseno v. ConAgra*,

10 674 Fed. Appx. 654 (9th Cir. Jan. 3, 2017); *Dei Rossi vs. Whirlpool*, Case No. 12-

11 cv-00125, 2015 U.S. Dist. LEXIS 55574, *2 n.1(E.D. Cal April 28, 2015).

12         **4.       Superiority**

13         Rule 23(b)(3) also requires that the class mechanism be superior to other

14 methods of adjudication.  *See Hanlon*, 150 F.3d at 1023. To evaluate superiority,

15 courts consider:

16         (A) the class members' interests in individually controlling the prosecution or

17 defense of separate actions; (B) the extent and nature of any litigation concerning

18 the controversy already begun by or against class members; (C) the desirability or

19 undesirability of concentrating the litigation of the claims in the particular forum;

20 and (D) the likely difficulties in managing a class action.

21         Fed. R. Civ. P. 23(b)(3). "A consideration of these factors requires the court

22 to focus on the efficiency and economy elements of the class action so that cases

23 allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a

24 representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190

25 (9th Cir. 2001) (quotation omitted). Superiority is satisfied here considering these

26 factors.

27         First, class members have no interest in controlling individual actions because

28

1   the product costs under $30. Superiority "is met '[w]here recovery on an individual

2   basis would be dwarfed by the cost of litigating on an individual basis.'" Tait, 289

3   F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175). The cost of Fiber Lashes, although

4   hefty for a mascara, does not incentivize class members to seek redress on their

5   own.  This is especially true where the real ingredients of the fibers were not readily

6   apparent to the typical consumer and class members would not have known that

7   they had been lied to. *See also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326,

8   339 (1980) ("Where it is not economically feasible to obtain relief within the

9   traditional framework of a multiplicity of small individual suits for damages,

10  aggrieved persons may be without any effective redress unless they may employ the

11  class-action device.").

12         Second, Plaintiffs know of no other litigation involving the same claims.

13         Third, the presence of the litigation in this forum is a neutral factor.

14         Fourth, there will be no difficulties managing this action because it concerns

15  straightforward claims for breach of warranty and consumer fraud based on a

16  limited number of labeling statements that conveyed consistent messages.

17  Manageability concerns cannot, in any event, scuttle class certification under the

18  rubric of superiority "if no realistic alternative exists." *See Valentino v. Carter-*

19  *Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Levya*, 716 F.3d at

20  514-15. "The Ninth Circuit has recognized that a class action is a plaintiff's only

21  realistic method for recovery if there are multiple claims against the same defendant

22  for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D.

23  Cal. Aug. 10, 2016).

24         Accordingly, a class action is the best method to resolve this dispute.

25  **C.     Ascertainability**

26         Courts in the Ninth Circuit have added an 'ascertainability' requirement to

27  Rule 23. To satisfy the ascertainability requirement, the class definition must

28                              -30-

1 include objective criteria that can be used to determine if a consumer is a member of

2 the class. *See Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 593-94 (C.D.

3 Cal. 2008). The criteria in this case is simple:  consumers who purchased

4 Moodstruck 3D Fiber Lashes during the class period in California, Ohio, Tennessee

5 or Florida.

6      Notably, receipts of purchase are not necessary. *See Ries v. Arizona*

7 *Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting that such a

8 requirement would mean "there would be no such thing as a consumer class

9 action."); *McCrary v. Elations Co., LLC*., No. 13-00242, 2014 U.S. Dist. LEXIS

10 8443 (Jan. 13, 2014) (to similar effect); *Lilly v. Jamba Juice Co*., 308 F.R.D. 231,

11 238 (N.D. Cal. 2014) (same).

12 **V.     THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS**

13 **REPRESENTATIVES OF THEIR HOME STATES AND THEIR**

14 **COUNSEL AS COUNSEL FOR THE FOUR CLASSES**

15      In addition, Plaintiffs request they be appointed to represent their respective

16 state classes, and that their counsel be appointed to represent the classes pursuant to

17 Rule 23(g). Under Rule 23(g)(1), courts must appoint class counsel. The factors

18 courts must consider in making this appointment are:

19      (i)     The work counsel has done in identifying or investigating potential

20 claims in the action.

21      Counsel has performed testing on the product and thoroughly investigated the

22 products at issue and the composition of the class. Counsel has also brought claims

23 under various state laws and the federal Magnuson-Moss Act. Counsel has also

24 opposed several motions to dismiss Plaintiffs' claims.

25      (ii)     Counsels' experience in handling class actions, other complex

26 litigation, and the types of claims asserted in the action.

27      Counsel has extensive class action experience as shown by the firm resumes

28

1   (submitted as Exs. 14 and 15, and the Declaration of Bonner Walsh. In addition,

2   counsel has particular experience with "natural" misrepresentations. *See* Decl. ¶ 4.

3         (iii)    Counsel's knowledge of the applicable law.

4         Counsel have litigated federal consumer class actions for many years, and

5   have substantial knowledge of Rule 23 and state and federal consumer law.

6         (iv)    The resources that counsel will commit to representing the class.

7         Counsel has and will continue to dedicate substantial resources to the

8   prosecution of this action. In addition to the considerable attorney and staff time

9   dedicated to this case, Counsel has retained two outside experts, and incurred

10  significant out of pocket expenses.

11  **VI.   CONCLUSION**

12        For the reasons stated above, Plaintiffs' motion for class certification should

13  be granted.

14

15  Dated: August 1, 2018          NYE, PEABODY, STIRLING, HALE & MILLER, LLP

16                              By:  */s/*

17                                  Jonathan D. Miller, Esq.
                                    Alison M. Bernal, Esq.

18

19  Dated: August 1, 2018          CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP

20                              By:  */s/*

21                                    Ed Kilpela, Esq.

22

23  Dated: August 1, 2018          THE SULTZER LAW GROUP P.C.

24                              By:  */s/*
                                    Adam Gonnelli, Esq.

25

26  *Additional signatures on following page*

27

28

Dated: August 1, 2018                    WALSH, LLC

                                         By:  /s/
                                              Bonner Walsh, Esq.

                                         *Attorneys for Plaintiffs and the Class*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION