SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
SASCHA HENRY, Cal. Bar No. 191914
JONATHAN D. MOSS, Cal. Bar No. 252376
shenry@sheppardmullin.com
jmoss@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ABBY H. MEYER, Cal. Bar No. 294947
ameyer@sheppardmullin.com
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626-1993
Telephone:  714.513.5100
Facsimile:   714.513.5130

Attorneys for Defendant Younique, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MEGAN SCHMITT, DEANA REILLY, CAROL ORLOWSKY, and STEPHANIE MILLER BRUN, individually and on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>YOUNIQUE, LLC<br><br>        Defendant. | Case No. 8:17-cv-01397-JVS-JDE<br><br>**DEFENDANT YOUNIQUE, LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed Concurrently with Notice of Motion and Motion for Summary Judgment; Declaration of Sascha Henry in Support Thereof; and Separate Statement*]<br><br>Hearing Date:  October 22, 2018<br>Hearing Time:  1:30 p.m.<br><br>The Hon. James V. Selna<br>Santa Ana, Courtroom 10C<br><br>SAC filed:     January 4, 2018<br>Trial Date:     February 19, 2019 |

# [PUBLIC REDACTED VERSION]

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................1

II.     GENERAL BACKGROUND ...............................................................2

III.    CLAIMS ALLEGED BY PLAINTIFFS .............................................3

IV.     PLAINTIFFS' EXPERIENCES WITH THE LASH ENHANCER ................4

    A.      Plaintiff Reilly Bought the Lash Enhancer to Support Her Cousin, a Presenter, and Because it was the "Hot Product" of the Season...........................................................................................4

    B.      Plaintiff Orlowsky Wanted to Earn Money From Home, Became a Presenter and Used The Lash Enhancer To Sell It .............................5

    C.      Plaintiff Schmitt Bought the Lash Enhancer Because Women at a Dinner Party Recommended it to Her ...................................................7

    D.      Plaintiff Brun Received the Lash Enhancer For Free, Hosted a Party and Became a Presenter ...............................................................8

V.      PROCEDURAL HISTORY ..................................................................9

VI.     STANDARD FOR SUMMARY JUDGMENT....................................11

VII.    PLAINTIFF REILLY'S CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT FAILS .....................................13

VIII.   PLAINTIFF ORLOWSKY'S TENNESSEE CLAIMS FAIL......................14

    A.      Orlowsky Lacks Standing To Bring Claims Under Tennessee Law Because She Did Not Live There When She Bought The Lash Enhancer .............................................................................................14

    B.      Orlowsky's Warranty Claims Must Be Dismissed As She Failed to Provide Pre-Suit Notice .................................................................15

    C.      Orlowsky's Claims Fail Because She Has Not Suffered Injury or Damages as a Result of the Alleged Mislabeling ...............................16

IX.     PLAINTIFF SCHMITT'S CALIFORNIA CLAIMS FAIL..........................18

    A.      Schmitt's Claims Require Standing, Causation and Damages ............18

        1.      The UCL Requires Evidence of Standing, Causation and Damage...........................................................................................18

        2.      The Consumers Legal Remedies Act Requires Standing, Causation and Damages ................................................................19

3.    The Express and Implied Warranty Claims Require a Showing of Standing, Causation and Damages ........................19

B.    Schmitt Admitted Facts Showing She Lacks Standing and the Alleged Misrepresentation Did Not Cause Her Harm, and Lacks Evidence of Damages ....................................................................20

X.    PLAINTIFF BRUN'S OHIO CLAIMS FAIL...............................................21

A.    Brun Lacks Standing To Bring a Claim Under the Ohio Deceptive Trade Practices Act ............................................................21

B.    Brun's Ohio Consumer Sales Practices Act Is Time-Barred................22

C.    Brun's Warranty Claims Fail Because She Lacks Damages Caused By the Alleged Breach.............................................................22

XI.   PLAINTIFFS' MMWA FAILS ....................................................................24

XII.  PLAINTIFFS CANNOT SEEK EQUITABLE RELIEF ...............................24

XIII. CONCLUSION ............................................................................................25

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)..................................................................................12

*Audio Visual Artistry v. Tanzer*
    403 S.W.3d 789 (2012).......................................................................16, 18

*Baptist Hosp., Inc. v. Baker*
    84 So.3d 1200 (Fla. 1st DCA 2012)........................................................13

*Bearden v. Honeywell Int'l, Inc.*
    2010 U.S. Dist. LEXIS 83996 (M.D. Tenn. Aug. 16, 2010).............................16

*Blankenship v. CFMOTO Powersports, Inc.*
    161 Ohio Misc. 2d 5 (2011) .....................................................................22

*Bobb Forest Prods. v. Morbark Indus.*
    151 Ohio App. 3d 63 (Ct. App. 2002).................................................22, 23

*Butler v. Sterling, Inc.*
    2000 U.S. App. LEXIS 6419 (6th Cir. Mar. 31, 2000).......................................24

*In re Capacitors Antitrust Litig.*
    154 F.Supp.3d 918 .....................................................................................15

*Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Enters.*
    2015-Ohio-4884 (Ct. App. 2015)..............................................................22

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)..................................................................................12

*Chowning v. Kohl's Dep't Stores, Inc.*
    2018 U.S. App. LEXIS 16336 (9th Cir. June 18, 2018) .............................19

*Clemens v. DaimlerChrysler Corp.*
    534 F.3d 1017 (9th Cir. 2008).................................................................24

*In re ConAgra Foods, Inc.*
    90 F.Supp.3d 919 (C.D. Cal. 2015).........................................................20

*Farris v. ADT, LLC*
  2017 U.S. Dist. LEXIS 161003 (N.D. Ohio Sept. 29, 2017)...............................24

*Franklin v. Gwinnett Cty. Pub. Sch.*
  503 U.S. 60 (1992)..........................................................................................24

*Hadley v. Kellogg Sales Co.*
  273 F.Supp.3d 1052 (N.D. Cal. Aug. 10, 2017) ................................................20

*Johnson v. Hewlett-Packard Co.*
  809 F.Supp.2d 1114 (N.D. Cal. 2011) ...............................................................11

*Kwikset Corp. v. Super. Ct.*
  51 Cal.4th 310 (2011) .................................................................................18, 19

*Lavie v. Procter & Gamble Co.*
  105 Cal.App.4th 496 (2003)...............................................................................18

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992).....................................................................................12, 13

*Michelson v. Volkswagen Aktiengesellschaft*
  2018-Ohio-1303 (Ct. App. 2018) .......................................................................22

*Mort v. United States*
  86 F.3d 890 (9th Cir. 1996)................................................................................24

*Munning v. Gap, Inc.*
  238 F.Supp.3d 1195 (N.D. Cal. 2017) ...............................................................24

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
  210 F.3d 1099 (9th Cir. 2000)............................................................................12

*Pickens v. Phillips*
  1998 Ohio App. LEXIS 974 (Ct. App. 1998) ...............................................23, 24

*Pickern v. Pier 1 Imports (U.S.), Inc.*
  457 F.3d 963 (9th Cir. 2006)..............................................................................11

*Preston v. Manchester*
  1990 Tenn. App. LEXIS 625 (Aug. 31. 1990).............................................15, 16

