1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
    SASCHA HENRY, Cal. Bar No. 191914
3   JONATHAN D. MOSS, Cal. Bar No. 252376
    shenry@sheppardmullin.com
4   jmoss@sheppardmullin.com
    333 South Hope Street, 43rd Floor
5   Los Angeles, CA 90071-1422
    Telephone:  213.620.1780
6   Facsimile:   213.620.1398

7   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
8      Including Professional Corporations
    ABBY H. MEYER, Cal. Bar No. 294947
9   ameyer@sheppardmullin.com
    650 Town Center Drive, Fourth Floor
10  Costa Mesa, CA 92626-1993
    Telephone:  714.513.5100
11  Facsimile:   714.513.5130

12  Attorneys for Defendant Younique, LLC

13                  **UNITED STATES DISTRICT COURT**

14        **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

15

16  MEGAN SCHMITT, DEANA              Case No. 8:17-cv-01397-JVS-JDE
17  REILLY, CAROL ORLOWSKY, and
    STEPHANIE MILLER BRUN,            **DEFENDANT YOUNIQUE, LLC'S**
18  individually and on behalf of     **OPPOSITION TO PLAINTIFFS'**
    themselves and all others similarly  **MOTION FOR CLASS**
19  situated,                         **CERTIFICATION**

20            Plaintiffs,             [*Filed Concurrently with Declaration of
                                      Sascha Henry in Support Thereof*]
21        v.
                                      Hearing Date:  November 19, 2018
22  YOUNIQUE, LLC                     Hearing Time:  1:30 p.m.

23            Defendant.             The Hon. James V. Selna
                                      Santa Ana, Courtroom 10C
24
                                      SAC filed:       January 4, 2018
25                                    Trial Date:      February 19, 2019

26

27                  **[PUBLIC REDACTED VERSION]**

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     RELEVANT BACKGROUND..............................................................2

        A.      Facts About Younique And The Lash Enhancer ......................2

        B.      Younique Presenters Sell Using Various Social Media ...........3

        C.      Plaintiffs' Experiences With The Lash Enhancer ...................4

                1.      Brun Received the Lash Enhancer For Free, Hosted a Party to Earn Y Cash and Discounts and Became a Presenter .......................................................................4

                2.      Orlowsky Wanted to Work From Home, Became a Presenter and Sold The Lash Enhancer by Showing Customers How it Enhanced Their Lashes...............................5

                3.      Schmitt Bought the Lash Enhancer Because Women at a Dinner Party Recommended It ....................................7

                4.      Reilly Bought the Lash Enhancer to Support Her Cousin, a Presenter, and Because it was the "Hot Product" of the Season.....................................................8

        D.      Manufacturing History of the Lash Enhancer........................9

III.    PROCEDURAL HISTORY ................................................................10

IV.     LEGAL STANDARD FOR CLASS CERTIFICATION..................10

V.      CLASS CERTIFICATION SHOULD BE DENIED .......................11

        A.      Plaintiffs' Motion Must Be Denied Because They Lack Standing.......11

        B.      Plaintiffs Failed To Demonstrate They Meet the Commonality Requirement of Rule 23(a)....................................12

        C.      Plaintiffs Are Wrong that Class-wide Reliance Can Be Presumed ......14

                1.      There Is No Common Evidence Of Uniform Exposure To The "Natural" "Green Tea" Language ....................14

                2.      There Is No Common Evidence Showing That The "Natural" and "Green Tea" Language Was Material.................16

        D.      Plaintiffs Have Not Met Their Burden Of Providing A Legally Viable Damages Model Under *Comcast* ............................17

OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1.   The "Full Refund" And "Profit Disgorgement Models"
     Are Not Viable Damages Models ...............................................18

2.   Plaintiffs Have Not Carried Their Burden Of Showing
     That A Hedonic Regression Can Be Performed .......................19

3.   Dr. May's Models are Incomplete............................................20

E.   Individual Issues As To Each Class Member Demonstrate that
     The Class Mechanism is Not Superior or Manageable ......................22

F.   Plaintiffs And Their Counsel Are Not Adequate ................................23

VI.   CONCLUSION ...........................................................................................25

1

Table of Authorities

2

Page(s)

3

<u>Cases</u>

4

*Andren v. Alere, Inc.*
    2017 U.S. Dist. LEXIS 209405 (S.D. Cal. Dec. 20, 2017) ...............................23

5

6

*Berger v. Home Depot USA, Inc.*
    741 F.3d 1061 (9th Cir. 2014)...........................................................................15

7

8

*Bodner v. Oreck, LLC*
    2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25, 2007)...................................24

9

*Brazil v. Dole Packaged Foods, LLC*
    2014 U.S. Dist. LEXIS 157575 (N.D. Cal. Nov. 6, 2014) ..................................19

10

11

*Brazil v. Dole Packaged Foods, LLC*
    660 Fed.Appx. 531 (9th Cir. 2016) ....................................................................18

12

13

*Bruton v. Gerber*
    2018 U.S. Dist. LEXIS 30814 (N.D. Cal. Feb. 13, 2018)...................................19

14

15

*Chowning v. Kohl's Dept. Stores, Inc.*
    2018 U.S. App. LEXIS 16336 (9th Cir. June 18, 2018) .....................................18

16

17

*Cohen v. DirecTV, Inc.*
    178 Cal.App.4th 966 (2009)...............................................................................16

18

19

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013).............................................................. 11, 17, 19, 20, 21

20

21

*In re ConAgra Foods, Inc.*
    90 F.Supp.3d 919 (C.D. Cal. 2015).............................................................14, 17

22

23

*Ehret v. Uber Techs., Inc.*
    148 F.Supp.3d 884 (N.D. Cal. 2014)..................................................................14

24

25

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011)..............................................................................23

26

27

*Guido v. L'Oreal, USA, Inc.*
    2013 U.S. Dist. LEXIS 94031 (C.D. Cal. July 1, 2013) .....................................20

28

*Hadley v. Kellogg Sales Co.*
    2018 U.S. Dist. LEXIS 140124 (N.D. Cal. Aug. 17, 2018) .................................15

*Jones v. ConAgra Foods, Inc.*
    2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014)...................................19

*Kosta v. Del Monte Foods, Inc.*
    308 F.R.D. 217 (N.D. Cal. 2015) ......................................................................16

*Marks v. C.P. Chem. Co.*
    31 Ohio St. 3d 200 (1987)................................................................................17

*Mazza v. Am. Honda Motor Co. Inc.*
    666 F.3d 581 (9th Cir. 2012)........................................................................14, 15

*O'Shea v. Littleton*
    414 U.S. 488 (1974)..........................................................................................11

*Randolph v. J.M. Smucker Co.*
    303 F.R.D. 679 (S.D. Fla. 2014) .......................................................................20

*Rivera v. Am. Fedn. Of State*
    2017 U.S. Dist. LEXIS 110743 (N.D. Cal. July 17, 2017) .................................23

*Rollins, Inc. v. Butland*
    951 So.2d 860 (Fla. 2d DCA 2006)...................................................................18

