**NYE STIRLING HALE & MILLER, LLP**
Jonathan D. Miller (CA 220848)
Alison M. Bernal (CA 264629)
jonathan@nps-law.com
alison@nshmlaw.com
33 West Mission St., Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, CA 92101
Telephone: (619) 762-1900
Facsimile: (619) 756-6991

*Attorneys for Plaintiffs and the Class*
*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN SCHMITT, DEANA REILLY, CAROL ORLOWSKY, and STEPHANIE MILLER BRUN, individually and on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>YOUNIQUE, LLC,<br><br>　　　　Defendant. | Case No. 8:17-cv-01397-JVS-JDE<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT, AND AUTHORIZATION OF NOTICE**　　*REDACTED*<br><br>Complaint Filed: 8/17/17 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS……………………………………………………....I-II

TABLE OF AUTHORITIES……………………………………..………III-V

I.   INTRODUCTION………………………………………………………..1

II.   FACTUAL AND PROCEDURAL BACKGROUND………………………3

     A. Terms Of The Settlement…………..……………………..………..5

     B. The Proposed Notice Plan…………………………………………6

     C. The Claims Process……………………………………………..7

     D. Attorneys' Fees And Class Representative Compensation……..…….9

III.   ARGUMENT…………………………………………………………..9

     A. The Proposed Settlement Class Should Be Certified………………9

        1. The Class Meets The Requirements Of Rule 23(a)…..………..9

        2. The Class Meets The Requirements Of Rule 23(b)(3)…..…...12

     B. The Proposed Settlement Should Be Preliminarily Approved…..…14

        1. The Rule 23(e)(2) Factors Weigh In Favor Of Preliminary
           Approval…………………………………………………...…15

           a. The Class Representatives And Class Counsel Have
              Adequately Represented The Class……..…………….15

           b. The Proposal Was Negotiated At Arm's Length…..…..16

           c. The Relief Provided To the Class Is Adequate……..…17

i. The Costs, Risks, And Delay of Trial And Appeal…....17

ii. The Effectiveness of Class Notice And Processing Of
Claims…………………………………………………..20

iii. The Proposed Attorneys' Fees…………………………...21

iv. There Exists No Agreement Require To Be Identified
Under Rule 23(e)(3)…………………………………...…21

d. The Proposal Treats Members Of The Settlement Class
Equitably Relative To Each Other………….………...22

2. The Proposed Settlement Satisfies The *Churchill* Factors.….23

a. The Strength Of Plaintiffs' Case……...………………23

b. The Extent of Discovery Completed And The Stage Of
Proceedings……………………………………………
……24

c. The Presence Of A Government Participant…..………25

d. The Reaction Of Members Of The Settlement Class To
The Proposed Settlement……………………….…...…26

C. The Proposed Notice Plan Should Be Approved……………………26

1. The Settlement Provides For the Best Method Of Notice
Practicable Under The Circumstances……………...….…….26

2. The Proposed Form Of Notice Adequately Informs Settlement
Class Members Of The Settlement And Their Right to
Object……………………………………………………27

D. Appointment of Settlement Administrator………………………….28

IV.    CONCLUSION……………………………………………....…29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................10, 13

*Beaver v. Tarsadia Hotels*,
   No. 11-cv-01842-GPC-KSC,
    2017 U.S. Dist. LEXIS 160214 (S.D. Cal. Sep. 28, 2017)................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC,
   2016 U.S. Dist. LEXIS 9944 (N.D. Cal. Jan 26, 2016)....................................19

*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ..............................................................13

*Chester v. TJX Cos.*,
   No 5:15-cv-01437-ODW (DTB)*,*
   2017 U.S. Dist. LEXIS 201121 (C.D. Cal. Dec. 5, 2017)................................28

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .....................................................................15, 23

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
   926 F.3d 539 (9th Cir. 2019) ..........................................................10, 11, 12, 13

*Ford v. CEC Entm't Inc.*,
   No.: 14cv677 JLS (JLB),
   2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) ..............................21

*G. F. v. Contra Costa Cnty.*,
   No. 13-cv-03667-MEJ,
   2015 U.S. Dist. LEXIS 100512 (N.D. Cal. July 30, 2015) ..............................16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................12

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................14

*Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*,
  654 F.3d 935 (9th Cir. 2011) ...................................................................15, 16, 17

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ...................................................................11, 13

*In re Lenovo Adware Litig.*,
  No. 15-md-02624-HSG,
  2018 U.S. Dist. LEXIS 198909 (N.D. Cal. Nov. 21, 2018) ..............................19

*Lilly v. Jamba Juice Co.*,
  No. 13-cv-02998-JST,
  2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) ................................14

*McKenzie v. Fed. Express Corp.*,
  No. CV 10-02420 GAF,
  2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012)..................................18