*ProductiveMD, LLC v. 4UMD, LLC*
  821 F.Supp.2d 955 (M.D. Tenn. 2011) ..............................................................16

SMRH:487818058.3
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Rollins, Inc. v. Butland*
   951 So.2d 860 (Fla. Dist. Ct. App. 2006) ...................................................13, 14

*Rosenow v. Shutrump & Assocs.*
   163 Ohio App. 3d 500 (2005) .........................................................................22

*Rysewyk v. Sears Holdings Corp.*
   2015 U.S. Dist. LEXIS 169124 (N.D. Ill. Dec. 18, 2015)..................................15

*Sandoval v. Pharmacare US, Inc.*
   730 Fed.Appx. 417 (9th Cir. 2018) .............................................................19, 20

*Sateriale v. R.J. Reynolds Tobacco Co.*
   697 F.3d 777 (9th Cir. 2012).........................................................................19

*Siriano v. Goodman Mfg. Co., L.P.*
   2015 U.S. Dist. LEXIS 191458 (S.D. Ohio Aug. 18, 2015) ..............................15

*Smith v. TimberPro Inc.*
   2017 Tenn. App. LEXIS 163 (Mar. 9, 2017).....................................................16

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
   996 F.Supp.2d 942 (S.D. Cal. 2014) ................................................................21

*Soremekun v. Thrifty Payless, Inc.*
   509 F.3d 978 (9th Cir. 2007).........................................................................12

*Taylor v. Boardman Twp. Local Sch. Dist. Bd. of Educ.*
   2009-Ohio-6528 (Ct. App. 2009) ....................................................................23

*In re Tobacco II Cases*
   46 Cal.4th 298 (2009) ...................................................................................18

*Tuscany Invs. LLC v. Daimler Trucks North Am. LLC*
   2015 U.S. Dist. LEXIS 109842 (N.D. Cal. Aug. 19, 2015) ...............................24

*United Food & Commer. Workers Local 1776 & Participating*
   *Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*
   74 F.Supp.3d 1052 (N.D. Cal. 2014)................................................................15

*Viggiano v. Hansen Natural Corp.*
   944 F.Supp.2d 877 (C.D. Cal. 2013) ................................................................19

*In re Vioxx Class Cases*
   180 Cal.App.4th 116 (2009)............................................................................18

*Zlotnick v. Premier Sales Group, Inc.*
    480 F.3d 1281 (11th Cir. 2007)........................................................................13

<u>Statutes</u>

Cal. Bus. & Prof Code § 17200.......................................................................3, 18

Cal. Bus. & Prof. Code §§ 17204.........................................................................18

Cal. Civil Code § 1770.........................................................................................19

Cal. Civ. Code § 1750 et seq..................................................................................4

Cal. Comm. Code § 2313(1)(a), (b) ....................................................................19

Cal. Comm. Code § 2314.....................................................................................20

Cal. Comm. Code § 2714.....................................................................................20

CLRA §§ (a)(5) ....................................................................................................19

Consumers Legal Remedies Act ..........................................................................19

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat.
    § 501.201 .................................................................................3, 13, 14

Magnuson-Moss Warranty Act ....................................................................3, 4, 24

Ohio Consumer Sales Practices Act ..............................................................2, 4, 22

Ohio Deceptive Trade Practices Act ..............................................................2, 4, 21

Ohio Rev. Code § 1345.10(C)..............................................................................22

Ohio Rev. Code § 1345.01.....................................................................................4

Ohio Rev. Code § 4165.01.....................................................................................4

Tenn. Code Ann. § 47-2-607(3)(a).......................................................................15

Tenn. Code Ann. § 47-18-109..............................................................................16

Tennessee Consumer Protection Act................................................................3, 16

<u>Other Authorities</u>

Fed. R. Civ. P. 56(a) ............................................................................................11

Fed. R. Civ. P. 56(g) ............................................................................12

SMRH:487818058 3

## I.    <u>INTRODUCTION</u>

This lawsuit arises from an allegation that defendant Younique, LLC, falsely listed on the label of one of its cosmetic products that it contained natural green tea fibers.  (SAC, Dkt. 58, ¶¶ 2, 8, 22, 32, 36, 40 and 44.)  Though the operative complaint alleged that the four plaintiffs, Deana Reilly, Carol Orlowsky, Megan Schmitt and Stephanie Miller Brun, had relied on the label, they admitted facts during their depositions that show ███████████████████████████ ██████████  These admissions were not surprising because Younique products are only sold online, through independent contractors (called "Presenters"), and not at stores.  (*See* Henry Decl., Ex. D Brun Tr., 72:14-16.)[1]  Presenters purchase a "presenter kit", use the products in the kit (and purchase additional products as they use these up), and then post about them across social media platforms such as Facebook and Instagram.  Presenters drive sales by showing how they use and love the products.  Presenters receive commissions and royalties based on the volume of sales achieved.

The named Plaintiffs have testified to the circumstances and reasons for buying the product at issue, each of which demonstrate that they do not have standing to complain about being misled by the label, but also that the label did not cause them harm.  In addition, Plaintiffs lack evidence of damages to support their claims.  Though in discovery they promised to provide information about damages as part of their expert disclosures rather than produce responsive documents, their expert ██████████████████████████████████████.

Younique moves for summary judgment as to each Plaintiff on the grounds that they lack evidence of standing, causation and damages.  In addition, as set forth below, Plaintiff Orlowsky lacks standing to pursue a claim under Tennessee law as ████████████████████████████████████████████

---

[1]  All Exhibits referenced herein are attached to the Declaration of Sascha Henry, filed concurrently herewith.

1  ██████████████████████████████, which is fatal under

2  Tennessee law.  Plaintiff Brun, as a consumer, lacks standing to bring a claim under

3  Ohio's Deceptive Trade Practices Act, which is limited to other businesses.  Her

4  Ohio Consumer Sales Practices Act claim is time-barred.

## II.  GENERAL BACKGROUND

6       The Moodstruck 3D Fiber Lashes product at issue (the "Lash Enhancer") was

7  sold until July 2015.  (Dkt. 58, ¶ 8.)  The Lash Enhancer enhanced the look of

8  eyelashes and consisted of two tubes.  (Ex. T (authenticated at Ex. B, 169:25-170:5.)

9  One tube contained the transplanting gel and the second contained loose fibers.  (*See*

10 Ex. G (authenticated at Ex. D, 111:5-10).)  To use the Lash Enhancer, the consumer

11 first applied the transplanting gel to the eyelashes using a wand, similar to how a

12 mascara is applied.  Then, the consumer applied the fibers, again using a wand.  The

13 fibers adhered to the gel, enhancing the appearance of the consumer's eyelashes.

14 The transplanting gel was then reapplied to seal in the fibers.  In the image below,

15 which was an image used to market the Lash Enhancer, the left eye had the Lash

16 Enhancer applied and the right eye did not.



(YNQE0000266.)

24       The two tubes were packaged inside a hard, black case (akin to an eyeglass

25 case).  (*See* Ex. S (authenticated at Ex. B, 168:13-19).)  The front of the case

26 showed only the Younique logo, and had no images on the back.  Inside of the case

27 was a glossy insert.  (*See* Ex. H (authenticated at Ex. D, 120:6-11); Dkt. 58, SAC, ¶

1   8 (first image).)  The case was shrink-wrapped in plastic. (*See* Ex. H.)