*In re SFPP Right-of-Way Claims*
    2017 U.S. Dist. LEXIS 85973 (C.D. Cal. May 23, 2017)...................................12

*Slade v. Progressive Sec. Ins. Co.*
    856 F.3d 408 (5th Cir. 2017)............................................................................23

*Smith v. WM. Wrigley Jr. Co.*
    663 F.Supp.2d 1336 (S. Fla. 2009)...................................................................14

*Stathakos v. Columbia Sportswear Co.*
    2017 U.S. Dist. LEXIS 72417 (N.D. Cal. May 11, 2017)...................................18

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011)..........................................................................17

*Tan v. GrubHub, Inc.*
    2016 U.S. Dist. LEXIS 186342 (N.D. Cal. July 19, 2016) .................................23

*In re Tobacco II*
    240 Cal.App.4th 779 (2015)..................................................................18

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) ...............................................................15, 16

*Tuscany Invs. LLC v. Daimler Trucks North Am. LLC*
    2015 U.S. Dist. LEXIS 109842 (N.D. Cal. Aug. 19, 2015) ...............................18

*In re Vioxx Class Cases*
    180 Cal.App.4th 116 (2009)...........................................................17, 18

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011)..................................................................10, 12

*Webb v. Carter's Inc.*
    272 F.R.D. 489 (C.D. Cal. 2011) ........................................................17

*Werdebaugh v. Blue Diamond*
    2014 U.S. Dist. LEXIS 173789 (N.D. Cal. Dec. 15, 2014)................................19

*White v. Experian Info. Solutions*
    993 F.Supp.2d 1154 (C.D. Cal. 2014) ....................................................24

<u>Statutes</u>

Cal. Comm. Code § 2714(2) ...................................................................18

Oh. Rev. Code § 1302.88 .....................................................................18

Tenn. Code § 47-2-714(2) ....................................................................18

<u>Other Authorities</u>

Local Rule 16-15.5(b) .......................................................................25

N.Y. Ethics Opinion 899 (2011) .............................................................24

N.Y. Ethics Opinion 1110 (2016) ............................................................24

Rule 23 ..............................................................................*passim*

Rule 30(b)(6) ...............................................................................10

## I.   **INTRODUCTION**

Plaintiffs have the burden of providing this Court with evidence so that it can conduct a "rigorous" analysis of the Rule 23 requirements.  Instead of meeting their burden, Plaintiffs ask the Court to take their word for it that there are common issues which predominate, to apply presumptions without Plaintiffs first satisfying their evidentiary burdens, and to take a leap of faith that damages can be calculated.

This is not a typical false labeling case where purchasers were necessarily exposed to a label's alleged false statement before purchase.  Younique's products are not sold in retail stores.  Consumers could not take a Moodstruck 3D Fiber Lashes product (the "Lash Enhancer") down from a shelf and peruse the label.  The Lash Enhancer was sold by individual independent contractors ("Presenters") who posted pictures and videos of themselves using the Lash Enhancer on social media, and the Lash Enhancer was generally sent to the customer after she ordered it online.  Presenters controlled how they marketed the Lash Enhancer, and how they did so varied significantly.  Younique did not undertake a largescale advertising campaign using the "natural" "green tea" language.

Without submitting evidence of uniform class-wide exposure to a material statement, Plaintiffs improperly ask the Court to presume class-wide reliance thereon. ████████████████████████████████████████████████
████████████████████████████████████████. Plaintiffs purchased the Lash Enhancer for a variety of reasons personal to them.  Two plaintiffs were Presenters, and ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████. There is no common evidence of materiality or exposure to create a presumption of class-wide reliance here.

Though Plaintiffs have the burden of providing this Court with evidence of a

-1-

1   viable damages model, ██████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ███████████████████████████████. Plaintiffs did not meet their burden to

8   provide a viable damages model, nor demonstrate that common issues predominate.

9       Additionally, Plaintiffs lack standing for reasons different from one another.

10  Plaintiffs' class definition raises further examples of how class treatment is not

11  superior here, nor would it be manageable, because of fact intensive individual

12  issues.  Nor are they adequate as Plaintiffs have not actively and appropriately

13  participated in this litigation. Class certification should be denied.

14  **II.    RELEVANT BACKGROUND**

15      **A.    Facts About Younique And The Lash Enhancer**

16      Younique was founded by a brother and sister in 2012 who thought social

17  media could work as a platform for direct sales, specifically for women to sell

18  products to other women.  Instead of hosting at-home parties to sell product, they

19  could host "virtual" parties online.

20      The Lash Enhancer was one of Younique's original products and enhanced the

21  look of lashes.  It consisted of two tubes: one with a transplanting gel and a second

22  with loose fibers.  (*See* Images 1[1], 2.)  To use the Lash Enhancer, the consumer first

23  applied the transplanting gel to the lashes using a wand, similar to how a mascara is

24  applied.  (Ex. 25, 232:8-234:17.)[2]  Then the consumer applied the fibers, again using

25  a wand.  (*Id.*)  The fibers adhered to the gel, enhancing the appearance of the

26  _____

27  [1] Younique submits herewith a Compendium of Images that have been authenticated by Plaintiffs to show the Lash Enhancer and how was marketed. The same exhibits

28  are attached to the Henry Declaration at Image Exhibits 1-24.
    [2] All Exhibits are attached to the Henry Declaration unless otherwise stated.

1    consumer's lashes.  (*Id.*)  The image below shows the left eye with the Lash

2    Enhancer applied and the right eye without: (YNQE0000266; *see also* Image 7.)



10   The two tubes were packaged inside a hard, black case (akin to an eyeglass

11   case).  (Image 3, 15.)  The front of the case showed only the Younique logo and had

12   no images on the back.  Inside of the case was a glossy insert.  (Image 4; Dkt. 58,

13   SAC, ¶ 8 (top).)  The case was shrink-wrapped in plastic.  (Image 4.)

14   The ingredients were listed on a label stuck to the shrink-wrap on the back of

15   the case.  (SAC, ¶ 8 (bottom); Images 5 (for relative size), 6.)  The ingredients for

16   the gel described some synthetic ingredients, and the ingredients for the fibers were

17   described at various times as "100% natural green tea fibers," and "campanulaceae

18   of green tea".  (Image 6.)  Plaintiffs allege that the fibers did not contain green tea

19   fibers but rather were composed of ground up nylon.  (SAC, ¶ 10.)

20   In July 2015, Younique launched a new product, the Moodstruck 3D Fiber

21   Lashes+, and stopped selling the Lash Enhancer.

22   **B.    Younique Presenters Sell Using Various Social Media**

23   Younique products are not sold in stores.  Instead, Presenters purchase a

24   "presenter kit", use the products in the kit, and post about them across social media

25   platforms such as Facebook and Instagram.  (*See* Images 7-14.)  Presenters drive

26   sales by showing how they use and love the products.  (*Id.*) ▮▮▮▮▮▮▮▮▮▮

27   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Ex. 25, 235:24-236:7; Ex.