*Moore v. Verizon Commc'ns Inc.*,
  No. C 09-1823,
  2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013) ..............................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)...................................................................20

*In re Netflix Privacy Litig.*,
  No.: 5:11-CV-00379 EJD,
  2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18,
  2013)……………………………………...20

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................18, 20

*Pederson v. Airport Terminal Servs.*,
  2018 No. CV 15-02400-VAP,
  2018 U.S. Dist. LEXIS 93862 (C.D. Cal. Apr. 5, 2018) ..................................25

*Retta v. Millennium Prods.*,
　　No. CV15-1801 PSG AJWx
　　2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017). ..................18

*Sullivan v. DB Investments, Inc.*,
　　667 F.3d 273 (3d Cir. 2011) ............................................................19

*Tait v. BSH Home Appliances Corp.*,
　　No.: SACV 10-0711-DOC (ANx),
　　2015 U.S. Dist. LEXIS 98546 (C.D. Cal. Jul. 27,
　　2015)………………………………………14

*Tyson Foods, Inc. v. Bouaphakeo*,
　　136 S. Ct. 1036 (2016)..................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011).....................................................................10

*Wallace v. Countrywide Home Loans. Inc.*,
　　NO. SACV 08-1463-JLS,
　　2015 U.S. Dist. LEXIS 190929 (C.D. Cal. Apr. 17, 2015) ...............................17

**Statutes**

Federal Rule of Civil Procedure 23 ...................................................*passim*

Plaintiffs Megan Schmitt, Deana Reilly, and Stephanie Miller Brun ("Plaintiffs") submit this memorandum in support of their Motion for Preliminary Certification of Settlement Class, Preliminary Approval of Settlement, and Authorization of Notice.

## I.   __INTRODUCTION__

Plaintiffs allege that Defendant Younique LLC ("Defendant") sold "Moodstruck 3D Fiber Lashes" (the "Product") while representing that the lashes component of the Product was composed of "Natural Fibers" and "100% Natural Green Tea fibers", when in, fact, the lashes were synthetic.  Plaintiffs further allege that consumers were injured by paying a price premium for the Product based on Defendant's misrepresentation.  Defendant denies these claims.

Plaintiffs and Defendant Younique LLC ("Defendant"), through their counsel (collectively, "the Parties"), have negotiated a proposed settlement ("Settlement Agreement") that provides substantial benefits to a broader class of consumers than the Court certified during the litigation (the "Settlement Class").[1]

---

[1] "Settlement Class" means all persons who (1) during the Class Period, resided in one of the following states: California, Ohio, Florida, Michigan, Minnesota, Missouri, New Jersey, Pennsylvania, Tennessee, Texas, and Washington; and (2) purchased one or more Products for personal, family or household use and not for resale.  (Settlement Agreement II.Z.)

The proposed settlement provides for the creation of a Settlement Fund[2] in the amount $3,250,000.00 which shall pay for: (1) any necessary taxes and tax expenses related to the Fund, if any; (2) all payments of valid claims from members of the Settlement Class; (3) attorneys' fees and costs to be determined by the Court; (4) Class Representative service awards; and (5) all costs of settlement notice and administration.  Settlement Agreement § IV.A.1; Exhibit 1 to the Declaration of Adam Gonnelli ("Gonnelli Decl.").  The Settlement Agreement establishes a claims process whereby consumers may obtain monetary compensation by submitting an approved Claim Form.  *Id.* at § V.  Defendant has also agreed to conduct testing of fiber lash products for which Younique describes the ingredients thereof as "natural" for a period of three years.  *Id.* at §IV.B.1.

Plaintiffs respectfully submit that the terms of the Settlement are fair, reasonable and adequate in light of the factors set forth in the recent amendments to Rule 23(e)(2) and that the requirements for Final Approval will ultimately be satisfied.  However, for Preliminary Approval, the Court need only assess whether the Settlement Agreement is within the range of what may be found to be fair, adequate, and reasonable, so that the Settlement Class members can be notified of the proposed Settlement and a Final Approval Hearing can be scheduled.  Once

---

[2] Any terms not otherwise defined herein have the same meaning as in the Class Settlement Agreement, filed concurrently herewith.

Settlement Class members have received notice and had the opportunity to file claims, opt out, or object, Plaintiffs will ask the Court to grant final approval.