2       The ingredients were listed on a label stuck to the shrink-wrap plastic on the

3   back of the case.  (Ex. H; SAC, ¶ 8 (second image); *see also* Ex. I for relative size

4   (Ex. I authenticated at Ex. D, 123:22-124:1).)  The ingredients for the gel described

5   some synthetic ingredients, and the ingredients for the fibers were described as

6   containing "natural" "green tea" fibers.  (Dkt. 58, ¶ 8 (images).)  Plaintiffs allege

7   that the fibers did not contain natural green tea fibers but rather were ground up

8   nylon.[2]  (*Id.*, ¶ 10.)

9   **III.   <u>CLAIMS ALLEGED BY PLAINTIFFS</u>**

10       Plaintiffs allege claims based on the alleged false labeling of the Lash

11   Enhancer.  (*Id.*, ¶ 2 ("Younique represented on its packaging that the [Lash

12   Enhancer] was natural and contained green tea fibers, when in reality the fibers were

13   just ground-up nylon."); ¶ 8 (showing image of Lash Enhancer insert and image of

14   back of the label); ¶ 22 (referring to representations on label); ¶ 32 (Schmitt); ¶ 36

15   (Reilly); ¶ 40 (Brun); ¶ 44 (Orlowsky).)

16       Plaintiff Reilly, a Florida resident, alleges a claim under Florida's Deceptive

17   and Unfair Trade Practices Act, Fla. Stat. § 501.201 ("FDUTPA").  (Dkt. 58, Claim

18   6.)

19       Plaintiff Orlowsky, ███████████████████, alleges claims under

20   the Tennessee Consumer Protection Act ("TCPA"), for breaches of express and

21   implied warranty, and for violation of the Magnuson-Moss Warranty Act

22   ("MMWA").  (Dkt. 58, Claims 11-13 and 1, respectively.)  ████████

23   ████████████████████████████████

24       Plaintiff Schmitt, a California resident, alleges claims under California's

25   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL"),

26

27   [2] ██████████████████████████████████████████

28   ██████   (Brun Tr., 31:2-15; 173:9-174:4; Orlowsky Tr., 153:12-154:9; Schmitt Tr., 67:5-71:2; 73:2-8; Reilly Tr., 121:12-122:6; 148:7-23.)

-3-

under subdivisions (a)(5), (a)(7) and (a)(9) of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), for breaches of express and implied warranty, and for violation of the MMWA.  (Dkt. 58, Claims 2-5 and 1, respectively.)

Plaintiff Brun, an Ohio resident, alleges claims under Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01, for breaches of express and implied warranty, and for violation of the MMWA.  (Dkt. 58 Claims 7-9 and 1, respectively.)

## IV.   PLAINTIFFS' EXPERIENCES WITH THE LASH ENHANCER

### A.   Plaintiff Reilly Bought the Lash Enhancer to Support Her Cousin, a Presenter, and Because it was the "Hot Product" of the Season

██████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████ (Ex. A ("Reilly Tr.") 43:24-44:10.) ███

████████████████████████████████████████████

████████████████████████ (*Id.*, 34:8-15.)

█████████████████████████████████████████

██████████████████. (*Id.*, 28:24-29:6; 30:5-32:7.) █████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ (*Id.*, 64:12-65:3.) ██████████████████

█████████████████████████████ (*Id.*, 33:23-34:7; 92:1-12; Ex. DD.)

██████████████████████████████████████

(Reilly Tr., 107:8-108:23.) ███████████████████████████████

███████████████████ (*Id.*) ██████████████████

███████████████████████████ (*Id.*, 67:6-68:3.) ████

█████████████████████████ (Ex. S; Reilly Tr., 110:19-24; 116:3-20.)



1

2 ███ (Reilly Tr., 153:19-154:15.)

3

4 ███ *Id.*, 27:15-29:1; 58:22-25.) ███

5 ███. (*Id.*, 60:21-62:3.)

6

7

8 (*Id.*, 64:6-11.)

9

10 (*Id.*, 134:21-135:9.)

11 She produced a receipt showing her purchase. (*Id.*, 38:11-21; Ex. E,

12 PL00001.)

13 **B.** **Plaintiff Orlowsky Wanted to Earn Money From Home, Became a**

14 **Presenter and Used The Lash Enhancer To Sell It**

15

16 ███. (Ex. B ("Orlowsky Tr.") 92:18-93:5.) ███

17 ███ (*Id.*, 131:9-25.) ███

18

19

20 ███ (*Id.*, 131:9-25.) ███

21 (*Id.*, 79:16-80:4.)

22 ███. (*Id.*, 195:3-7.)

23

24 ███ (Exs. V-Y, BB, CC; Orlowsky Tr., 90:4-91:24; 94:8-100:18; 120:23-

25 121:10.)

26 ███ (Orlowsky Tr.,

27 192:20-193:10.)

28 ███. (*Id.*, 90:9-

-5-



1  92:13.)

2  .

3  (*Id.*, 193:16-20; *see* https://www.youtube.com/watch?v=BOvTuxmX0ms; 194:6-

4  13).

5

6

7  . (*Id.*, 195:23-204:10.)

8  (*Id.*, 194:1-5.)

9  In her own video (https://www.youtube.com/watch?v=_N_1UedBZpY),

10 Orlowsky demonstrates how to apply the Lash Enhancer on herself, again showing a

11 comparison of one eye with the Lash Enhancer and one without.  (Orlowsky Tr.,

12 216:15-220:1.)  She never mentions natural green tea fibers or displays the Lash

13 Enhancer label.  (*Id.*)

14

15

16 (*Id.*, 111:16-113:10.)

17

18 (Exs. V-Y, BB, CC; Orlowsky Tr., 95:21-

19 98:10; 100:4-18; 110:15-113:10.)

20

21 (*Id.,* 103:2-3; 108:18-110:15; Ex. Z, AA.)

22

23 (Orlowsky Tr., 31:3-32:7.)

24 (*Id.*)

25

26 (*Id.*, 81:18-20.)

27

28 (*Id.*, 183:8-185:11; 190:3-191:8, Ex. GG (Response Nos. 4, 30, 31); Ex. HH

-6-

1  (Response Nos. 42, 43).)  Though counsel produced no receipts in response to

2  Younique's document requests and her responses said she had "none," counsel

3  produced four receipts the morning of her deposition.  (Exs. U, GG.)

4

5

6  Orlowsky Tr., 30:20-31:11.)

7

8  (*Id.*)

9

10  .  (*Id.*, 122:17-123:11.)

11  .  (*Id.* 17:2-9.)  .  (*Id.*,

12  37:23-38:1.)

13      **C.**    **Plaintiff Schmitt Bought the Lash Enhancer Because Women at a**
        **Dinner Party Recommended it to Her**

14

15  .  (Ex. C
   ("Schmitt Tr.") 32:19-33:13.)

16  (*Id.*, 131:3-15.)

17

18  (*Id.*, 36:5-15; 39:19-40:6.)

19  (*Id.*)

20

21  (*Id.*, 102:18-104:2.)