28   26, 90:16-91:9.)  Younique fills orders on behalf of Presenters.  ▮▮▮▮▮▮▮

-3-

1    █████████████████████████████ (Ex. 26, 157:11-24; Ex. 40.)

2       Presenters can also place orders on behalf of their customers.  The customers

3 then reimburse the Presenter.  Younique has no records identifying the end

4 purchaser in these circumstances, or what price was paid for the order.

5       One of the direct sales marketing strategies is to "host" an online party.

6 Anyone can host.  These typically occur on Facebook and can last for multiple days.

7 The host receives points based on the number of sales made at the party, and the

8 points translate to a dollar amount of "Y cash."  The host can use Y cash in

9 conjunction with any future purchase to reduce or even eliminate the cost of the

10 purchase.  (Ex. 26, 158:2-10.)  Hosts can also earn half-price coupons, which are

11 applied to future product purchases to reduce the cost of those purchases.

12    **C.**    **Plaintiffs' Experiences With The Lash Enhancer**

13       1.    Brun Received the Lash Enhancer For Free, Hosted a Party to Earn Y Cash and Discounts and Became a Presenter



15       (Ex. 25, 88:4-15.)

16       (*Id.*, 89:1-92:1.)

18       (*Id.*, 94:25-96:3.)

19       (*Id.*, 90:6-11; 94:13-24.)

21       (*Id.*, 231:10-235:8; 279:2-280:11; Ex. 39.)  Brun created a

22 YouTube video in which she demonstrated the Lash Enhancer on herself, did not

23 mention "natural" "green tea" fibers, and did not display the product label.  (*See*

24 Image 7*; 231:16-234:8; https://www.youtube.com/watch?v=97wKoHB2Svg.)

26       (Ex. 25, 279:21-280:8.)

27       (*Id.*, 280:9-11.)

28

-4-



███████████████████████████████████████████

███████████ (*Id.*, 51:3-12.)  In response to Younique's document requests, she

produced one receipt showing a purchase of the Lash Enhancer on November 18,

2014.  (Ex. 30, PL00002.)  Just before her deposition, her counsel produced eight

more receipts.  (Exs. 12-18, 20.)  These showed Brun buying five Lash Enhancers at

one time, buying the Lash Enhancer as part of a product collection, and buying the

Lash Enhancer with a half price coupon.  █████████████████████

███████████████████████████████████████████

███████████████████████████████████████████Ex.

25, 50:7-16 (emphasis added); 50:17-51:2.)

██████████████████████████████████. (Phillips Decl., ¶¶ 11-18.) ████

████████████████████(Ex. 25, 91:10-15.) ████████████████

███████████████████████████████████████

██████(Phillips Decl., ¶¶ 11-18.) ███████████████████████

███████████████████████████████████████████

████████████(*Id.*; Ex. 25, 131:23-134:25.)

        2.     <u>Orlowsky Wanted to Work From Home, Became a Presenter and</u>
<u>Sold The Lash Enhancer by Showing Customers How it</u>
<u>Enhanced Their Lashes</u>

███████████████████████████████████████

█████████(Ex. 26, 92:18-93:5.) ███████████████████████

███████████████████████████████████*Id.*, 129:17-21; 131:9-25.) ████

████████████████████████████████████████

███████████████████████████████████████

████████*See* Images 8-13; Ex. 26, 90:4-91:24; 94:8-100:18; 120:23-121:10.) ███

███████████████████████████████████████████

██████████████████████████████████(*Id.*, 192:20-193:10.) ██████

███████████████████████████████████████████

█████████████████████████(*Id.*, 90:9-92:13.)  Orlowsky's most

successful effort was paying make-up artist Alexandrea Garza $120 to post a video demonstration of the Lash Enhancer to her YouTube.  (*Id.*, 193:16-20, 194:6-13; *see* https://www.youtube.com/watch?v=BOvTuxmX0ms).  In this video, which has over 1.2 million views, Garza does not mention "natural," "green tea," or show the product label.  Garza demonstrates applying the Lash Enhancer and concludes by showing one eye with the Lash Enhancer applied and one eye without.  (*Id.*, 195:23-204:10.)  ███████████████████████████████████████ (*Id.*, 194:1-5.)

In her own video (https://www.youtube.com/watch?v=_N_1UedBZpY), Orlowsky demonstrates how to apply the Lash Enhancer on herself, comparing one eye with the Lash Enhancer and one without.  (*Id.*, 216:15-220:1.)  She never mentions natural green tea fibers or displays the Lash Enhancer label.  (*Id.*)

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ (*Id.*, 111:16-113:10; 112:7-14.) ████

████████████████████████████████████████████████

█████████████████████ (*See* Images 8-13; Ex. 26, 95:21-98:10; 100:4-18; 110:15-113:14.) ████████████████████████████████████

█████████████████████████████████████████

██████ (*Id.,* 79:16-80:4; 103:2-3; 109:2-110:15, Exs. 42-43.)

██████████████████████████████████████████

██████████ (Ex. 26, 161:2-11.) ████████████████████████████

████████████████████████████████████████████ (Images 1, 3, 14-24; Ex. 26, 161:2-7; 163:3-7; 164:4-7; 165:1-9; 165:15-18; 165:22-25; 166:5-8; 166:12-15; 167:3-6; 168:6-9; 168:13-16; 169:4-8; 169:25-170:2.)

██████████████████████████████████████████

████████ (*Id.*, 31:3-24.)  Though counsel produced no receipts in response to Younique's document requests and her responses said she had "none," counsel produced four receipts the morning of her deposition.  (*Id.*, Exs. 41, 44.) ████



1

2 (Ex. 26, 30:20-

3 31:11.)

4 (*Id.*)

5

6 . (*Id.*, 134:24-135:10.)

7     Orlowsky did not pay $29 for the Lash Enhancer.  Her four receipts show that

8 she twice purchased the Lash Enhancer as a stand-alone product, and twice as part

9 of a collection of products.  (Ex. 41.)

10 (Phillips Decl., ¶¶ 19-22; *see also* Ex. 26, 157:11-24.)

11

12 (Ex. 26, 157:11-24.)

13

14 (*Id.* 81:18-20.)

15     3.   <u>Schmitt Bought the Lash Enhancer Because Women at a Dinner Party Recommended It</u>

16 (Ex.

17 27, 32:19-33:13.)

18 (*Id.*, 131:2-15.)

19

20

21 (*Id.*, 36:5-15; 39:19-40:6.)

22 (*Id.*)

23

24 (*Id.*, 102:18-104:2.)

25 (*Id.*, 32:19-33:13.)

26

27 (*Id.*, 41:5-42:6.)

28 (*Id.*, 39:19-25.)

-7-



(*Id.*)

(*Id.*, 47:16-48:1.)

(*Id.*, 126:25-127:9.)

(*Id.*, 52:8-25.)

(*Id.*, 129:5-130:1.)

(*Id.*, 131:15-132:1.)

4.   Reilly Bought the Lash Enhancer to Support Her Cousin, a Presenter, and Because it was the "Hot Product" of the Season

(Ex. 28, 43:24-44:10.)