At this preliminary stage, Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily certifying the Settlement Class; (2) preliminarily approving this Agreement for purposes of issuing Class Notice; (3) approving the Class Notice and Notice Plan; (4) appointing the Settlement Administrator; (5) appointing Class Counsel as counsel for the Settlement Class; and (6) setting all related dates.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant sold the Product online and through persons known as "presenters" between October 1, 2012 and July 31, 2015.  Plaintiff Megan Schmitt filed this action on August 14, 2017, alleging that Defendant's representation that the Product fibers were composed of "Natural Fibers" and "100% Natural Green Tea fibers", constituted fraudulent, unfair, unlawful, and deceptive business practices, in violation of the laws of the state of California, because the Product contained synthetic ingredients.  (ECF No. 1, Class Action Compl.) An amended complaint filed on October 13, 2017 added Plaintiffs Deana Reilly, Carol Orlowsky, and Stephanie Miller Brun and causes of action alleging violations of the laws of Ohio, Florida, and Tennessee.  (ECF No. 43, First Am. Compl.)  Plaintiffs sought both injunctive and monetary relief.  (First Am. Compl. at 37-38.)  On November 3, 2017,

Defendant moved to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 45.)  The Court granted in part and denied in Part Defendant's motion.  (ECF No. 53.)  Thereafter Plaintiffs filed a Second Amended Complaint (ECF No. 58), which Defendant answered, explicitly denying Plaintiffs' allegations regarding the accuracy of the label and the ingredients of the product at issue.  (ECF No. 60.)

On October 4, 2018, Plaintiff Bowers filed a class action complaint in the Circuit Court of Jackson County in the State of Missouri styled *Bowers v. Younique LLC*, 1816-CV25646.  *Bowers* asserted similar factual claims as those in *Schmitt*. Younique disputed, and continues to dispute, the allegations in both complaints. There has been no decision on class certification in *Bowers*.

Plaintiffs Schmitt, Miller-Brun, Reilly and Orlowsky moved for class certification.  (ECF No. 77.)  Defendant opposed the motion for class certification and moved for summary judgment, or in the alternative, summary adjudication. (ECF Nos. 94 and 106.)  On December 21, 2018, the Court granted in part and denied in part Defendant's motion for summary judgment.  (ECF No. 136.)  On January 10, 2019 the Court granted in part and denied in part the motion for class certification, certifying classes of California, Florida, and Ohio consumers.  (ECF No. 149.)

The Parties made efforts to resolve the dispute at various times throughout the litigation.  Gonnelli Decl. ¶ 11.  On August 28, 2018, the parties participated in a

mediation at Judicate West in Santa Ana before the Honorable John Leo Wagner
(Ret.).  *Id.*  The Parties held a second mediation with the Honorable Leo Pappas
(Ret.) on April 23, 2019.  *Id.* Discussions continued through the mediators and
between counsel, ultimately resulting in this Agreement.  *Id.*

A.   <u>**Terms of the Settlement**</u>

The proposed settlement provides for the creation of a Settlement Fund in the
amount of $3,250,000.00 which shall pay for: (1) any necessary taxes and tax
expenses of the Fund, if any; (2) all payments of valid claims from members of the
Settlement Class; (3) attorneys' fees and expenses to be determined by the Court;
(4) Service Awards; and (5) all costs of settlement notice and administration.
Settlement Agreement § IV.A.1.

The Settlement provides for monetary relief to each member of the Settlement
Class who submits a timely and valid Claim Form pursuant to the terms and
conditions of this Agreement in the form of a cash refund.  Settlement Agreement
V.J.  The total amount of the payment to each member of the Settlement Class will
be based on the number of valid claims submitted.  *Id.*  The Settlement Administrator
shall determine each authorized Settlement Class member's pro rata share based
upon each Settlement Class member's Claim Form and the total number of valid
claims.  *Id.* Accordingly, the actual amount recovered by each Settlement Class
member who submits a timely and valid claim will not be determined until after the

Claim Period has ended and the total amount of valid claims submitted is
determined.  *Id.*

Any value remaining in the Residual Fund shall increase approved Settlement
Class members' relief on a *pro rata* basis until the Residual Fund is exhausted, unless
a supplemental distribution is economically unfeasible, in which case the parties will
meet and confer in good faith to reach an agreement on a *cy pres* recipient approved
by the Court.  Settlement Agreement V.L.  Under no circumstances will any portion
of the Settlement Fund revert to Younique.  *Id.*

Further, under the Settlement Agreement, Younique agrees that, for a period
of three years, if Younique elects to describe an ingredient in its current or future
fiber lash products as "natural", Younique will have the product tested by a reputable
U.S.-based laboratory every six months to confirm the ingredients identified as
"natural" are as described.  Settlement Agreement IV.B.1.  Such testing shall be
undertaken to confirm that the ingredients are natural and not "synthetic" as that
term is defined in the Organic Foods Production Act of 1990, at 7 U.S.C. § 6502
(21).  *Id.*

**B.  <u>The Proposed Notice Plan</u>**

The Parties have jointly agreed to have Heffler Claims Group serve as the
Claims Administrator.  Settlement Agreement § VI.A. The Claims Administrator
will effectuate notice as set forth in the Notice Plan by: 1) Emailing the Notice to the

potential Settlement Class members for which Younique has email contact information; (Declaration of Scott Fenwick ("Fenwick Decl.") ¶ 5;  Exhibit B to the Settlement Agreement); 2) Mailing the Postcard Notice to any members of the Settlement Class for whom the initial email is returned as undeliverable (*Id*. at ¶¶ 8-9); 3) Launching an internet banner and social media network advertisement campaign in order to reach those members of the Settlement Class who did not receive the Email Notice or Postcard Notice (*Id*. at ¶ 11); 4) Posting the Long Form Notice and other information on a dedicated case website to enable potential Settlement Class members to obtain information about the settlement and file a claim online.