22  .  (*Id.*, 32:19-

23  33:2.)

24

25  (*Id.*, 41:5-42:6.)

26

27  (*Id.*, 39:19-25.).

28



-7-

1 ██████████████████████████████████████████████

2 ████████████ (Schmitt Tr., 42:24-44:8.) ████████████████████

3 ██████████████████████████████████ (*Id.*) ██████████████████

4 █████████████ (*Id.*)

5 █████████████████████████████████

6 ████████████████████

7 ██████████████████████████

8 ████

9 ██████████

10 ████.

11 (*Id.*, 47:16-48:1.)

12 ██████████████████████████████████████████████

13 ████████████. (*Id.*, 126:25-127:9.) █████████████████████

14 ████████████████████████████████ (*Id.*, 52:8-22; 54:2-17.) ████

15 ██████████████████████████████ (*Id.*, 52:23-25.) ████████████

16 █████████████████ (*Id.*, 55:5-8.)

17 ████████████████████████████████████████████

18 ████████████████████████████████████████. (*Id.*,

19 129:5-130:1.) ████████████████████████████████

20 ████████████████████████ (*Id.*, 131:15-132:1.)

**D.** <u>**Plaintiff Brun Received the Lash Enhancer For Free, Hosted a Party and Became a Presenter**</u>

23 ██████████████████████████████████████████████

24 ████████████ (Ex. D, "Brun Tr.," 88:4-15.) ████████████████

25 ██████████████████████████████████████████████

26 ████████████ (*Id.*, 89:1-92:1.) ████████████████████████

27 ████████████ (*Id.*) █████████████████████████████

28 ██████████████████████████████████████████████

1  ██████████████. (*Id.* 84:25-85:24; 88:16-20.) ███████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████. (*Id.*, 94:25-96:3.) ██████████████████████████

4  ████████   (*Id.*, 90:6-11; 94:13-24.)

5  ██████████████████████████████████████████████████

6  ██████████████████. (*Id.*, 231:10-235:8; 279:2-280:11; Ex. R.)  Brun created

7  a YouTube video in which she demonstrated the Lash Enhancer on herself, but did

8  not talk about the Lash Enhancer as having natural or green tea fibers and did not

9  display the  label.  (Ex. Q*;* Brun Tr., 231:16-234:8;

10  https://www.youtube.com/watch?v=97wKoHB2Svg.) ██████████████████

11  ████████████████████████████████████████████████████████

12  █████████████████████   (Brun Tr., 279:21-280:8.) ██████████████████

13  ████████████████   (*Id.*, 280:9-11.) █████████████████████████. (*Id.*

14  162:1-10.)

15  ██████████████████████████████████████████████████

16  ███   (*Id.*, 51:3-12.)  In response to Younique's document requests, counsel

17  produced one receipt showing the purchase of the Lash Enhancer on November 18,

18  2014.  (Henry Decl., ¶ 9; Ex. E.)  Just before her deposition, her counsel produced

19  eight more receipts.  (Exs. F, J-P.)  The receipts showed Brun buying five Lash

20  Enhancers at one time, buying the Lash Enhancer as part of a collection of products,

21  and buying the Lash Enhancer purchased with a half price coupon.  █████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ██████████████████   (*Id.*, 50:7-16 (emphasis added); *see also* 50:17-51:2.)

25  **V.     PROCEDURAL HISTORY**

26       Plaintiff Schmitt filed this lawsuit on August 16, 2017.  (Dkt. 1.)  She

27  amended her complaint and added the remaining plaintiffs on October 16, 2017.

28  (Dkt. 43.)  Counsel for the parties filed a joint scheduling conference report on

December 4, 2017, appeared for a scheduling conference on December 11, 2017, and the Court entered two scheduling orders.  (Dkts. 54, 56, 56-1.)  The parties served initial disclosures on January 10, 2018.  (Henry Decl., ¶ 3.)

Younique propounded document requests on February 14, 2018, to which Plaintiffs responded by producing eight pages of documents and responding that they had no others.  (Henry Decl., ¶ 9, Ex. E.)  Younique asked for, among other categories, the documents supporting Plaintiffs' contentions that they had paid a premium for the Lash Enhancer, that the Lash Enhancer had less value than represented, and documents supporting their calculation of monetary damages.  (Ex. EE, RFP Nos. 9, 16, 17, 20, 21, 23, 24-27.)[3]  With the exception of No. 23, Plaintiffs responded that these categories called for expert discovery and promised to comply with the Federal Rules of Civil Procedure and case management orders to disclose expert information.  (Exs. FF (Reilly), GG (Orlowsky), II (Schmitt), JJ (Brun) (Responses to Nos. 9, 16, 17, 20, 21, 24-27).)  In response to No. 23, Plaintiffs objected on privilege grounds, and plaintiff Brun's responses, referred to a total receipt.  (Exs. FF (Reilly), GG (Orlowsky), II (Schmitt), JJ (Brun) (Response to Nos. 23).)

 After conferring with Plaintiffs' counsel as to the types of sales data they needed for the Lash Enhancer, Younique produced sales data and retail pricing in Excel format on April 18, 2018.  (Henry Decl., ¶ 43, Ex. MM, p. 2.)

Younique noticed Plaintiffs' depositions on April 18, 2018, but Plaintiffs did not appear and did not provide any alternative dates.  (Henry Decl., ¶ 4, Dkt. 66, ¶¶ 6, 7.)  Ultimately after meeting and conferring, counsel negotiated a stipulation to allow Plaintiffs' depositions to proceed after the discovery cutoff, allow Plaintiffs to depose Younique's Rule 30(b)(6) witness (though Plaintiffs had not noticed a single deposition), and postpone Plaintiffs' filing of their motion for class certification.

---

[3]  Younique served identical requests on each Plaintiff.  (Henry Decl., ¶ 35.)

(Dkt. 66, ¶¶ 8-10; Dkt. 67.)  The stipulation did not change the due date for the initial expert reports; they remained due on August 1, 2018. (Dkts. 54, 56, 56-1, 67.)

On August 1, 2018, Plaintiffs served the expert report of Donald M. May, Ph.D.  (Henry Decl., ¶ 41, Ex. KK ("May Report").)  Dr. May's expert report is the same document that Plaintiffs submitted with their motion for class certification. (*C.f.* May Report and Dkt. 80-2.) ███████████████████████████████ ████████████████████████████████████ (May Report.) ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. (*Id.*, ¶¶ 22, 31.)  Two days before he served his report, and after the extended discovery cutoff, on July 30, 2018, Plaintiffs served a subpoena on third party consumer data company IRI Worldwide.  (Henry Decl., ¶ 42, Ex. LL.)  Though Younique requested copies of whatever IRI produced, Younique has not received any documents, and assumes none was produced.  (*Id.,* ¶ 42.)

## VI.    STANDARD FOR SUMMARY JUDGMENT

The operative complaint frames the issues for a motion for summary judgment.  *See e.g., Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (affirming finding that plaintiff's complaint did not give fair notice of new allegations); *Johnson v. Hewlett-Packard Co.*, 809 F.Supp.2d 1114, 1131-32 (N.D. Cal. 2011) (affirming grant of summary judgment against named class action plaintiffs; the court would not permit plaintiffs to take further discovery that was outside the scope of the operative complaint).