(*Id.*, 34:8-15.)

(*Id.*, 28:24-29:6; 30:5-32:7.)

(*Id.*, 64:12-65:3.)

(*Id.*, 33:23-34:7.)



1  █████████████████████████

2  (*Id.*, 107:8-108:23.) ████████████████████████████

3  ██████████████████ (*Id.*) ███████████████████████

4  ██████████████████ (*Id.*, 67:6-68:3.) ██████████████

5  ████████████████ (*Id.*, 110:19-24; 116:3-20; Image 3.) ████████

6  ████████████████████████ (*Id.*, 153:19-154:15.)

7  ████████████████████████████████

8  ██████ (*Id.*, 27:15-29:1; 58:22-25.) ████████████████

9  ████████████████████████ (*Id.*, 60:21-62:3.) ████████

10 ██████████████████████████████████

11 ████████████████████ (*Id.*, 64:6-11.)

12 ██████████████████████ (*Id.*,

13 134:21-135:9.)

14     **D.    Manufacturing History of the Lash Enhancer**

15         Among other information, Younique expects to present the following at trial:

16 █████████████████████████

17 (Exs. 49-58.) █████████████████ (*Id.*) ███████

18 ████████████████████████████

19 ████████████████████████████

20 █████ (Ex. 48, p. 3.)  After Younique began using a new vendor named Senos, Six

21 Plus sent an ingredients list to Younique listing the fibers as "polyvinyl alcohol

22 fiber," contrary to Younique's orders.  Younique ceased ordering the Lash Enhancer

23 from Six Plus, and relied on Senos for the remaining purchases of the product.  ████

24 ████████████████████████████████

25 ███████████████ (Ex. 47.) ██████████████

26 ██████████████████ (Exs. 52-58.)

27

28

## III.   **PROCEDURAL HISTORY**

████████████████████████████████████████████████████████

███████████████████████████████████████ (Ex. 25, 28:4-30:9, Ex. 26,

60:8-61:11; Ex. 27, 67:5-71:2; Ex. 28, 23:5-18.) ████████████████████████

██████████████████████████████████████████████████████

████ (Ex. 25, 31:2-15; 173:9-174:4; Ex. 26, 153:12-154:9; Ex. 27, 67:5-71:2; 73:2-

8; Ex. 28, 121:12-122:6; 148:7-23.)

Schmitt filed suit on August 16, 2017 and amended her complaint on October 16, 2017, adding the remaining plaintiffs. (Dkts. 1, 43.) The parties filed a joint scheduling conference report and appeared for the conference on December 11, 2017. (Dkts. 54, 56, 56-1.) The parties served initial disclosures on January 10, 2018. (Henry Decl., ¶ 3.) Both parties served document requests on February 14, 2018. (*Id.*, ¶ 4.) One month later, Plaintiffs produced eight pages of documents, with many written responses indicating that they had "none". (*Id.* ¶¶ 4, 36; Ex. 30.) Regarding Plaintiffs' requests, after conferring with Plaintiffs as to the types of sales data needed, Younique produced sales data and retail pricing in Excel format, along with the presenter agreements, among other responsive documents, on April 18, 2018. (*Id.* ¶¶ 4, 67; Ex. 61.) Younique also served deposition notices for the Plaintiffs on April 18, but Plaintiffs did not appear and did not provide alternative dates. (*Id.*, ¶ 4.) Ultimately, counsel stipulated to allow Plaintiffs' depositions to proceed beyond the discovery cutoff, allow Plaintiffs to depose Younique's Rule 30(b)(6) witness (though Plaintiffs had not noticed any depositions), and postpone Plaintiffs' filing of their motion for class certification. (Dkt. 67.) On August 1, 2018, Plaintiffs served their expert reports. (Henry Decl., ¶ 5.)

## IV.   **LEGAL STANDARD FOR CLASS CERTIFICATION**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal cites omitted). "To come within the

1  exception, a party seeking to maintain a class action must affirmatively demonstrate

2  his compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

3  (internal cites omitted).  Plaintiffs conceded that they must carry their burden with

4  evidentiary proof.  *Id.*; *see* Mot., 11.

5  **V.      CLASS CERTIFICATION SHOULD BE DENIED**

6      **A.      Plaintiffs' Motion Must Be Denied Because They Lack Standing**

7        If Plaintiffs fail to establish their own standing, they may not seek relief on

8  behalf of others.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

9        As described in Younique's Motion for Summary Judgment (Dkt. 94),

10  Plaintiffs lack standing because they did not rely on the alleged "natural" "green

11  tea" language and were not harmed by it. ████████████████████████████

12  ████████████████████████████████████████████████████

13  █████████████████████████████████ (Ex. 28, 67:12-18; 149:2-11;

14  43:24-44:10; 134:21-135:9.) ████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████. (Ex. 26, 92:18-93:5; 131:9-25; 31:12-

18  32:7; 79:16-80:4; 112:7-14; 195:3-7.) ████████████████████████

19  ████████████████████. (*Id.*, 81:18-20.) █████████████████████

20  ████████████████████████████████████████████

21  ████. (*Id.*, 122:11-123:11; 37:23-38:1.) █████████████████████████

22  █████████████████████████████████████████████████████████.

23  (Ex. 27, 31:17-33:13; 41:2-42:6; 39:19-40:6; 102:18-104:2.) ██████████████

24  █████████████████████████. (*Id.*, 129:5-130:1.) ████████████████

25  ███████████████████████████. (Ex. 25, 91:5-18; 166:24-167:6.)

26  ███████████████████████████████████████████████. (*Id.*,

27  158:15-161:3; 234:4-20; 279:21-280:8.) ████████████████████████

28  ████████████████████████████████████. (*Id.*, 50:7-51:2.)

### B.   Plaintiffs Failed To Demonstrate They Meet the Commonality Requirement of Rule 23(a)

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class."  This requires the court to "carefully scrutinize the relationship between a case's common and individual facts."  *In re SFPP Right-of-Way Claims*, 2017 U.S. Dist. LEXIS 85973, *33 (C.D. Cal. May 23, 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).)  "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing".  *Id.*  What matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350.

Plaintiffs assert that commonality is satisfied because the "class members were subjected to the same labeling that contained the same misrepresentations," but their testimony disproves this assertion.  Mot., 12:17-20.  None of the Plaintiffs saw the label *before* they obtained the Lash Enhancer.  They ordered the product online under different circumstances: ███████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████.  None handled the product before purchase and thus did not review the label.

Plaintiffs contend that materiality is one of the issues that will "revolve around *defendant's* conduct not the individual experience of plaintiffs."  Mot., 12:21-25.  Plaintiffs do not describe how they will rely on *Younique's* conduct to prove materiality.  Plaintiffs ignore their admissions which show that whether the "natural" "green tea" language was material varied from person to person. ████████
██████████████████████████████████████████



1 

2 

3 

4 

5 

6 

7 .

8     Both presenter Plaintiffs admitted that it was how the Lash Enhancer made

9 the lashes appear that was material to customers.