The costs of notice and claims administration will be paid out of the Settlement Fund.  The Settlement Agreement also provides members of the Settlement Class the opportunity to object to, or request exclusion from, the Settlement.  Settlement Agreement § VIII.

## C. **The Claims Process.**

The Settlement Agreement establishes a claims process, which will be run by the Claims Administrator.  Settlement Agreement § V.  The email notices will provide a link to the Claim Form on the Settlement Website and the Claim Form will be attached to the notices sent by mail.

The Claim Form shall be substantially similar to the claim form attached as

Exhibit A to the Settlement Agreement.  The Claim Form will be: (i) available through a link on the email leading to the Settlement Website; and (ii) made readily available from the Settlement Administrator, including by requesting a Claim Form from the Settlement Administrator by mail, email, or calling a toll-free number provided by the Settlement Administrator.  *See* Exs. C and E to the Settlement Agreement.

To receive an award, each Settlement Class member must submit a valid and timely Claim Form either by mail or electronically.  Settlement Agreement §V.A-C. The actual amount paid to individual Settlement Class members will depend upon the number of valid Claims made for Product purchased and an attestation that the purchase(s) occurred the during the Class Period for personal, family or household use and not for resale.  *Id*. at § V.D.

The Claim Form advises Settlement Class members that while Proof of Purchase is not required to submit a claim, the Settlement Administrator has the right to request verification or more information regarding the purchase of the Products for the purpose of preventing fraud. Settlement Agreement § V.F; Settlement Agreement Exhibit A.  If the Settlement Administrator requests such verification and the Settlement Class Member does not comply in a timely manner or is unable to produce documents or additional information to substantiate the information on the Claim Form and the claim is otherwise not approved, the Settlement

Administrator may disqualify the claim.  *Id*. §§ V.C, F-H.

### D. Attorneys' Fees and Class Representative Compensation

Defendant agrees not to oppose Class Counsel's application for an award of Attorneys' Fees in the Action that will not exceed one-third of the $3.25 million Settlement Fund and expenses in the amount of $175,000.  Settlement Agreement §§ X.A and B. These payments are separate from and in addition to the Service Awards and the relief afforded to the Settlement Class members and are to be made from the $3,250,000.00 Settlement Fund.

## III.   ARGUMENT

Pursuant to Rule 23(e)(1)(B), "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  FRCP 23(e)(1)(B).  As set forth below, the proposed Settlement Class should be certified and the Settlement is fair, reasonable and adequate under Rule 23(e)(2).

### A.   The Proposed Settlement Class Should Be Certified

#### 1.   The Class Meets the Requirements of Rule 23(a)

The Court has already certified classes of consumers who purchased the Product during the Class Period in California, Florida, and Ohio.  (Dkt. 149.)  For

the purposes of settlement, the Parties ask the Court to extend the Settlement Class to include purchasers from Michigan, Minnesota, Missouri, New Jersey, Pennsylvania, Tennessee, Texas and Washington.

Before assessing the Parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 556 (9th Cir, 2019). Each of the state Settlement Classes meet the prerequisites for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a).[3]

Here there is no dispute that thousands of people in each of the relevant states purchased Defendant's Products during the proposed class period. *See* Gonnelli Decl. ¶ 21. Therefore, numerosity is easily satisfied. The proposed class also satisfies the commonality requirement of Rule 23(a), which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs contend that the central questions behind the claims in this

---

[3] While the Court declined to certify a class of Tennessee purchasers on the grounds that Plaintiff Orlowsky did not have standing to sue under Tennessee law (Dkt. 149 at 6), a Tennessee class of consumers should be included for purposes of settlement. As with each of the other proposed state classes, the class of Tennessee consumers meets the requirements of Rules 23(a) and 23(b)(3).

litigation are:  Did the label misrepresent the ingredients?  What were the fibers in the Product made of?  Were the representations on the label material to a reasonable consumer?  What is the proper measure of class damages?  Plaintiffs contend that the answers to these questions depend on common evidence that does not vary from class member to class member, and so can be fairly resolved—whether through litigation or settlement—for all class members at once.