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings, depositions and declarations that demonstrate the absence of a

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On an issue where the opposing party will bear the burden of proof at trial, the moving party can prevail merely by pointing out that the opposing party lacks evidence to support its case.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250).  The opposing party's evidence must be more than "merely colorable" and must be "significantly probative."  *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

In addition, if "the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

One of the grounds for summary judgment here is that all four Plaintiffs lack standing.  To establish standing under Article III, the plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal cites omitted).  "By particularized," it is meant "that the injury must affect the plaintiff in a personal and individual way."  *Id.* at 560 n.1.

"At the pleading stage, general factual allegations of injury resulting from the

1    defendant's conduct may suffice," but "[i]n response to a summary judgment motion

2    […]the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth'

3    by affidavit or other evidence 'specific facts'" of injury in fact.  *Lujan*, 504 U.S. at

4    561 (reversing courts below, finding summary judgment should have been granted

5    because the plaintiff lacked standing).

6        All of the Plaintiffs lack Article III standing, and their claims fail for other,

7    additional reasons discussed below.

8    **VII.   <u>PLAINTIFF REILLY'S CLAIM UNDER FLORIDA'S DECEPTIVE
     AND UNFAIR TRADE PRACTICES ACT FAILS</u>**

9
10       To establish a claim under the FDUTPA, there must be "(1) a deceptive act or

11   unfair practice; (2) causation; and (3) actual damages."  *Rollins, Inc. v. Butland*, 951

12   So.2d 860, 869 (Fla. Dist. Ct. App. 2006).  Reilly must show "probable, not

13   possible, deception" that is "likely to cause injury to a reasonable relying

14   consumer."  *Zlotnick v. Premier Sales Group, Inc*., 480 F.3d 1281, 1284 (11th Cir.

     2007).

15       Reilly must also have actual damages to bring a claim under the FDUTPA.

16   *Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200, 1204-05 (Fla. 1st DCA 2012) (ruling

17   plaintiff lacked standing because, in part, he had no issues with the services he was

18   provided and thus was not damaged).  Damages are limited to the difference

19   between a product as represented versus as delivered.  *Rollins*, 951 So.2d at 869.

20       Summary judgment is appropriate for three independent reasons.

21       <u>First</u>, Reilly does not have standing to bring this claim.  ████████

22   ████████████████████████████████████████████████ (SUF 1; Reilly

23   Tr., 67:12-18.)  She has not suffered the injury that is the subject of the allegations

24   in the operative complaint.  (SAC, ¶¶ 2, 8, 22, 36.)

25       <u>Second</u>, Reilly cannot prove the causation element of her FDUTPA claim.

26   ████████████████████████████████████████████████████████

27   ██████.  (SUF 1; Reilly Tr., 67:12-18.)  ████████████████████████

28

-13-

1 ████████████████████████████ (SUF 2; *Id.*, 149:2-11; *see also* 43:24-44:10.)

2 ████████████████████████████████████████████████████████

3 (SUF 3; *Id.*, 134:21-135:9.) ████████████████████████

4 ████████████████████████ (SUF 4; *Id.*, 153:19-154:15.)  Reilly's testimony

5 establishes that the alleged false labeling did not cause her the alleged injury, nor

6 was she damaged thereby.

7 　　　　Third, Reilly lacks evidence of damages recoverable under the FDUTPA.

8 ████████████████████████████████████████████████████████

9 ████████████████ (SUF 4; Reilly Tr., 153:19-154:15.) ████████████

10 ████████████████████████████████████████████████████████

11 ████████████████ (SUF 3, 5; *Id.*, 27:15-29:1; 58:22-25; 134:21-135:9.)  Her

12 admissions prove that she received the value of the Lash Enhancer and there are no

13 recoverable damages.

14 　　　　In addition, Reilly did not produce evidence of her damages.  In response to

15 written discovery seeking documents that support her damages, she objected, stating

16 that she would "comply with [the rules and case management order] governing

17 disclosure of expert information." (SUF 6; Ex. FF; Response Nos. 9, 16, 17, 20, 21,

18 24-27.) ████████████████████████████████████████████

19 ████████████████████. (SUF 7; Ex. KK.) ████████████████████

20 ████████████████ (SUF 8; Ex. KK.)  In response to Request No. 23, Reilly

21 produced one receipt showing the price she paid, but this is not evidence of her

22 damages.  Reilly is only entitled to the difference between the value of the Lash

23 Enhancer as represented versus as received, and not a full refund.  *Rollins*, 951

24 So.2d at 869.

25 　　　　Accordingly, summary judgment is appropriate.

26 **VIII.  PLAINTIFF ORLOWSKY'S TENNESSEE CLAIMS FAIL**

27 　　　　**A.   Orlowsky Lacks Standing To Bring Claims Under Tennessee Law
Because She Did Not Live There When She Bought The Lash**

28 　　　　　　**Enhancer**

A plaintiff must be injured in a state "in order to bring claims under that state's laws." *United Food & Commer. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F.Supp.3d 1052, 1078-79 (N.D. Cal. 2014) (citing nine other Ninth Circuit district court cases finding same); *In re Capacitors Antitrust Litig.*, 154 F.Supp.3d 918, 927 (requiring an "in-state injury in the form of an in-state purchase … to satisfy Article III standing for each of the state law claims asserted.").

████████████████████████████████████████████████████████

█████████████████ (SUF 9.)  She lacks standing to bring claims under Tennessee law.  Orlowsky's claims are addressed below in the alternative.

### B.  <u>Orlowsky's Warranty Claims Must Be Dismissed As She Failed to Provide Pre-Suit Notice</u>

Pre-suit notice is a prerequisite to bringing express and implied warranty claims under Tennessee law.  Tenn. Code Ann. § 47-2-607(3)(a); *see Siriano v. Goodman Mfg. Co., L.P.*, 2015 U.S. Dist. LEXIS 191458, *21-22 (S.D. Ohio Aug. 18, 2015) (dismissing Tennessee plaintiffs who had not given own notice of breach of warranty); *Rysewyk v. Sears Holdings Corp.*, 2015 U.S. Dist. LEXIS 169124, *12-13 (N.D. Ill. Dec. 18, 2015) (dismissing warranty claims for failure to give pre-suit notice); *Preston v. Manchester*, 1990 Tenn. App. LEXIS 625, *33 (Aug. 31. 1990) (including requirement among elements required to state a claim under implied warranty law).

████████████████████████████████████████████ (SUF 10, 11.) Plaintiffs may argue that a notice was provided before this litigation, but that letter was sent on behalf of plaintiff Schmitt, who asserted claims under California law. (Schmitt Tr., 89:14-90:9, Ex. E, PL0006-0008; Orlowsky Tr. 37:23-38:1.)  Not until after the lawsuit was filed did Orlowsky engage counsel; thus, her counsel's earlier letter could not have applied to Orlowsky.  (Orlowsky Tr., 60:8-61:23.)  Summary judgment on her warranty claims should be granted.