10 

11 

12     YouTube video by a makeup artist demonstrating the product without a single

13 mention of the ingredients, "green tea" or "natural."

14 

15 

16 . Thus, there

17 is no common evidence that the "natural" "green tea" language was material.

18     As to proving falsity, Plaintiffs pose the question "What were the fibers made

19 of?", but do not describe how they will answer this question with common evidence

20 at trial.  Though they alleged that the Lash Enhancer is made of "ground up nylon"

21 (SAC, ¶ 10), they point to only one piece of evidence in their Motion,

22 

23     Plaintiffs ignore that Younique then ordered fibers from a different vendor

24 (Exs. 47, 52-58.)

25     Plaintiffs do not establish that it is common

26 evidence of falsity as to the entire class period and both manufacturers.

27     As for damages, Plaintiffs side-step the issue, apparently contending it can be

28 dealt with through their expert, but do not address their own circumstances.  As

1  described in Section D below, Plaintiffs have not proffered a viable damages model.

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  (Phillips Decl., ¶¶ 11-22.)  Plaintiffs narrowed the class to purchasers of the Lash

5  Enhancer for personal use (as opposed to resale), but ignore that Brun ████████

6  ██████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████████████

10 ████████████████████████████████  (Phillips Decl., ¶ 8.)  Whether, and by

11 how much, Plaintiffs were damaged is not a common issue, but rather would require

12 an individualized analysis of each customer.  (*See also*, Tomlin Decl., ¶ 40.)

13      There are no common issues to satisfy Rule 23(a)(2).

14      **C.    Plaintiffs Are Wrong that Class-wide Reliance Can Be Presumed**

15      As part of their commonality argument, Plaintiffs refer to their predominance

16 argument where they assert under Rule 23(b)(3) that class-wide reliance can be

17 presumed, citing *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  Mot., 12, 18.

18 To qualify for a presumption of reliance, however, Plaintiffs must establish class-

19 wide exposure to a material representation. *Mazza v. Am. Honda Motor Co. Inc.*,

20 666 F.3d 581, 596 (9th Cir. 2012).  Plaintiffs do not establish class-wide exposure to

21 the "natural" "green tea" language nor do they establish that the language was

22 material to a reasonable consumer or the class.

23      1.    There Is No Common Evidence Of Uniform Exposure To The
            "Natural" "Green Tea" Language

24      Plaintiffs must show that there was uniform, class-wide exposure to the

25 allegedly false advertising.  *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 901

26 (N.D. Cal. 2014) (UCL and CLRA); *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919,

27 1011 (C.D. Cal. 2015) (OCSPA); *Smith v. WM. Wrigley Jr. Co.*, 663 F.Supp.2d

28

-14-

1336, 1339-40 (S. Fla. 2009) (FDUTPA).  A consumer who was never exposed to the alleged false advertising cannot recover under the UCL.  *Mazza*, 666 F.3d at 596 (vacating order certifying class because the advertising campaign was limited in scope, consisting of product brochures and TV commercials to which not all class members were exposed); *accord Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (affirming denial of class certification because there was no uniform exposure to a set of representations).

Plaintiffs suggest they are entitled to a presumption of exposure under *Tobacco II*, but *Tobacco II* requires a "decades-long campaign of deceptive advertising and misleading statements" before the presumption arises.  46 Cal.4th at 306.  Where, as here, there is no such evidence, exposure may not be presumed.

Plaintiffs offered only limited evidence of exposure to the class; namely, the Lash Enhancer label, evidence that Younique markets *itself* as a natural beauty company, and ████████████████████████████████████████ ████████████████████.  (Mot., 8:12-9:21.)

None of Plaintiffs' evidence proves class-wide exposure to the "natural" "green tea" language.  First, the Lash Enhancer was sold online and through presenters – there is no common evidence that consumers were exposed to the label before purchase.[3]  Second, the evidence that Younique marketed itself as a natural beauty company was unsupported.  ████████████████████ ████████████████████████████████████████████ ████████████(Ex. 29, 67:12-68:4.)  Plaintiffs' two website captures which mention "natural beauty" from 2013 and 2014 do not rise to the level of classwide exposure. ████████████████████████████████████████████

---

[3] Even if the putative class had seen the label before purchase, the "natural" "green tea" language was not sufficiently prominent to assume class-wide exposure as it appeared on the back in small font.  *Hadley v. Kellogg Sales Co.*, 2018 U.S. Dist. LEXIS 140124, *27-28 (N.D. Cal. Aug. 17, 2018) (denying class certification; classwide exposure to misleading language on box of cereal bars could not be presumed given it appeared on the back in small font in a block of text).

1  ██████████████████████████████████████████████████.  (Mot., Ex. 4.)  None

2  of Plaintiffs testified they were exposed to any of these statements before purchase.

3       In *Cohen v. DirecTV, Inc.*, 178 Cal.App.4th 966, 979 (2009), the court denied

4  class certification in part because the class included subscribers who never saw the

5  DirecTV ads and instead made their purchasing decisions based on word-of-mouth,

6  or because they saw DirecTV HD in a store or in a home and presumably liked it.

7       For the same reasons, the class should not be certified here.  ███████████

8  ███████████████████████████████████████████████████████████████████████

9  ██████████████████████████████████████████  Both Orlowsky and

10 Brun used YouTube videos to sell the Lash Enhancer, which do not mention

11 "natural" or "green tea."  They repeatedly posted images and information about the

12 Lash Enhancer on social media that did not mention "natural" or "green tea."

13           2.    <u>There Is No Common Evidence Showing That The "Natural"
                    and "Green Tea" Language Was Material</u>

14

15      Plaintiffs are not entitled to a presumption of class-wide reliance because they

16 have not shown that the "natural" "green tea" language was material.  To obtain the

17 presumption of class-wide reliance, Plaintiffs must first show that the representation

18 was "a substantial factor, in influencing" their decisions to purchase the Lash

19 Enhancer.  *Tobacco II*, *supra*, 46 Cal.4th at 326-28.  Only if the label substantially

20 influenced their purchasing decisions would the court assess whether the label was

21 material; that is, whether "a reasonable man would attach importance to its existence

22 or nonexistence in determining his choice of action…".  *Id.*

23      In *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 225, 229-230 (N.D. Cal.

24 2015), even though plaintiffs offered an expert declaration addressing materiality, it

25 was too generic to satisfy the plaintiffs' burden.  The court concluded that "While

26 materiality and reliance for purposes of UCL, FAL and CRLA claims can be subject

27 to common proof on a classwide basis under some circumstances, Plaintiffs here

28 have offered no valid means by which such classwide proof would be made."

-16-

Here, Plaintiffs offered *no* expert testimony of materiality, nor did they identify an expert on materiality for trial.  (Henry Decl., ¶ 5.)  In contrast, Younique has submitted Plaintiffs' admissions that they purchased the Lash Enhancer for reasons unrelated to the "natural" "green tea" language, ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ Younique has also submitted evidence of how presenters sold the product without any reference to "natural" or "green tea", and the product sold itself when customers saw the difference on lashes with and without it.