The final requirements of Rule 23(a)—typicality and adequacy—are likewise satisfied here. Plaintiffs contend the claims of the class arise from the same misconduct that Plaintiffs seek to remedy – the misrepresentations concerning the ingredients in the Product fibers.  The same representations were made on all Products, including those purchased by Plaintiffs during the class period.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class"). The proposed class representatives also have no conflicts with the class, have participated actively in the case, and are represented by attorneys experienced in class action litigation.  *See In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 566 (adequacy satisfied if plaintiffs and their counsel lack conflicts of interest and are willing to prosecute the action vigorously on behalf of the class); Gonnelli Decl.¶ 20.

## 2.    <u>The Class Meets the Requirements of Rule 23(b)(3)</u>

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The predominance requirement is somewhat relaxed in the context of settlement because "[a] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 558. Here, the proposed class is maintainable under Rule 23(b)(3), because common questions predominate over any questions affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *See id.* Plaintiffs' liability case depends, first and foremost, on whether: (1) Defendant represented that the fibers in its Product was made with "Natural Fibers" and made from "100% Green Tea Fibers"; (2) whether those representations were false; (3) whether those representations were material; and (4) whether class members suffered damages as a result of those misrepresentations. Plaintiffs contend that these questions can be resolved using the same evidence for all class members and thus are the types of predominant questions that make a class-wide adjudication worthwhile. *See In re Hyundai & Kia Fuel*

*Econ. Litig.*, 926 F.3d at 559 (finding predominance satisfied where class members were exposed to uniform misrepresentations and suffered identical injuries within only a small range of damages); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'").

Nor do variations in substantive state law militate against a finding of predominance in the settlement context because such concerns impact trial manageability. In a settlement, however, "[T]he proposal is that there be no trial," and so manageability considerations have no impact on whether the proposed settlement class should be certified. *Amchem*, 521 U.S. at 620; *see also*, *In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d at 557 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

With respect to superiority, the issues in this case cannot be resolved through individual trials because the amount at stake for individual members of the Settlement Class is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. A class action is thus the superior method of adjudicating consumer claims arising from Defendant's alleged conduct—just as in other consumer protection cases where a classwide settlement has been approved. *See, e.g., Chambers v.*

*Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (granting final approval settling claims of a nationwide class of consumers who purchased allegedly defective dishwashers); *Tait v. BSH Home Appliances Corp.*, No.: SACV 10-0711-DOC (ANx), 2015 U.S. Dist. LEXIS 98546 (C.D. Cal. Jul. 27, 2015) (granting final approval of a settlement on behalf of a nationwide class of purchasers of allegedly defective washing machines); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015) (preliminarily approving settlement of California consumers allegedly deceived by a "natural" representation on juice products); *Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) (granting class certification and final approval of settlement on behalf of nationwide purchasers of toilet bowl cleaner that allegedly damaged plumbing).

### B.   <u>The Proposed Settlement Should Be Preliminarily Approved</u>

Recent amendments to Rule 23 direct the Court to consider four factors in evaluating a class action settlement:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Ninth Circuit apply a number of additional factors in evaluating the adequacy of a class action settlement:

(1) the strength of the plaintiffs' case;

(2) the extent of discovery completed and the stage of the proceedings;

(3) the presence of a governmental participant; and

(4) the reaction of the class members of the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig*.), 654 F.3d 935, 946 (9th Cir. 2011).

These factors collectively weigh in favor of preliminary approval.

**1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval**

**a.  The Class Representatives and Class Counsel Have Adequately Represented the Class**

Plaintiffs' Counsel are highly qualified with substantial experience litigating complex class actions of all kinds.  Additionally, the proposed class representatives have no conflicts with the class, have participated actively in the case, and are represented by attorneys experienced in class action litigation.  *See* Gonnelli Decl. at ¶ 20.  Accordingly, this factor favors preliminary approval.

### b.  The Proposal Was Negotiated at Arm's Length

The Settlement was negotiated during and after two arms-length mediation sessions with experienced mediators.  *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks omitted). Additionally, the Settlement does not bear any signs that the Ninth Circuit has identified as potentially indicating collusion or conflicts of interest:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth,* 654 F.3d at 946.  (internal quotation marks omitted).  Here, Plaintiffs' counsel will be paid from the same non-reversionary Settlement Fund as

members of the Settlement Class and so had every reason to negotiate the largest fund possible.  Settlement Agreement § X.A.  Plaintiffs' fee request will also constitute no more than 33% of the Settlement Fund, which is within the range of permissible percentage-based awards.  *Id.*  And, the Settlement Agreement does not allow any of the Settlement Fund to revert to Defendant.  *Id.* at § X.L.  This factor weighs strongly in favor of the Court preliminarily approving the Settlement.