-15-

**C.** **Orlowsky's Claims Fail Because She Has Not Suffered Injury or Damages as a Result of the Alleged Mislabeling**

Orlowsky's express warranty claim depends on a showing that she "was, in fact, induced" by the "natural" "green tea" language. *Smith v. TimberPro Inc.*, 2017 Tenn. App. LEXIS 163, *11-12 (Mar. 9, 2017) (affirming grant of summary judgment on express warranty claim). Orlowsky must have relied on the "natural" "green tea" language when deciding to purchase the Lash Enhancer. *Bearden v. Honeywell Int'l, Inc.*, 2010 U.S. Dist. LEXIS 83996, *14 (M.D. Tenn. Aug. 16, 2010) (dismissing individual and class action claim for failure to show reliance prior to purchase).

Orlowsky's implied warranty claim requires that she prove, "(1) a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately and in fact by the defective nature of the goods, and (5) notice to seller of injury." *Preston*, 1990 Tenn. App. LEXIS at *33 (affirming grant of summary judgment).

Orlowsky's TCPA claim requires that she show that Younique engaged in a "deceptive act," and that such conduct "caused an ascertainable loss of money" to Orlowsky. Tenn. Code Ann. § 47-18-109; *ProductiveMD, LLC v. 4UMD, LLC*, 821 F.Supp.2d 955, 967 (M.D. Tenn. 2011) (citing statute).

Orlowsky's damages are limited to the difference in the value of the Lash Enhancer as warranted and as accepted. Tenn. C. § 47-2-714; *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809 (2012) (finding plaintiff did not carry this burden).

Summary judgment of Orlowsky's claims is appropriate for three independent reasons.

First, Orlowsky does not have standing to bring the claims that are alleged in the SAC. ██████████████████████████████████ (SUF 12; Orlowsky Tr., 131:9-25.) ██████████████████████████████ ███████████████████████████████████. (SUF 13; *Id.*, 92:18-



1   93:5.)

2   (SUF 14; *Id.*, 131:9-25.)

3

4   (SUF 15; *Id.*, 112:7-14.)  She has not suffered

5   the injury that is the subject of the allegations in the operative complaint.  (SAC, ¶ 2,

6   8, 22, 44.)

7        Second, Orlowsky lacks evidence that the label caused her any damage.

8                                                           SUF 12-14.)

9                                    .  (SUF 15; *Id.*, 79:16-80:4.)

10

11              (SUF 15; *Id.*, 112:7-14.)

12              (SUF 16; *Id.*, 31:12-32:7.)

13

14              (SUF 17; *Id.*, 195:3-7.)

15        Third, Orlowsky lacks evidence of damages recoverable under her claims.

16

17                                    (SUF 18; *Id.*, 81:18-20.)  Her

18   admissions prove that she received the value of the Lash Enhancer and there are no

19   recoverable damages.

20        In addition to her own admissions, she has no evidence of her damages.  In

21   response to written discovery seeking documents that support her damages, she

22   objected, stating that she would "comply with [the rules and case management

23   order] governing disclosure of expert information." (SUF 19; Ex. GG, Responses 9,

24   16, 17, 20, 21, 24-27.)

25                    (SUF 20; Ex. KK.)

26                              SUF 8; *Id.*)  Although Orlowsky

27   produced four receipts at her deposition, these cannot evidence her damages.

28   Orlowsky is only entitled to the difference between the value of the Lash Enhancer

-17-

as represented versus as received, and not a full refund.  *Audio Visual, supra*, 403 S.W.3d at 809.

Accordingly, Orlowsky's claims fail for multiple reasons.

## IX.   **PLAINTIFF SCHMITT'S CALIFORNIA CLAIMS FAIL**

### A.   **Schmitt's Claims Require Standing, Causation and Damages**

#### 1.   The UCL Requires Evidence of Standing, Causation and Damage

The UCL prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof Code § 17200.  To establish a claim of false or misleading advertising under California law, a plaintiff must establish that it is "*probable* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003).

Only a "person who has suffered injury in fact and has lost money or property as a result of" a UCL violation may bring an action for violation.  Cal. Bus. & Prof. Code §§ 17204.  The phrase "as a result of" means "caused by" and "requires a showing of a causal connection or reliance on the alleged misrepresentation," as "reliance is the causal mechanism of fraud."  *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326 (2011) (internal cites omitted).

Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct. *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.  *Id.*

The monetary remedy under the UCL is the "difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of

-18-

restitution." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130-31 (2009).

> 2. <u>The Consumers Legal Remedies Act Requires Standing, Causation and Damages</u>

Schmitt asserts fraud-based claims under the CLRA, Cal. Civil Code § 1770. She alleges that Younique violated CLRA sections (a)(5) (alleging that the Lash Enhancer is represented as having characteristics that it does not have), (a)(7) (alleging that the Lash Enhancer lacks a particular standard or quality that it is represented to have), and (a)(9) alleging that Younique advertised the Lash Enhancer with an intent not to see it as advertised).  (Dkt. 58, SAC, ¶¶ 86-88.)

Consumers "seeking to recover damages under the CLRA based on a fraud theory must prove actual reliance on the misrepresentation and harm." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012); *accord, Kwiskset*, 51 Cal.4th at 326-27.  "Actual reliance" means that the "misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset*, 51 Cal.4th at 326-27. Damages are limited to "the price paid versus the value received." *Chowning v. Kohl's Dep't Stores, Inc*., 2018 U.S. App. LEXIS 16336, *2-3 and n.1 (9th Cir. June 18, 2018) (affirming summary judgment because plaintiff did not provide evidence of the "value received").

> 3. <u>The Express and Implied Warranty Claims Require a Showing of Standing, Causation and Damages</u>

In California, express warranties can be created when a seller makes affirmations of fact or promises that become part of the basis of the bargain.  Cal. Comm. Code § 2313(1)(a), (b).  Schmitt must prove that Younique, "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Natural Corp*., 944 F.Supp.2d 877, 893 (C.D. Cal. 2013).

If the resulting bargain does not rest on the seller's representations, those representations "cannot be considered as becoming any part of the basis of the

-19-

1  bargain." *Sandoval v. Pharmacare US, Inc.*, 730 Fed.Appx. 417, 419 (9th Cir.

2  2018) (citing *Keith v. Buchanan*, 173 Cal.App.3d 13, 23 (1985)).  In *Sandoval*, the

3  court affirmed the grant of summary judgment because the plaintiff testified that the

4  website in question had "no effect on his decision to purchase IntenseX, and Kanfer

5  failed to submit sufficient evidence that he viewed and relied on the website before

6  his first purchase of IntenseX." *Id*.

7       Claims for breach of the implied warranty of merchantability require, "not

8  only the existence of the warranty but the fact that the warranty was broken and that

9  the breach of the warranty was the proximate cause of the loss sustained." Cal.

10  Comm. Code § 2314 (comments); accord, *In re ConAgra Foods, Inc*., 90 F.Supp.3d

11  919, 1007 (C.D. Cal. 2015).  Damages are limited to the difference between the

12  good as represented versus as delivered.  Cal. Comm. Code § 2714.