The evidence before the Court demonstrates that customers did not rely on the "natural" "green tea" language; at a minimum, it varied from customer to customer, and the case should not be certified as a class action.  *Webb v. Carter's Inc*., 272 F.R.D. 489, 502 (C.D. Cal. 2011) ("[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action."); *accord, Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1022 (9th Cir. 2011); *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 133 (2009) (plaintiffs offered "no evidence indicating the inquiry can be conducted on a [class-wide] basis," while the defendant had introduced "overwhelming evidence" that it could not be); *Marks v. C.P. Chem. Co*., 31 Ohio St. 3d 200, 206 (1987) (same rule under OCSPA).

**D.    Plaintiffs Have Not Met Their Burden Of Providing A Legally Viable Damages Model Under *Comcast***

Plaintiffs must present a damages model that is consistent with their theory of liability.  *Comcast*, 569 U.S. at 35.  The "model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct].  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id*. (internal cites omitted).

Plaintiffs submit the May report in which he discusses a full refund model, opines he could prepare a disgorgement of profits model, and opines he could prepare a regression model to measure price premium.  As described below and in the accompanying declaration of economist Jonathan Tomlin, Plaintiffs fail to meet their burden of presenting any viable model.

    1.   The "Full Refund" And "Profit Disgorgement Models" Are Not Viable Damages Models

Properly calculated, restitution in false advertising cases is "the difference between what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 131 (2009); *Chowning v. Kohl's Dept. Stores, Inc.,* 2018 U.S. App. LEXIS 16336, *2 (9th Cir. June 18, 2018); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006) (FDUPTA).  This is the same measure of damages permitted for breach of warranty and MMWA.  Cal. Comm. Code § 2714(2); Oh. Rev. Code § 1302.88; Tenn. Code § 47-2-714(2); *Tuscany Invs. LLC v. Daimler Trucks North Am. LLC*, 2015 U.S. Dist. LEXIS 109842, *5 (N.D. Cal. Aug. 19, 2015) (MMWA).

A full refund is available only when plaintiffs prove the product had no value. *Stathakos v. Columbia Sportswear Co.*, 2017 U.S. Dist. LEXIS 72417, *28 (N.D. Cal. May 11, 2017); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed.Appx. 531, 534 (9th Cir. 2016) (rejecting full refund model because "a plaintiff cannot be awarded a full refund unless the product she purchased was worthless".)

Nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment, is not available in a class action under the CLRA and UCL.  *In re Tobacco II*, 240 Cal.App.4th 779, 800 (2015).

Plaintiffs' full refund and profit disgorgement models are not tied to their theories of liability.  Plaintiffs do not provide any evidence that the Lash Enhancer had "no value" to them to support a full refund.  Rather, Plaintiffs admitted they obtained value from their purchases ███████████████████

-18-

███████████████████ (Ex. 25, 51:3-12; 284:19-285:8; Ex. 26, 31:12-24; Ex. 27, 58:22-25; Ex. 28, 52:8-22.)  For "profit disgorgement," Plaintiffs cite no case law holding that they are entitled to receive Younique's profits from the Lash Enhancer sales.  Such a remedy is nonrestitutionary disgorgement and fails to measure the difference between the price paid versus the value of the product as received.  Accordingly, neither model satisfies their obligations under *Comcast*.

2. <u>Plaintiffs Have Not Carried Their Burden Of Showing That A Hedonic Regression Can Be Performed</u>

Plaintiffs have the burden of showing that their proposed hedonic regression can in fact be performed to measure the difference between the price paid and the value of the product received.  *See Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 157575, *41 (N.D. Cal. Nov. 6, 2014) (it was not enough to "just say that the Regression Model controls for other factors; Brazil must show the Court that the model can. Brazil has not done so. Thus, Brazil has not met his burden …").  Even where plaintiffs have submitted regression models, courts have rejected them finding that they were inadequate to measure the available relief.  *See Bruton v. Gerber*, 2018 U.S. Dist. LEXIS 30814, *29-36 (N.D. Cal. Feb. 13, 2018) (rejecting regression model in false advertising case); *Werdebaugh v. Blue Diamond*, 2014 U.S. Dist. LEXIS 173789, *29-33 (N.D. Cal. Dec. 15, 2014) (same).

Dr. May has not actually prepared a regression model.  (Dkt. 80-2, ¶ 38.)  Dr. May generally stated that he *might* be able to use a regression model to measure the difference between the price paid and the value of the Lash Enhancer received.  Dr. May has apparently not collected the data he believes he needs.  He has not provided a clearly-defined list of variables, has not determined whether the data related to any or all of his proposed control variables exists, and has not determined, or shown how he would determine, which competing and complementary products he would use.  Courts facing a similar dearth of specific facts about a regression model have refused to certify class actions.  *See Jones v. ConAgra Foods, Inc.*, 2014 U.S. Dist.

-19-

1   LEXIS 81292, *77-78 (N.D. Cal. June 13, 2014); *Guido v. L'Oreal, USA, Inc.*, 2013

2   U.S. Dist. LEXIS 94031, *44-45 (C.D. Cal. July 1, 2013) (refusing to certify

3   California class; "without evidence affirmatively demonstrating that the true market

4   price [] can be calculated on a classwide basis, plaintiffs' claim that there is a

5   classwide method of granting relief is factually unsupported."); *Randolph v. J.M.*

6   *Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) (denying class certification;

7   "Other than the bald, unsupported assertion that this method will work, Plaintiff

8   presents no hard-and-fast evidence that the premium is capable of measurement.").

9          The court should not take Dr. May at his word that his theoretical regression

10  model could work.  Economist Jonathan Tomlin reviewed May's bare bones

11  declaration and concluded ████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████ (Tomlin

14  Decl., ¶ 20.) ████████████████████████████████████████████

15  ████████ (*Id.*, ¶¶ 21-40.) ████████████████████████████████

16  ████████████████████████████████████████████████████████████

17                                         (*Id.*, ¶ 24.) ████████████████

18  ████████████████████████████████████████████████████

19  ████████████████ (*Id.*, ¶¶ 25-33.) ████████████████████████████

20  ████████████████████████████████████████ (*Id.*, ¶¶ 24-40.)

21         Because Dr. May presents no explanation of the relationship between his

22  "opinions" and the facts of this case, Plaintiffs have not carried their burden of

23  showing that "damages are susceptible of measurement across the entire class."

24  *Comcast*, 569 U.S. at 35.

25                 3.      Dr. May's Models are Incomplete

26  ███████████████████████████████████ (Tomlin Decl., ¶¶ 19, 41-42.) ████

27  ███████████████████████████████████████████████████ (May Decl., ¶¶

28  14 ████████████████████), 18 ("██████████████"), 22 ("████████"); 27-28.)

1   While the Lash Enhancer had a consistent retail price ($29), that is not the price that

2   many customers actually paid. ███████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████. (Phillips Decl., ¶ 8; Ex. 26, 81:1-14; Ex. 25, 133:18-134:3.) ███████████

5   ██████████████████████████████████████████████. (Tomlin Decl., ¶¶ 34-40.)