### c.  The Relief Provided to the Class Is Adequate

### i.  The Costs, Risks, and Delay of Trial and Appeal

Plaintiffs and their counsel believe their claims are meritorious, but Defendant has raised and would continue to raise challenges to the legal and factual basis for such claims.  Defendant has filed a number of pre-trial motions, including challenges to the admissibility of the reports of both Plaintiffs' damages expert and liability expert.   Even if Plaintiffs' damages calculations were not excluded, Defendant will vigorously challenge the accuracy of those calculations and it will be Plaintiffs' burden to prove how much, if any, of the Product's price is based on the "natural" representations at issue.

Moreover, while three state classes have already been certified in this case, Defendant has filed a motion for decertification arguing that Plaintiffs failed to present common evidence of falsity and that their damages calculations contained various errors and did not measure Plaintiffs' harm. (Dkt. 214.)  While Plaintiffs

opposed the decertification motion (Dkt. 216) and believe that the Court would ultimately uphold the certification decision, the risk of decertification in this case supports preliminary approval. *See Wallace v. Countrywide Home Loans. Inc.,* NO. SACV 08-1463-JLS (MLGx), 2015 U.S. Dist. LEXIS 190929, *16 (C.D. Cal. Apr. 17, 2015) ("The risk of decertification should the action proceed favors approving the settlement."); *McKenzie v. Fed. Express Corp*., No. CV 10-02420 GAF (PLAx), 2012 U.S. Dist. LEXIS 103666, *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification]").

In light of the risks and uncertainties presented by the pending motions and a potential jury trial in this action, the $3,250,000 Settlement Fund achieved for the Class in this case is an extraordinary result.  "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  The Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625 (citations omitted).  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *See Retta v. Millennium Prods., No.*

CV15-1801 PSG AJWx, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017).

Even so, the Settlement Fund represents a significant portion of Plaintiffs' potential recovery in this case. Even if claims are made for ten percent of the purchases made by members of the Settlement Class of consumers (ten percent of the approximately 3 million units sold in the states covered by the Settlement Agreement, or $300,000)[4], the damages for those members of the Settlement Class would be approximately $5.5 million (using the unit price of $29 and Plaintiffs' expert's calculation of an average of a 62% price premium based on the "natural" representation). The $3.25 million Settlement Fund therefore represents approximately 59% of estimated damages. *See In re Lenovo Adware Litig*., No. 15-md-02624-HSG, 2018 U.S. Dist. LEXIS 198909, *30 (N.D. Cal. Nov. 21, 2018) (using the estimated claims rate to calculate the best possible recovery at trial and preliminarily approving a settlement that represented 24% of that amount).

---

[4] A ten percent claims rate is high for consumer protection class settlements. *See Moore v. Verizon Commc'ns Inc.,* No. C 09-1823, 2013 U.S. Dist. LEXIS 122901, at *8 (N.D. Cal. Aug. 28, 2013) (approving class action settlement with 3% claim rate); *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. C-07-5944-SC, 2016 U.S. Dist. LEXIS 9944, *25 (N.D. Cal. Jan 26, 2016) ("claims rates in consumer class actions 'rarely exceed seven percent even with the most extensive notice campaigns'") quoting *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 329 n.60 (3d Cir. 2011) (*en banc*).

Moreover, the Settlement Agreement provides injunctive relief in the form of an agreement by Defendant to conduct testing of fiber lash products for which Younique describes the ingredients thereof as "natural" for a period of three years. Settlement Agreement § IV.B.  This testing ensures that members of the Settlement Class and consumers in general can rely on Younique's "natural" representations in the future and adds value to the Settlement Agreement that weighs in favor of preliminary approval.  *See In re Netflix Privacy Litig*., No.: 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *21 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief"), appeal dismissed (Dec. 19, 2013); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.") (quoting *Officers for Justice*, 688 F.2d at 628).

### ii. The Effectiveness of Class Notice and Processing of Claims

As explained by the 2018 Advisory Committee Notes to Fed. R. Civ. P. 23, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  For the reasons set forth in Section C, below, the proposed method of processing claims here strikes that delicate balance, and this factor weighs in favor of final approval.

### iii.  The Proposed Attorneys' Fees

The Settlement Agreement provides that Class Counsel may apply for an award of attorneys' fees of no more than one-third of the Settlement Fund and expenses up to $175,000.  Settlement Agreement § X.A.  Such requests have frequently been granted in class actions in this Circuit, including consumer protection class actions.  *See, e.g., Ford v. CEC Entm't Inc.*, No.: 14cv677 JLS (JLB), 2015 U.S. Dist. LEXIS 191966, *15 (S.D. Cal. Dec. 14, 2015) (["one-third"] of the common fund is in line with other attorneys' fees awards in California."); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, *28 (S.D. Cal. Sep. 28, 2017) ("California courts routinely award attorneys' fees of one-third of the common fund.").  As the maximum attorney's fees and expenses Plaintiffs may seek are in line with typical awards in this Circuit, and the fee and expense request will be reviewed by the Court (and available for review by the Settlement Class), this factor weighs in favor of preliminary approval.