13       When an implied warranty claim is based solely on whether the product in

14  dispute conforms to its label, the claim rises and falls with express warranty claims

15  brought for the same product.  *Hadley v. Kellogg Sales Co*., 273 F.Supp.3d 1052,

16  1096 (N.D. Cal. Aug. 10, 2017) (citing *Hendricks v. StarKist Co*., 30 F.Supp.3d

17  917, 933 (N.D. Cal. 2014)).  Plaintiffs' implied warranty claim under California law

18  is based only on the representations on the label.  (Dkt. 58, SAC ¶ 106.)

19   **B.    Schmitt Admitted Facts Showing She Lacks Standing and the Alleged Misrepresentation Did Not Cause Her Harm, and Lacks**

20   **Evidence of Damages**

21       First, Schmitt lacks standing to bring her claims based on alleged mislabeling.

22   ████████████████████████████████████████.  (SUF 21; Schmitt Tr., 41:2-44:8.)

23   ████████████████████████████████████████████████████████████

24   (SUF 22; *Id*., 32:19-33:13; 41:2-42:6.)   ████████████████████

25   ██████████████████████████████████████.  (SUF 21; *Id.*, 32:19-33:13;

26   41:2-44:8.)  ████████████████████████████████

27   ████████████████████████████████████

28   ████████████████████████████████████

-20-

1    ██████ (SUF 23; *Id.*, 47:2-48:1; *see also* 39:19-40:6; 102:18-104:2.)  Therefore, she

2    has not suffered the mislabeling injury that is the subject of the allegations in the

3    operative complaint.  (SAC, ¶ 2, 8, 22, 32.)

4    Second, ████████████████████████████████████████████

5    ██████ Schmitt has no evidence of causation; to wit, that the label caused her any

6    damage.  (SUF 21-23.)

7    Third, Schmitt has no evidence of her damages.  ████████████████

8    ████████████████████████████████ (SUF 24; *Id.*, 129:5-130:1.)

9    ██████████████████████████████████████

10   ██████ (SUF 25; *Id.*, 128:10-17.) ████████████████████████

11   ██████████████████████████████████

12   ██████████████ SUF 26, 27; *Id.*, 52:10-22; 55:5-8.) In response to

13   written discovery seeking documents that support her damages, Schmitt objected,

14   stating that she would "comply with [the rules and case management order]

15   governing disclosure of expert information."  (SUF 28; Ex. II, Responses 9, 16, 17,

16   20, 21, 24-27.) ████████████████████████████████████

17   ██████████████ (SUF 29; Ex. KK.) ████████████████████

18   ████████████████████████████████████████████.

19   (SUF 8; *Id.*)

20   Accordingly, Younique is entitled to summary judgment on Schmitt's claims

21   for multiple reasons.

22   **X.    PLAINTIFF BRUN'S OHIO CLAIMS FAIL**

23          **A.    Brun Lacks Standing To Bring a Claim Under the Ohio Deceptive Trade Practices Act**

24

25   Relief under the ODTPA is not available to consumers.  *In re Sony Gaming*

     *Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp.2d 942, 1006 (S.D. Cal.

26   2014) (granting motion to dismiss without leave to amend because plaintiff

27   consumers lacked standing) (citing *In re Oreck Corp. Halo Vacuum & Air Purifiers*

28

-21-

1    *Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 172869, *32-33 (C.D. Cal.

2    Dec. 3, 2012) (dismissing claim).  The ODTPA's purpose "is exclusively to protect

3    the interests of a purely commercial class against unscrupulous commercial

4    conduct."  *Michelson v. Volkswagen Aktiengesellschaft*, 2018-Ohio-1303, *16 (Ct.

5    App. 2018).  "[I]f consumers had standing to sue under the DTPA, the CSPA would

6    be rendered superfluous because both prohibit the same type of conduct."

7    *Blankenship v. CFMOTO Powersports, Inc.*, 161 Ohio Misc. 2d 5, *17 (2011).

8    Brun lacks standing as a matter of law to pursue relief under the ODTPA.

9    **B.      Brun's Ohio Consumer Sales Practices Act Is Time-Barred**

10        The OCSPA has a two-year statute of limitations, and the discovery rule does

11   not apply.  Ohio Rev. Code § 1345.10(C); *Rosenow v. Shutrump & Assocs.*, 163

12   Ohio App. 3d 500, 504-05 (2005) (affirming summary judgment on statute of

13   limitations grounds).

14        Brun's OSCPA claim is time-barred.  Younique stopped selling the Lash

15   Enhancer more than 2 years before this lawsuit was filed.  (SUF 30, 31; Dkt. 80-1

16   (Mot. Class Cert.), 8:25-9:3 (acknowledging same); Dkt. 58, SAC, ¶ 4.)  Brun's

17   evidence of purchases show they all occurred more than 2 years before the original

18   complaint was filed.  (SUF 32; Ex. E (PL00002) and Exs. F, J-P.)  The statute has

19   now run.  This claim is addressed in the alternative below.

20   **C.      Brun's Warranty Claims Fail Because She Lacks Damages Caused By the Alleged Breach**

21

22        Brun's express warranty claim requires her to show that, "(1) a warranty

23   existed; (2) the product failed to perform as warranted; (3) plaintiff provided the

24   defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a

25   result of the defect."  *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's,*

26   *Enters.*, 2015-Ohio-4884, 11 (Ct. App. 2015).  Representations may become a

27   warranty if they are "the basis for the bargain."  O.R.C. Ann. § 1302.26; *Bobb*

28   *Forest Prods. v. Morbark Indus.*, 151 Ohio App. 3d 63, 81 (Ct. App. 2002).

-22-

For the implied warranty claim, Brun must, "show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." *Taylor v. Boardman Twp. Local Sch. Dist. Bd. of Educ.*, 2009-Ohio-6528, *25 (Ct. App. 2009) (granting summary judgment because plaintiff did not show how the breach of warranty proximately caused her damage).

As to her alleged damages, she must establish the difference between the value of the Lash Enhancer as warranted and as accepted. O.R.C. Ann. § 1302.88; *Pickens v. Phillips*, 1998 Ohio App. LEXIS 974, *4 (Ct. App. 1998) (finding plaintiff not entitled to damages because she did not present evidence of the difference in value).

First, Brun lacks evidence that the alleged breach of warranty caused her harm. ███████████████████████████████████ (SUF 33; Ex. D, Brun Tr., 91:5-18; 166:24-167:6.) ██████████████ ████████████████████████████████ SUF 34; *Id.*, 158:14-161:3; 234:4-20; 279:21-280:8.) ████████████████████████████ (SUF 35; *Id.*, 308:13-309:1.) Accordingly, she has no evidence that he was damaged as a result of the alleged false label.

Second, Brun also lacks evidence of damages recoverable under her claims. ████████████████████████████████████████████████ ██████████████████████████████████ (SUF 36; Brun Tr., 50:7-16.) In response to written discovery seeking documents that support her damages, she objected, stating that she would "comply with [the rules and case management order] governing disclosure of expert information." (SUF 37; Ex. JJ, Responses 9, 16, 17, 20, 21, 24-27.) ████████████████████ (SUF 38; Ex. KK.) ██████████████ ████████████████████████████████

1   ▓▓▓▓▓▓▓▓▓.  (SUF 8; *Id.*)  Although Brun produced some receipts, these

2   cannot evidence her damages.  Brun is only entitled to the difference between the

3   value of the Lash Enhancer as represented versus as received, and not a full refund.