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ████ his model provides no mechanism to calculate even individual damages.[4]

9        ██████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ███████████████████████████████. (Dkt. 80-2, ¶ 22.)  Plaintiffs never

12  asked for information about the new product during discovery.  (Ex. 59, p. 6-7

13  (defining "Product" as the "Fiber Lashes identified in Plaintiffs' complaint").) ██████

14  ████████████████████████████████████████████████████████

15  ████████████████. (Tomlin Decl., ¶¶ 24-33.)  As for third party data, Plaintiffs do

16  not explain why they did not obtain this information, ███████████████████████

17  █████████████████. (Dkt. 80-2, ¶ 22.)  Plaintiffs served a subpoena for third

18  party mascara data on IRI Worldwide on July 30, 2018, two days before May's

19  report was due and two months after the close of discovery.  (Ex. 60.) ███████████

20  ████████████████████████████████████████████████████.

21       Plaintiffs provide no explanation excusing the absence of a viable model.

22  Initial expert reports were due on August 1, 2018, and Plaintiffs submitted the May

23  declaration as his expert report.  Plaintiffs obtained an additional 60 days to prepare

24  their motion for class certification.  (Dkt. 67.)  Plaintiffs did not meet their burden

25  under *Comcast*, 569 U.S. at 35; Tomlin Decl., ¶ 7.

---

26  [4] Plaintiffs cannot justify Dr. May's incomplete model. ██████████████████████

27  ██████████████████████████████████████████████████████  Plaintiffs

     apparently did not provide May with the presenter agreements or the deposition

28  transcripts of Orlowsky and Brun that also discuss these economics.

**E.      Individual Issues As To Each Class Member Demonstrate that The Class Mechanism is Not Superior or Manageable**

Without providing any sort of trial plan, Plaintiffs conclude that "there will be no difficulties managing this action because it concerns straightforward claims for breach of warranty and consumer fraud based on a limited number of labeling statements that conveyed consistent messages." Mot., 30.  Plaintiffs also argue that the class definition is simple.  Mot., 31.  Plaintiffs are wrong.

Plaintiffs' proposed class definition presents the following factual inquiries just to determine whether a person is a member of the class (Mot., 11):

(1)  Did the class member purchase a "stand-alone" Lash Enhancer (rather than as part of a collection)?  Plaintiffs have chosen to forego recovery where the Lash Enhancer was sold as part of a collection (Mot. Ex. 5.), presumably because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Both Brun and Orlowky purchased the Lash Enhancer as part of a collection.  (Exs. 33, 37, 41.)

(2)  Did the class member purchase the Lash Enhancer for "personal, family or house-hold use"?  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 26, 30:20-31:24; 134:24-135:10; Ex. 25, 50:7-16.)  Thus, identifying the class members and the purchases at issue would be fact intensive and consuming, and according to Brun, ▮▮▮▮▮▮▮▮.

Even if this narrow class definition were workable, it does not address the variables as to whether a class member suffered damages, and if so, the extent.  Presumably, Plaintiffs narrowed the class definition to "stand-alone" purchases because the price of the Lash Enhancer varied such that it would prevent their expert from preparing a viable damages model.  Plaintiffs ignore the multiple other ways the price of the Lash Enhancer varies.  Customers can earn Y cash and half-price coupons to offset the cost of future purchases, and presenters can earn commissions.

Finally, all putative class members who are or were presenters are subject to arbitration clauses in their agreements with Younique.  Younique produced copies of these agreements and asserted arbitration in its answer (Dkt. 60, ¶¶ 16, 26; Ex. 40).  Plaintiffs fail to address Younique's right to enforce these agreements.  The fact that numerous putative class members are subject to arbitration agreements weighs against certification.  *Tan v. GrubHub, Inc.*, 2016 U.S. Dist. LEXIS 186342, *12-14 (N.D. Cal. July 19, 2016) (no commonality where "vast majority of class members" were "potentially bound" by arbitration and class action waivers).

## F.     Plaintiffs And Their Counsel Are Not Adequate

To establish adequacy under Rule 23(a)(4), Plaintiffs must show that they will "fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a)(4).  To determine this, courts ask, "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal cites omitted).

"The doctrine of claim-splitting bars a party from bringing claims arising from the same set of facts in successive actions, rather than bringing them all at once."  *Rivera v. Am. Fedn. Of State*, 2017 U.S. Dist. LEXIS 110743, *7-8 (N.D. Cal. July 17, 2017) (citing *U.S. v. Haytian Republic*, 154 U.S. 118, 124-25 (1894)).  In this way, it is similar to the doctrine of res judicata.  *Rivera*, 2017 U.S. Dist. LEXIS at *8-9.  While the Ninth Circuit has not had occasion to rule on this issue, the Fifth Circuit has ruled that claim splitting can create an "irreconcilable conflict of interest with the class" going to adequacy.  *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017).  At least one California district court has applied the Fifth Circuit's analysis.  *Andren v. Alere, Inc.*, 2017 U.S. Dist. LEXIS 209405, *23-25 (S.D. Cal. Dec. 20, 2017).

Plaintiffs have not demonstrated that they are conflict free and are adequately protecting the interests of the class.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ████████████████████████████████████████████████████

2    ████████████████████████████████.  (Tomlin Decl., ¶¶ 34-37.)  Class

3    members who hosted parties could earn discounts from sales of the Lash Enhancer

4    and class members who were presenters also earned commissions from those sales.

5    In addition, presumably because they wish to avoid the complications of the varying

6    prices of the Lash Enhancer when sold collections, Plaintiffs defined the class to

7    exclude purchases of the product in collections.  (Dkt. 80-1, p. 11 ("consumers who

8    purchased stand-alone [Lash Enhancer] between October 2012 and July 2015 for

9    personal, family or household use.").)  If Plaintiffs' liability theory were correct,

10   they will waive recovery for class members who also purchased the product as part

11   of a collection.  Two of Brun's purchases and two of Orlowsky's purchases were

12   through collections and apparently not subject to recovery under Plaintiffs' plan.

13          "[A] lawyer's unethical conduct, both before and during the litigation in

14   question, is relevant to determining whether counsel is adequate under Rule 23."

15   *White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1170 (C.D. Cal. 2014).

16          This is an attorney-orchestrated lawsuit resulting from counsel's internet

17   solicitation of clients. █████████████████████████████.[5]  (Ex. 28,

18   129:10-132:3; Ex. 45.) ███████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████. District courts have refused to certify class actions where

21   lawsuits were drummed up in this manner.  *Bodner v. Oreck, LLC*, 2007 U.S. Dist.

22   LEXIS 30408, *5-6 (N.D. Cal. Apr. 25, 2007).

23          Plaintiffs and their counsel have abused the discovery process by failing to

24   provide requested documents and information and serving false discovery responses.