### iv.  There Exists No Agreement Required To Be Identified Under Rule 23(e)(3)

Apart from the Settlement Agreement and other materials associated with the negotiation of the Settlement (and disclosed herein), there are no additional agreements between the Parties or with others made in connection with the Settlement.  Accordingly, this factor weighs in favor of final approval of the

Settlement.

**d. The Proposal Treats Members of the Settlement Class Equitably Relative To Each Other**

The 2018 Advisory Committee Notes to Fed. R. Civ. P. 23 explain that this factor "calls attention to a concern that may apply to some class action settlements— inequitable treatment of some class members vis-a-vis others.  Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  *Id.*

None of the concerns raised by the 2018 Advisory Committee Notes are present here.  Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award, with the amount of the award dependent on the number of Products purchased by each Class Member.  This approach provides Participating Claimants the ability to obtain a payment commensurate with their potential losses, as compared to other members of the Settlement Class.  This structure is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."  *Id.*  Accordingly, this favor weighs in favor of approval of the Settlement.

## 2.  The Proposed Settlement Satisfies the *Churchill* Factors

*Churchill* sets forth the factors that the Ninth Circuit considers in valuating class actions settlement.  *See Churchill*, 361 F.3d 566, 575-76.  Many of those factors overlap with the Rule 23(e)(2) requirements and are discussed above.  *Churchill* sets forth several additional factors which also weigh in favor of preliminary approval in this case: a) the Strength of the Plaintiffs' case; b) the extent of discovery completed and the stage of the proceedings; c) the presence of a governmental participant; and d) the reaction of the class members of the proposed settlement.

### a.  The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability and damages.  The heart of Plaintiffs' claims is that Defendant adopted, promulgated, and benefited from the representation that the Fiber Lashes were composed of natural ingredients. Plaintiffs believe there is ample evidence that the fibers were not "natural." ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████   *See* Generally, Plaintiffs' Opp. Motion *In Limine* No. 2 to Exclude Jeff McFadden  (Dkt.  157.) ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████  *See* Dkt. 111, Opp. Class Cert. at 9:14-26 for the manufacturing history of the

Product. During the next 18 months of selling the Fiber Lashes, Younique did not disclose that the fibers were synthetic.  Plaintiffs believe that using this evidence they could prove Defendant's deceptive conduct; Defendant contends that it had no obligation to make disclosures because it had already changed suppliers by the time it received the Six Plus email (*see* Dkt. 111, 9:14-26).  The Court denied Defendant's motion for summary judgment with respect to a number of Plaintiffs' claims.  (Dkt. 136.)

Plaintiffs also calculated classwide price-premium damages in this case using a hedonic regression model designed to capture how much more Defendant charged over similar products that did not contain a "natural" representation on the packaging.  (Dkt. 146-2).[5]

Nonetheless, significant litigation risks and risks of delay still exist, which militate in favor of the settlement.  *See* Section III.1.C.i, *supra*.

### b. The Extent of Discovery Completed and The Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239.  This litigation has been ongoing for more than two years and the parties have formally exchanged extensive discovery.  *See* Gonnelli Decl. ¶ 9.

---

[5] Younique moved to exclude both Plaintiff's liability and damages expert. (*See* Dkts.141 and 142).

Younique provided almost 6,000 documents in discovery regarding the sales, marketing and composition of the Product. *Id*. Plaintiffs conducted depositions of Defendant's corporate representatives and Defendant deposed Plaintiffs and Plaintiffs' experts. *Id*. Additionally, since the Settlement was reached, Younique has provided confirmatory discovery regarding the volume of sales for the Product in additional states. *Id*.

As set forth above, the Parties have also briefed a motion to dismiss, a motion for summary judgment, motions for certification and decertification, motions *in limine* and appellate motions. They also completed almost all trial-related documents and were prepared to proceed to the pretrial conference in February. Accordingly, the Parties are now well aware of the strengths and weaknesses of their claims and defenses, and are well-equipped to negotiate the Settlement Agreement. This factor supports preliminary approval.

### c.  The Presence of a Government Participant

As there is no governmental participant in this action and the Parties have not yet provided notice to the class members, this factor is irrelevant for the purposes of preliminary approval. *See Pederson v. Airport Terminal Servs*., 2018 No. CV 15-02400-VAP (SPx), 2018 U.S. Dist. LEXIS 93862, *23 (C.D. Cal. Apr. 5, 2018).

### d.  The Reaction of Members of the Settlement Class to the Proposed Settlement

The Class has yet to be notified of the settlement or been given an opportunity to object, so it is premature to assess this factor.  Before the final approval hearing, the Court will receive and have the opportunity to review any objections or other comments received from members of the Settlement Class, along with a full accounting of all opt-out requests.  This factor is premature.