4   *Pickens, supra*, 1998 Ohio App. LEXIS 974, *4.

5       Accordingly, Younique is entitled to summary judgment on Brun's claims for

6   multiple reasons.[4]

7   **XI.   PLAINTIFFS' MMWA FAILS**

8       "[C]laims under the Magnuson-Moss Act stand or fall with [] express and

9   implied warranty claims under state law."  *Clemens v. DaimlerChrysler Corp.*, 534

10  F.3d 1017, 1022 (9th Cir. 2008).  Damages are also determined by "look[ing] to

11  applicable state law."  *Tuscany Invs. LLC v. Daimler Trucks North Am. LLC*, 2015

12  U.S. Dist. LEXIS 109842, *5 (N.D. Cal. Aug. 19, 2015).  Plaintiffs alleged a breach

13  of implied warranties under the MMWA.  (Dkt. 58, SAC, p.16; *see also* Dkt. 53

14  Order on MTD, p. 5-6 ("Plaintiffs concede that their MMWA claims with respect to

15  the state law express warranties should be dismissed.").)  As shown herein,

16  Plaintiffs' warranty claims lack merit and Plaintiffs lack standing on these claims.

17  Therefore, as a matter of law, Plaintiffs' MMWA claim is subject to summary

18  judgment. (SUF 10-29; 33-38.)

19  **XII.   PLAINTIFFS CANNOT SEEK EQUITABLE RELIEF**

20      "[I]t is axiomatic that a court *should* determine the adequacy of a remedy in

21  law before resorting to equitable relief." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503

22  U.S. 60, 75-76 (1992); accord *Mort v. United States*, 86 F.3d 890, 892 (9th Cir.

23  1996). Consequently "a plaintiff seeking equitable relief in California must establish

24  that there is no adequate remedy at law available." *Munning v. Gap, Inc.*, 238

25  ―――――――――――――――――――――

26  [4] For the same reason, her OSCPA claim fails, in addition to being time barred.  For
    the OCSPA, Brun must show, "a nexus between defendant's conduct and [her]
    injury," and show she was aware of the label "before or during the purchase." *Farris*
27  *v. ADT, LLC*, 2017 U.S. Dist. LEXIS 161003, *10-11 (N.D. Ohio Sept. 29, 2017).
    Brun, "must prove damages were a proximate result" of the product label.  *Butler v.*
28  *Sterling, Inc.*, 2000 U.S. App. LEXIS 6419, *13-14 (6th Cir. Mar. 31, 2000).

1   F.Supp.3d 1195, 1203 (N.D. Cal. 2017) (internal citations omitted).

2        Plaintiffs seek money damages and have not articulated any reason why their

3   remedies at law would not be adequate were they to prevail.  (SUF 39.)  Summary

4   judgment should be granted as to the equitable claims.

5   **XIII.  <u>CONCLUSION</u>**

6        For all of the foregoing reasons, the court should grant summary judgment in

7   favor of Younique and enter a judgment in Younique's favor.  In the alternative, the

8   court should grant summary adjudication on all meritorious grounds.

9

10  Dated:  September 17, 2018

11                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13                  By

14                      _____
                                    */s/ Abby Meyer*

15                          SASCHA HENRY
                            JONATHAN D. MOSS

16                          ABBY H. MEYER
                        Attorneys for Defendant Younique, LLC

17

18

19

20

21

22

23

24

25

26

27

28

-25-

| Index of Exhibits | |
|---|---|
| Exhibit | Description |
| Depositions Transcripts | |
| A | Relevant portions of deposition transcript of **Deana Reilly** |
| B | Relevant portions of deposition transcript of **Carol Orlowsky** |
| C | Relevant portions of deposition transcript of **Megan Schmitt** |
| D | Relevant portions of deposition transcript of **Stephanie Miller Brun** |
| Deposition Exhibits | |
| E | Plaintiffs' First Production of Documents, Dated March 14, 2018 (Deposition Exhibit 3) |
| F | Screenshot of Brun Receipt (Deposition Exhibit 4) |
| G | Image of Lash Enhancer (Deposition Exhibit 6) |
| H | Image of Lash Enhancer Packaging (Deposition Exhibit 8) |
| I | Image of Lash Enhancer Packaging (Deposition Exhibit 9) |
| J | Screenshot of Brun Receipt (Deposition Exhibit 13) |
| K | Screenshot of Brun Receipt (Deposition Exhibit 14) |
| L | Screenshot of Brun Receipt (Deposition Exhibit 15) |
| M | Screenshot of Brun Receipt (Deposition Exhibit 16) |
| N | Screenshot of Brun Receipt (Deposition Exhibit 17) |
| O | Screenshot of Brun Receipt (Deposition Exhibit 18) |
| P | Screenshot of Brun Receipt (Deposition Exhibit 20) |
| Q | Screenshot of Brun YouTube (Deposition Exhibit 26) |
| R | Screenshot Brun's Online Younique Boutique on Facebook (Deposition Exhibit 27) |
| S | Image Lash Enhancer Packaging (Deposition Exhibit 45) |
| T | Image Lash Enhancer Tubes (Deposition Exhibit 51) |
| U | Printouts of Orlowsky Receipts (Deposition Exhibit 61) |
| V | Screenshot Orlowsky Instagram (Deposition Exhibit 64) |

SMRH:487818058 3
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| W | Screenshot Orlowsky Instagram (Deposition Exhibit 65) |
|---|---|
| X | Screenshot Orlowsky Instagram (Deposition Exhibit 66) |
| Y | Screenshot Orlowsky Instagram (Deposition Exhibit 67) |
| Z | Screenshot Orlowsky Instagram (Deposition Exhibit 77) |
| AA | Screenshot Orlowsky Instagram (Deposition Exhibit 78) |
| BB | Screenshot Orlowsky Instagram (Deposition Exhibit 79) |
| CC | Screenshot Orlowsky Instagram (Deposition Exhibit 80) |
| DD | Printout of Reilly Receipt (Deposition Exhibit 90) |
| Discovery | |
| EE | Younique's First Set of Requests for Production of Documents propounded to Megan Schmitt |
| FF | Plaintiff Reilly's Response to Younique's First Set of Requests for Production of Documents dated March 14, 2018 |
| GG | Plaintiff 'Orlowskys Response to Younique's First Set of Requests for Production of Documents dated March 14, 2018 |
| HH | Plaintiff Orlowsky's Response to Younique's Second Set of Requests for Production of Documents dated May 18, 2018 |
| II | Plaintiff Schmitt's Response to Younique's First Set of Requests for Production of Documents dated March 14, 2018 |
| JJ | Plaintiff Brun's Response to Younique's First Set of Requests for Production of Documents dated March 14, 2018 |
| KK | Expert Report of Donald M. May, served on August 1, 2018 |
| LL | Plaintiffs' Subpoena to Produce Documents, Information, or Objects Or To Permit Inspection of Premises in a Civil Action, Served on IRI Worldwide |
| MM | Moss Response to Meet and Confer Letter dated June 7, 2018 |
| NN | Meet and Confer Correspondence dated September 12, 2018 |

SMRH:487818058 3                                                         DEFENDANT'S MOTION FOR SUMMARY JUDGMENT