25

26   ───────────────────
     [5] New York prohibits solicitation in forums that permit "real-time or interactive
27   communication."  N.Y.R.P.C. 7.3 ("A lawyer shall not engage in solicitation by … real-time or interactive computer-accessed communication…"; N.Y. Ethics Opinion 899 (2011) (prohibiting solicitation in forums that permit "real-time or interactive
28   communication."); N.Y. Ethics Opinion 1110 (2016) (same).

1    Plaintiffs formally produced eight pages of documents and then additional pages

2    immediately before or during their depositions months later.  (Henry Decl. ¶ 4.)

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████ (Ex. 26, 23:6-24:12; 27:22-31:15;

5    182:25-185:11; Ex. 25, 43:1-16; Exs. 41, 44.)

6          Plaintiffs have not participated in efforts to resolve this case.  ████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████.  (Ex. 28, 164:7-165:25; Ex. 26, 82:2-24.)  Plaintiffs did not

11   attend the private mediation, as required by Local Rule 16-15.5(b) – only Plaintiffs'

12   counsel attended.  (Henry Decl., ¶ 6.)  This shows class counsel's inadequacy.

13         Because Plaintiffs are not pursuing all available relief and their counsel are

14   not adequate, class certification should be denied.

15   **VI.   CONCLUSION**

16         Plaintiffs have not met their burden of providing this Court with evidence that

17   the Rule 23 requirements have been met.  Among other things, Plaintiffs have not

18   shown that there is common evidence of exposure to the alleged false label, nor

19   shown that the Lash Enhancer label is material to consumers.  Their motion for class

20   certification should be denied.

21

22   Dated:  October 22, 2018

23                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

24

25                         By  _____
                                        */s/ Abby H. Meyer*
26                                   SASCHA HENRY
                                   JONATHAN D. MOSS
27                                   ABBY H. MEYER
                              Attorneys for Defendant Younique, LLC
28

| Index of Exhibits | |
|---|---|
| **Index of Exhibits** | |
| Exhibit | Description |
| Compendium of Images | |
| 1 | Lash Enhancer Tubes (Deposition Exhibit 51) |
| 2 | Lash Enhancer Photograph (Deposition Exhibit 6) |
| 3 | Lash Enhancer Tubes and Case (Deposition Exhibit 45) |
| 4 | Lash Enhancer Photograph with Insert & Packaging (Deposition Exhibit 8) |
| 5 | Lash Enhancer Photograph with Insert & Packaging (Deposition Exhibit 9) |
| 6 | Lash Enhancer Label (Deposition Exhibit Ranallo 4) |
| 7 | Brun YouTube Screenshot (Deposition Exhibit 26) |
| 8 | Orlowsky Instagram (Deposition Exhibit 64) |
| 9 | Orlowsky Instagram (Deposition Exhibit 65) |
| 10 | Orlowsky Instagram (Deposition Exhibit 66) |
| 11 | Orlowsky Instagram (Deposition Exhibit 67) |
| 12 | Orlowsky Instagram (Deposition Exhibit 79) |
| 13 | Orlowsky Instagram (Deposition Exhibit 80) |
| 14 | Younique Marketing Asset (collection) (Deposition Exhibit 28) |
| 15 | Younique Marketing Asset (tubes & case) (Deposition Exhibit 30) |
| 16 | Younique Web Capture (Deposition Exhibit 33) |
| 17 | Younique Marketing Asset (collection) (Deposition Exhibit 35) |
| 18 | Younique Marketing Asset (collection) (Deposition Exhibit 36) |
| 19 | Younique Marketing Asset (collection) (Deposition Exhibit 37) |
| 20 | Younique Marketing Asset (collection) (Deposition Exhibit 38) |
| 21 | Younique Marketing Asset (collection) (Deposition Exhibit 39) |
| 22 | Younique Marketing Asset (collection) (Deposition Exhibit 41) |
| 23 | Younique Marketing Asset (collection) (Deposition Exhibit 44) |
| 24 | Younique Marketing Asset (tubes) (Deposition Exhibit 48) |
| Deposition Transcripts | |
| 25 | Relevant portions of deposition transcript of Stephanie Miller Brun |
| 26 | Relevant portions of deposition transcript of Carol Orlowsky |
| 27 | Relevant portions of deposition transcript of Megan Schmitt |
| 28 | Relevant portions of deposition transcript of Deana Reilly |
| 29 | Relevant portions of deposition transcript of Vrena Ranallo |
| Deposition Exhibits | |
| 30 | Plaintiffs' First Production of Documents (Deposition Exhibit 3) |
| 31 | Brun Receipt (Deposition Exhibit 12) |
| 32 | Brun Receipt (Deposition Exhibit 13) |
| 33 | Brun Receipt (Deposition Exhibit 14) |

| 34 | Brun Receipt (Deposition Exhibit 15) |
|---|---|
| 35 | Brun Receipt (Deposition Exhibit 16) |
| 36 | Brun Receipt (Deposition Exhibit 17) |
| 37 | Brun Receipt (Deposition Exhibit 18) |
| 38 | Brun Receipt (Deposition Exhibit 20) |
| 39 | Screenshot Brun's Online Younique Boutique (Deposition Exhibit 27) |
| 40 | Presenter Agreement (Deposition Exhibit 58) |
| 41 | Printouts of Orlowsky Receipts (Deposition Exhibit 61) |
| 42 | Orlowsky Instagram Charms (Deposition Exhibit 77) |
| 43 | Orlowsky Instagram Charms (Deposition Exhibit 78) |
| 44 | Plaintiffs' Response to Defendant's Requests for Production Propounded to Orlowsky, Set One, Served on March 17, 2018 (Deposition Exhibit 83) |
| 45 | DeBell Facebook Post (Deposition Exhibit 88) |
| 46 | Printout of Reilly Receipt (Deposition Exhibit 90) |
| Non-Deposition Exhibits | |
| 47 | Senos Manufacturing Agreement (YNQE0003081) |
| 48 | 2013-10-17 Email with Six Plus (YNQE0001079) |
| 49 | 2013-9-23 Purchase Order to Six Plus (YNQE0002255) |
| 50 | 2013-10-28 Purchase Order to Six Plus (YNQE0002330) |
| 51 | 2013-11-8 Purchase Order to Six Plus (YNQE0002155) |
| 52 | 2013-11-12 Purchase Order to Senos (YNQE0002306) |
| 53 | 2013-11-25 Purchase Order to Senos (YNQE0002967) |
| 54 | 2013-12-16 Purchase Order to Senos (YNQE0002916) |
| 55 | 2014-2-28 Purchase Order to Senos (YNQE0002828) |
| 56 | 2014-5-9 Purchase Order to Senos (YNQE0002594) |
| 57 | 2014-9-29 Purchase Order to Senos (YNQE0002616) |
| 58 | 2014-11-20 Purchase Order to Senos (YNQE0002521) |
| Discovery Documents | |
| 59 | Plaintiffs' First Request for Production of Documents to Younique, Served on February 14, 2018 |
| 60 | IRI Worldwide Subpoena, Served July 30, 2018 |
| 61 | Moss Correspondence |