Accordingly, the factors discussed above counsel in favor of preliminary approval.

## C. The Proposed Notice Plan Should Be Approved

### 1.  The Settlement Provides for the Best Method of Notice Practicable Under the Circumstances

The federal rules require that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed on a Notice Program designed to directly reach as many Settlement Class members as possible and encourage them to claim compensation under the settlement.  Younique has a robust customer database that

will allow the overwhelming majority of members of the Settlement Class to be

identified and contacted directly.  The Claims Administrator will launch a social

media campaign to reach those members of the Settlement Class that could not be

reached directly through email or mail. The Notice Program includes:

     a.     Emailing the Notice to the potential Settlement Class members for which Younique has email contact information;

     b.     Mailing the Notice to any Settlement Class members for whom the email is returned as undeliverable;

     c.     Launching an internet banner and social media network advertisement campaign to reach those members of the Settlement Class that could not be reached directly through email or mail; and

     d.     Posting the Long-Form Notice on a dedicated case website to enable potential Settlement Class members to obtain information about the settlement and file a claim online.

*See* Fenwick Declaration, ¶¶ 5-12. Plaintiffs request that the Court approve this

method of notice as the best practicable under the circumstances.

     **2.     The Proposed Form of Notice Adequately Informs Settlement Class Members of The Settlement and Their Right to Object**

The notice provided to class members should "clearly and concisely state in

plain, easily understood language: (i) the nature of the action; (ii) the class definition;

(iii) the class claims, issues, or defenses; (iv) that the class member may appear

through counsel; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the

binding effect of a class judgment on class members." Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties complies with those requirements. *See* Exs. C, D, and E to the Settlement Agreement.

Plaintiffs believe that the proposed method and form of notice  is the most effective way to alert members of the Settlement Class to the existence of the Settlement and convey detailed information about submitting claims and the settlement approval process, and ask that the Court approve the forms of notice and Notice Plan. *See Chester v. TJX Cos.,* No 5:15-cv-01437-ODW (DTB)*,* 2017 U.S. Dist. LEXIS 201121, *7 (C.D. Cal. Dec. 5, 2017) (approving similar notice plan).

### D.    Appointment of a Settlement Administrator

In connection with the Court's preliminary approval of the Settlement, the Parties also ask the Court to appoint Scott Fenwick of the Heffler Claims Group to serve as Settlement Administrator.  Heffler Claims Group has provided class action services in over 1,000 settlements varying in size and complexity over the past 50 years.  During the past 50 years, Heffler distributed hundreds of millions of notices and billions of dollars in settlement funds and judgment proceeds to class members and claimants. *See* Fenwick Decl., ¶ 2.  The costs of notice and claims administration – anticipated to be approximately $200,000 – will be paid from the Settlement Fund and will serve to inform Settlement Class members of their due process rights to

object or opt out and to inform them of the valuable compensation of which they can avail themselves.  *See, e.g.*, Settlement Agreement, ¶¶ IV.2.a.

## IV.    **CONCLUSION**

Plaintiffs respectfully request that the Court enter the accompanying proposed Preliminary Approval Order certifying the proposed Settlement Class; granting preliminary approval of the proposed settlement; directing dissemination of notice to the Class pursuant to the proposed notice plan; appointing a Settlement Administrator for the dissemination of notice and establishment of a Settlement Fund; and setting a schedule for final approval and related deadlines.

Dated: August 12, 2019                         NYE, STIRLING, HALE & MILLER, LLP

By:   */s/*
　　　　Jonathan D. Miller (CA 220848)
　　　　Alison M. Bernal (CA 264629)
　　　　33 West Mission St., Suite 201
　　　　Santa Barbara, CA 93101
　　　　Telephone: (805) 963-2345
　　　　Facsimile: (805) 284-9590
　　　　jonathan@nshmlaw.com
　　　　alison@nshmlaw.com

　　　　CARLSON LYNCH SWEET
　　　　KILPELA & CARPENTER, LLP

By:   */s/*
　　　　Todd D. Carpenter (CA 234464)


　　　　1350 Columbia Street, Ste. 603
　　　　San Diego, CA 92101
　　　　Telephone: (619) 762-1900
　　　　Facsimile: (619) 756-6991

tcarpenter@carlsonlynch.com


THE SULTZER LAW GROUP P.C.

By:  _/s/_____
Adam Gonnelli, Esq.
280 Highway 35, Suite 304
Red Bank, NJ 07701
Tel: (732) 741-4290
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com

WALSH, LLC


By:  _/s/_____
Bonner Walsh, Esq.
1561 Long Haul Road
Grangeville, ID 83530
Tel: (541) 359-2827
Fax: (866) 503-8206
bonner@walshpllc.com

*Attorneys for Plaintiffs and the Class*